OFFICE COPY    JUDGE SWAIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMBASSADOR PUBLICATIONS, L.L.C.,

                              Plaintiff,

        v.

REACHLOCAL, INC. and STEPHAN
CESARINI,

                              Defendants.

07 Civ. **07 CIV  5687**

**NOTICE OF REMOVAL**



PLEASE TAKE NOTICE that Defendants ReachLocal, Inc. and Stephan Cesarini

hereby remove Index No. 601753/07 filed in the Supreme Court of the State of New York,

County of New York to the United States District Court for the Southern District of New York,

pursuant to 28 U.S.C. §§ 1441(a)-(b) and 1446(a), and in accordance with 28 U.S.C. § 1331

based upon the following:

        1.      On or about May 24, 2007, Plaintiff Ambassador Publications, L.L.C.

("Plaintiff") filed a Summons and Complaint captioned Ambassador Publications, L.L.C. v.

ReachLocal Inc. and Stephan Cesarini, Index No. 601753/07 in the Supreme Court of the State

of New York, County of New York, a state court within the Southern District of New York (the

"State Court Action").

        2.      On or about May 25, 2007, a copy of the Summons and Complaint was

delivered by hand to Defendant ReachLocal, Inc. in California.

        3.      On information and belief, Defendant Stephan Cesarini was served on

May 31, 2007 with a copy of the Summons and Complaint.

4.     Defendants ReachLocal, Inc. and Stephan Cesarini ("Defendants") have not pled, answered, or otherwise appeared in the State Court Action.  A judge has not yet been assigned to the State Court Action.

5.     On information and belief, and as alleged in the Complaint, at the time of the commencement of the State Court Action, Ambassador Publications, L.L.C., is a Delaware limited liability company with its principal place of business in New York, New York.

6.     At the time of the commencement of the State Court Action, Defendant, ReachLocal, Inc. was, and is now, a Delaware corporation with its principal place of business in Woodland Hills, California.

7.     At the time of the commencement of the State Court Action, Defendant Stephan Cesarini was, and is now, a citizen and resident of the State of New York residing at 124 West 25th Street, Apartment 1R, New York, New York, 10001.

8.     The Summons and Complaint constitute all of the process, pleadings, and orders delivered to Defendants in the State Court Action.  Pursuant to 28 U.S.C. § 1446(a), a copy of the Summons and Complaint is attached hereto as Exhibit A.

9.     This is a civil action of which this Court has original jurisdiction pursuant to 28 U.S.C. § 1331 which grants district courts original jurisdiction of all civil actions arising under the laws of the United States.  This Action may be removed pursuant to 28 U.S.C. § 1441(b), in that this is a civil action seeking damages for violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

10.    Defendants ReachLocal, Inc. and Stephan Cesarini have filed this Notice of Removal within thirty (30) days after service of Plaintiffs' Summons and Complaint. Removal is therefore timely pursuant to 28 U.S.C. § 1446(b).

11.    By reason of the above facts: (a) the district courts of the United States have original jurisdiction of this civil action pursuant to 28 U.S.C. § 1331 in that there is a federal question presented in the complaint, and (b) this case is removable pursuant to 28 U.S.C. § 1441(b).

12.    All defendants hereby consent to removal of the State Court Action.

13.    A copy of the Notice of Removal will be filed with the Supreme Court of the State of New York, County of New York, and will be served on Plaintiffs' counsel.

WHEREFORE, Defendant prays that the above-captioned matter be removed from the Supreme Court of the State of New York, County of New York, to the United States District Court for the Southern District of New York.


Dated:  New York, New York
        June 14, 2007

                          LATHAM & WATKINS LLP


                          By:  _____
                               Sabrina Hassan (SH-2081)
                               Blair Connelly (BC-0237)


3

885 Third Avenue, Suite 1000
New York, New York 10022-4834
Tel: (212) 906-1200

*Attorneys for Defendants*
*ReachLocal, Inc. and Stephan Cesarini*

*Of Counsel:*

Daniel S. Schecter
Jason J. Kim
Amjad M. Khan
Michele L. Lorbieski
LATHAM & WATKINS LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007
(213) 485-1234

EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------x

AMBASSADOR PUBLICATIONS, L.L.C.,

                              Plaintiff,

- against -

REACHLOCAL, INC. and STEPHAN
CESARINI,

                              Defendants.
------------------------------------------------------------x

Index No. 601753/07

Date purchased 5/24/0:

**SUMMONS**



TO:    ReachLocal Inc.
       2700 Oxnard Street
       Suite 1600
       Woodland Hills, CA 91367

       Stephan Cesarini
       124 West 25th Street Apt 1R
       New York, New York 10001

YOU ARE HEREBY SUMMONED to answer the complaint of the plaintiff, a copy of

which is now served upon you in this action, and to serve copies of your answer upon the

undersigned attorneys, within twenty (20) days after service of this summons and complaint

exclusive of the day of service, or within thirty (30) days after service is completed if service is

made by any method other than personal delivery to you within the State of New York.

In case of your failure to answer, judgment will be taken against you by default for the

relief demanded in the complaint, together with the costs and disbursements of this action.

Plaintiff designates New York County as the place of trial. The basis of the venue

designated is defendants having done business in this County and have engaged in the allegedly

tortious and otherwise actionable conduct thereat.

Dated:    New York, New York
          May 24, 2007

4832-9527-1425.1

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: _____

Peter T. Shapiro, Esq.
Attorneys for Plaintiff
199 Water Street
New York, New York  10038
212.232.1300

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------x

AMBASSADOR PUBLICATIONS, L.L.C.,

Plaintiff,

- against -

REACHLOCAL, INC. and STEPHAN
CESARINI,

Defendant.

------------------------------------------------x

Index No. 601753/07

COMPLAINT

NEW YORK
COUNTY CLERK'S OFFICE

MAY 24 2007

NOT COMPARED
WITH COPY FILE

Plaintiff Ambassador Publications, L.L.C., by its attorneys Lewis Brisbois Bisgaard &

Smith LLP, as and for its Complaint, alleges as follows:

## THE PARTIES

1.    Plaintiff Ambassador Publications, L.L.C. (Ambassador) is a Delaware limited

liability company with its principal place of business in New York, New York.

2.    Defendant ReachLocal, Inc. ("ReachLocal") is a Delaware corporation with a

principal place of business in Woodland Hills, California, which is authorized to conduct

business in the State of New York.

3.    Defendant Stephan Cesarini is an individual who on information and belief

resides and/or works in the City and State of New York.

## THE NATURE OF THIS ACTION

4.    By this action, Ambassador seeks to recover damages attributable to an improper

and illegal scheme, by which ReachLocal successfully induced and misled Ambassador so that it

would provide access to its employees, trade secrets and client information, and, despite

covenanting to protect Ambassador and not to compete with Ambassador by poaching its clients, ReachLocal surreptitiously acted to steal Ambassador's key internet executives and other employees, including defendant Cesarini, used them to obtain still more of Ambassador's trade secret information, and then suddenly, wrongfully and without warning, terminated Ambassador's access to the ReachLocal software by which Ambassador serviced its clients, while disparaging Ambassador and its ability to deliver the advertising results it had promised, all in order to induce Ambassador's clients to terminate their relationships with Ambassador and to instead become direct clients of ReachLocal.

## THE FACTUAL BACKGROUND

5.     Ambassador is a publisher of print yellow pages directories and has also been engaged in the business of acting as an authorized reseller of internet marketing pay per click, or PPC, platforms for its advertising customers (the "Internet Marketing Platform").

6.     ReachLocal's Internet Marketing Platform enables its resellers to establish, maintain, track and analyze local internet advertising campaigns.

7.     Ambassador established a relationship with ReachLocal so that it could obtain access to and utilize ReachLocal's Internet Marketing Platform for the purpose of placing and managing internet advertising for its clients in the New York metropolitan area.

8.     Pursuant to a contract, executed on or about June 27, 2005 by Ambassador and June 29, 2005 by ReachLocal, Ambassador and ReachLocal entered into a relationship pursuant to which Ambassador established an agency account enabling it to utilize the ReachLocal.com web site and service its advertising customers using ReachLocal's Internet Marketing Platform (the "ReachLocal Agreement").

4826-7523-4817.2

2

9.      Under the ReachLocal Agreement, Ambassador acted as an agency for its clients who would be using ReachLocal's Internet Marketing Platform to advertise their goods and services, and ReachLocal continued to administer the platform. Ambassador personnel were provided with limited access to the platform for the purpose of supporting the advertisements placed by Ambassador clients, analyzing the results, customizing the advertising and maximizing the client's exposure to potential customers.

10.     The ReachLocal Agreement contemplates that Ambassador would pay commissions to ReachLocal for advertising placed by Ambassador clients.

11.     The ReachLocal Agreement provides, in ¶ 8, entitled "Highest Standards of Integrity, Honesty, and Responsibility", that both parties "agree to use the highest standards of integrity, honesty, and responsibility" in "dealings with Advertisers and with each other", and further that both parties are obliged to indemnify and hold harmless the other in the event of any intentional or unintentional misrepresentations.

12.     Among other provisions, the ReachLocal Agreement provides that ReachLocal will not compete with Ambassador. Paragraph 11, captioned "Agreement Not to Interfere", provides that during the term of the ReachLocal Agreement and for one year thereafter, ReachLocal will not take any action to solicit or divert any of Ambassador's advertisers, and will not induce customers, clients, suppliers, service providers, vendors, agents or other persons under contract or otherwise associated or doing business with Ambassador to terminate, reduce or alter any such involvement, association or business, or induce any Ambassador employee or consultant to terminate his or her employment or consulting arrangement, accept employment or enter into a consulting arrangement with anyone else, or interfere with Ambassador's suppliers, service providers, vendors, clients or customers in any manner.

13.    The ReachLocal Agreement provides further that all materials furnished by Ambassador to ReachLocal remain the sole and exclusive "Property" of Ambassador or its suppliers or customers, and ReachLocal covenants to promptly deliver all such Property to Ambassador at any time upon request.

14.    ReachLocal became intimately familiar with both Ambassador's growing internet pay per click business by virtue of its development and support of the software therefor, and with Ambassador's key internet employees, who led Ambassador's efforts to obtain clients that would sign advertising contracts with Ambassador.

## INTERFERENCE WITH AMBASSADOR'S EMPLOYEES

15.    While Ambassador performed in good faith pursuant to the ReachLocal Agreement, ReachLocal began to put its scheme to steal Ambassador's secrets and customers, by entering into discussions with and soliciting Ambassador's employees to leave Ambassador and to establish direct and indirect relationships with ReachLocal, and in that connection to solicit business from Ambassador's customers for ReachLocal, in blatant violation of the ReachLocal Agreement, and notwithstanding ReachLocal's knowledge and information that Ambassador's employees were contractually prohibited from competing with Ambassador for a period of time after leaving its employ, and also were prohibited from making use of Ambassador's confidential and proprietary information to compete with Ambassador.

16.    Since shortly after the ReachLocal Agreement was executed, ReachLocal has regularly engaged in prohibited, illicit direct communications with Ambassador executives and other employees by which it sought to have them work for or with ReachLocal in lieu of Ambassador, including Stephan Cesarini, in late 2005 and/or early 2006, Richard Hargrave and

Sergio Alvarez, Ambassador's key internet executives, and Michael Candullo, during 2006, and Lawrence Stone and Paul DeBiase, in late 2006 and/or early 2007.

17.     At the time of their hiring, all of Ambassador's sales personnel execute Ambassador's Proprietary Information and Inventions Agreement (the "P&I Agreement").

18.     The P&I Agreement provides, among other things, that the employee will help develop and create, and will be exposed to, Ambassador's "Proprietary Information", as defined therein in some detail, including valuable confidential, proprietary and trade secret information, and will become familiar with Ambassador's procedures and methods of doing business, as well as have access to Ambassador's clients and channels for developing clients.

19.     Ambassador's sales personnel agree via the P&I Agreement that it would be fair that reasonable restrictions be placed on certain of their activities during and after the termination of their employment.

20.     Ambassador's sales personnel agree further in the P&I Agreement that they would hold in strict confidence and trust for Ambassador all Proprietary Information to which they had access during their employment and would not disclose same to anyone outside Ambassador, directly or indirectly.

21.     The P&I Agreement provides further that the sales personnel's pursuit of activities forbidden by the P&I Agreement would necessarily involve the use and/or disclosure of Ambassador's Proprietary Information in breach of the P&I Agreement. Accordingly, the employees covenant that, during their employment and for two years thereafter, they will not divert or attempt to divert any business from Ambassador including by soliciting Ambassador's customers, or solicit, induce or influence any person employed by Ambassador to terminate his or her employment.

22.     Further, the employees covenant that, while employed by Ambassador and for one year thereafter, they will not, directly or indirectly, engage in or participate in any business that is in competition in any manner whatsoever with the business of Ambassador unless they obtained written consent from Ambassador's board of directors, and for a like period will not accept employment or any relationship with any person or entity that provides services similar to Ambassador's business when such a relationship would require revelation or use of Ambassador's Proprietary Information.

23.     As reflected by the P&I Agreement, Ambassador engages in extensive efforts to protect its trade secrets and confidential and proprietary information from use or disclosure outside the company or pursuant to contracts such as the ReachLocal Agreement that provide protection for its information and trade secrets, or use by third parties, particularly competitors.

24.     During the course of their employment by Ambassador, its internet executives and other internet sales personnel all engage in various activities for the benefit and at the direction of Ambassador including, among other things, the development of, and efforts to sell and market, the internet advertising services provided by ReachLocal's Internet Marketing Platform to customers and prospective customers within the New York metropolitan area and nationwide.

25.     In order to be able to sell and market internet services utilizing the Internet Marketing Platform, Ambassador expends considerable time, effort and expense to train, educate and familiarize its internet executives and other sales personnel with its business methods and customers generally and specifically with respect to Ambassador's utilization of the Internet Marketing Platform and the potential customers for such platforms.

26.     Ambassador's internet executives and sales personnel seek to sell and market internet advertising services to various customers and prospective customers, and to support and service those customers, and during their employment are exposed to the names of and critical

4826-7523-4817.2

competitive information concerning such customers and their advertising needs, preferences and business means and methods.

## CESARINI'S BREACHES AND REACHLOCAL'S DISINGENUOUS RESPONSE

27.     In January 2006, Ambassador learned that Stephan Cesarini, one of its account representatives working on its internet marketing efforts, had breached his fiduciary duty and his P&I Agreement while still employed by Ambassador, by setting up a competing entity, SAS Media, to act as a ReachLocal reseller, and soliciting Ambassador customers and prospective customers he had dealt with on behalf of Ambassador to become clients of SAS Media rather than Ambassador, and doing so on the basis of his intimate knowledge of Ambassador's proprietary information about its clients, prospective clients and marketing strategies.

28.     Ambassador terminated Cesarini's employment as of January 10, 2006 on the basis of his faithless conduct.

29.     Ambassador commenced a litigation in this Court against Cesarini, which litigation was resolved via a "Settlement Agreement", pursuant to which Cesarini paid $5,000 to Ambassador and covenanted that he would not, directly or indirectly, solicit any Ambassador client for any purpose for 18 months and that he would pay Ambassador's legal fees in the event it sued him on the basis of a breach of that covenant or other contractual breach.

30.     Contemporaneously with Ambassador's dispute with Cesarini, Ambassador CEO Kathryn Hipple ("Hipple") communicated with ReachLocal CEO and founder Zorik Gordon ("Gordon"), about Cesarini's conduct, and pointed out that ReachLocal would be in breach of the ReachLocal Agreement by permitting Cesarini (and SAS Media) to solicit Ambassador customers, and further pointed out that Cesarini's solicitation of Ambassador clients breached his P&I Agreement, which Ambassador required its sales personnel to sign in order to protect its

4826-7523-4817.2

7

Proprietary Information. Gordon assured Hipple that ReachLocal would not permit Cesarini to solicit Ambassador clients and would terminate its relationship with him were he to do so.

31.     During the communications that ensued, Gordon attended a meeting in Ambassador's New York City office on August 11, 2006, with Hipple and Ambassador's key internet executives Sergio Alvarez and Richard Hargrave, during which Gordon explained that ReachLocal was changing its business model from a technology company relying on resellers such as Ambassador to market advertising services using its platform to utilization of a direct sales force, and that Cesarini was a test case that ReachLocal was using to determine the efficacy of direct sales activities in the New York metropolitan area. Gordon stated further that ReachLocal would not be soliciting Ambassador clients and did not need to do so, since there are so many potential customers in the New York metropolitan area, and that ReachLocal would not attempt to hire Ambassador employees in breach of the ReachLocal Agreement. Contemporaneous email messages between Hipple and Gordon confirm the substance of those verbal communications.

32.     Gordon's representations concerning ReachLocal's activities and intentions were false, as, notwithstanding that Ambassador was fully complying with its obligations under the ReachLocal Agreement and acting in good faith, and ReachLocal had no basis to claim that Ambassador was in breach, ReachLocal actively solicited Ambassador clients, used Ambassador's Proprietary Information to do so, and sought to induce Ambassador employees to leave Ambassador and establish relationships with ReachLocal as employees or outside resellers in order to supplant Ambassador.

## DEFENDANTS' CONTINUING IMPROPER CONDUCT

33.     Ambassador has learned that, on multiple occasions, ReachLocal's local direct sales personnel - now including Cesarini, acting in breach of the Settlement Agreement and at the instance of and with the support of ReachLocal - have, directly or indirectly, have solicited Ambassador clients and in doing so have disparaged Ambassador.

34.     The Ambassador clients improperly solicited included the following: Gotham Lasik, Beauty & Youth Day Spa, the Dent Terminator, Jacquelyn Wigs and Sanitary Plumbing.

35.     Specifically, a representative of Ambassador client Gotham Lasik advised Ambassador that it had been told by a ReachLocal sales representative named Eli that a direct relationship with ReachLocal would be more advantageous than continuing to work through Ambassador, and further advised that Ambassador was a mere yellow pages company that did not know how to use ReachLocal's software and that the customer was overspending with Ambassador. Additionally, ReachLocal has solicited Ambassador's clients by stating that Ambassador is a mere intermediary that merely marks up ReachLocal's services, and telling the clients that they can save money by contracting directly with Ambassador.

36.     ReachLocal well knew that Richard Hargrave and Sergio Alvarez were the two most important Ambassador internet executives responsible for managing and directing its entire internet operations. Nevertheless, during 2006, ReachLocal entered into direct discussions with Hargrave and Alvarez, and another Ambassador internet employee, Michael Candullo which contemplated all three leaving Ambassador and aligning themselves with ReachLocal. Those discussions contemplated that those key Ambassador employees would use Ambassador's Proprietary Information and their relationships with Ambassador's clients to unfairly compete with Ambassador and convert Ambassador's clients into ReachLocal clients. Those employees ultimately did not leave Ambassador to join ReachLocal at that time.

37.     Having been spurned by those individuals, on information and belief ReachLocal turned to seeking to entice away other Ambassador internet sales representatives and executives. To that end, during late 2006 or early 2007, ReachLocal solicited Lawrence Stone, who had been promoted to director status in Ambassador's internet division, to leave Ambassador and join forces with ReachLocal as an independent reseller, and to take and then make use of his extensive knowledge of Ambassador Proprietary Information, including customer identity and details concerning customer accounts, for the benefit of ReachLocal and in order to steal Ambassador's customers, in clear violation of his P&I Agreement.

38.     On information and belief, ReachLocal also solicited DeBiase to form a working relationship with it, also in clear violation of his P&I Agreement.

39.     On information and belief, Stone and DeBiase are working for or in concert with a newly formed entity, Advanced ROI, located in New Rochelle, New York, which purports to be an independent entity engaged in internet marketing and advertising activities, and DeBiase's father is acting as a front for DeBiase and/or Stone as a principal of Advanced ROI.

4826-7523-4817.2

10

40.     On information and belief, Stone and/or DeBiase began creation of the Advanced ROI website while still employed by Ambassador, using Ambassador computers and resources.

41.     On information and belief, Stone and DeBiase stole extensive Proprietary Information from Ambassador while still employed by Ambassador by, among other things, forwarding Proprietary Information from company computers to personal email accounts, including a complete list of Ambassador's internet clients and the details of those clients' advertising campaigns.

42.     Cesarini, Stone and DeBiase all are engaged in efforts to sell ReachLocal's competing internet advertising services to clients in the New York metropolitan area, and have specifically targeted Ambassador clients they came to know solely as a result of their tenure with Ambassador, and have done so with the active inducement, solicitation, support and participation of ReachLocal, and by using Ambassador's Proprietary Information to compete with it as well as by disparaging Ambassador and its products and services.

43.     On information and belief, as part of ReachLocal's plan to cripple Ambassador as a competitor, ReachLocal, acting through Cesarini and its other employees and agents, sought to solicit other Ambassador internet employees to resign from Ambassador and to join ReachLocal's efforts to compete unfairly with Ambassador, and thereby to breach their own P&I Agreements.

44.     As agents of ReachLocal, Cesarini, Stone and DeBiase are in a position to disclose and utilize Ambassador's Proprietary Information and to unfairly compete with Ambassador, and on information and belief they have done so for their own benefit and that of ReachLocal and to Ambassador's detriment.

45.     On information and belief, Stone and DeBiase have utilized the extensive Proprietary Information purloined from Ambassador for the purpose of unfair competition by them and by ReachLocal. Stone and DeBiase have used Ambassador's information while contacting many of Ambassador's customers to induce them to cease doing business with Ambassador and to instead establish relationships with them and/or ReachLocal, and to use ReachLocal to obtain the same services that they contracted with Ambassador to use.

46.     Stone, DeBiase, Cesarini and other ReachLocal representatives have in the course of such contacts with Ambassador's clients stated multiple falsehoods concerning Ambassador's business operations, means and methods, including misrepresentations to customers and potential customers that Ambassador is unable to offer and service internet advertising and that it is experiencing serious financial problems and is otherwise unable to service its clients. Ambassador has been contacted by customers who are understandably alarmed by the false information disseminated by defendants.

47.     Earlier this year, Ambassador commenced an action in this Court against Stone, DeBiase and Advanced ROI, seeking injunctive relief and damages arising from their faithless conduct. Issue has been joined in that action, and Ambassador intends to move to consolidate this action with that action at the earliest opportunity given the overlapping factual and legal issues in the two cases.

48.     Several Ambassador clients have terminated their contracts with Ambassador and become clients of ReachLocal, either directly or through Advanced ROI or other resellers of ReachLocal, as a result of the improper conduct of the defendants and of Stone, DeBiase and Advanced ROI, causing Ambassador to lose revenue.

## REACHLOCAL'S BREACH AND PURPORTED
## TERMINATION OF THE REACHLOCAL AGREEMENT

49.    During 2006, in order to protect itself against the encroaching competition of

ReachLocal, in view of the potential expiration of the ReachLocal Agreement, and to develop a

strong Internet Marketing Platform of its own for possible launch at an undetermined future time,

Ambassador began development of its own proprietary software with the assistance of an outside

vendor. Ambassador did not base its software on the ReachLocal platform and instead

independently developed software that would perform comparable functions, and could not have

based its software on ReachLocal's, in that it was never privy to the source code or the essential

technical documentation or other proprietary information with respect to that software and had

no access to ReachLocal's trade secrets or hardware, including its servers. Ambassador expended

considerable time, money and effort to development of this software, in part to make certain that

its software would be wholly proprietary to Ambassador

50.    In order to cripple Ambassador as a competitor at the very time its own direct

sales operations in the New York metropolitan area were reaching a critical mass via, among

other efforts, the unlawful enlistment of Stone and DeBiase and their conversion of

Ambassador's Proprietary Information for the benefit of ReachLocal, in March 2007 ReachLocal

made the insupportable assertion that Ambassador's conduct in independently developing its

own software was in breach of the ReachLocal Agreement and violated ReachLocal's

intellectual property rights.

51.    On March 11, 2007, ReachLocal, via its counsel Latham & Watkins, gave written

notice of termination of the ReachLocal Agreement purportedly based on Ambassador's

development of its own software notwithstanding that ReachLocal lacked a good faith basis for

its assertions that Ambassador had violated the ReachLocal Agreement or any of ReachLocal's intellectual property rights. ReachLocal immediately cut off Ambassador's access to the software that enabled Ambassador to service and support the advertising of existing customers.

52.     ReachLocal's termination of the ReachLocal Agreement was pretextual, because its contentions that Ambassador had infringed its intellectual property and violated the ReachLocal Agreement by developing its own proprietary software were not made in good faith. In fact, ReachLocal's intent in purporting to terminate was to enable ReachLocal to exploit Ambassador's resulting inability to access its clients' advertising and to control, analyze and support same, or to terminate same, by converting Ambassador's clients into ReachLocal's own direct clients.

53.     ReachLocal has improperly interfered with Ambassador's relationships with all of its clients as a result of the above-referenced actions.

54.     ReachLocal continues to purport to service Ambassador's clients, and to bill therefor, and it has utilized the Ambassador name and marks and passed itself off as being Ambassador and/or still acting for Ambassador in communications with, among others, Ambassador's sales representatives and clients, although it has no legal or contractual right to do so under the circumstances of its improper termination.

55.     As a result of ReachLocal's conduct, Ambassador has been required to expedite the migration of its customer accounts to its custom-built proprietary Internet Marketing Platform, notwithstanding that its platform was only in a testing, or "beta", stage as of the date of ReachLocal's putative termination of the ReachLocal Agreement.

56.     Ambassador has incurred additional costs and expenses, and incurred damages, as a result of the need to speed up the migration.

57.   Additionally, the improper competitive activities of ReachLocal, DeBiase, Stone and Cesarini, and their disparagement of Ambassador's products and services, have led to customer cancellation of contracts, causing Ambassador to lose anticipated billings each month, which would have been received in perpetuity but for the cancellations wrongfully induced by defendants.

58.   Ambassador's expenses have included hiring new employees and retaining consultants in connection with the migration.

59.   As a result of Ambassador's need to focus on completion of the build-out of its software, and service and support of existing customers on its new platform, as well as to combat defendants' unfair competition, passing off and disparagement, Ambassador's internet executives and sales managers have been unable to devote their attention to the growth of new business, making it more difficult for Ambassador to meet its sales goals.

60.   Further, Ambassador's need to shift its focus to salvaging client relationships that were being damaged by ReachLocal's actions, and to the implementation of its own software, have prevented it from interviewing and hiring the roughly 40 new sales representatives it had planned to hire during the first two quarters of 2007, which would have enabled it to realize its projections for sales and revenues. Ambassador estimates lost sales revenue from the delay in hiring and resulting consummated sales contracts of approximately $1,700,000.

61.   The inability of Ambassador's sales force to focus on new account sales has resulted in a significant drop-off in the new revenue sales of its experienced sales representatives.

62.   Since purportedly terminating the ReachLocal Agreement, ReachLocal has continued to run internet advertising campaigns for Ambassador's customers on the ReachLocal

platform, even though Ambassador is unable to support the campaigns, and ReachLocal continues to bill for the advertising, all entirely without authority of Ambassador and contrary to its directives, and potentially to the financial detriment of Ambassador.

63.    By continuing to run advertising for Ambassador's customers, ReachLocal has intentionally caused myriad deleterious effects, in that some internet search engines such as Google are unable to, or will not, support multiple campaigns from the same advertiser and the public is being confused by competing campaigns for the same advertisers. For example, a keyword search will display two essentially identical advertisements for a particular Ambassador client, which is not an optimal result from a marketing perspective, and Ambassador will be unable to demonstrate to its advertising clients that it achieved the optimum number of clicks from potential customers because some of the clicks are being registered via the advertisements still running utilizing ReachLocal's platform.

64.    As an additional means to harm Ambassador, ReachLocal has caused email activity reports and other communications to be sent to Ambassador's clients and account representatives, purporting to be sent on behalf of the "Ambassador Internet Promotions" and by the "Ambassador Internet Promotions Team", or otherwise utilizing Ambassador's name in a misleading fashion to identify ReachLocal, and has communicated with clients and representatives concerning the accounts of Ambassador clients that ReachLocal wrongfully continues to run, including by addressing performance and payment issues. On information and belief, ReachLocal has done so in order to undermine those representatives' efforts and commitment and to undermine the clients' confidence in Ambassador, and it is intentionally causing substantial confusion concerning the status of Ambassador and damaging its standing

generally and with its clients specifically, all with the aim of converting Ambassador's clients into ReachLocal clients.

65.    Ambassador's relationships with its more than 300 internet customers have been damaged as a result of ReachLocal's conduct.

## FIRST CAUSE OF ACTION
### (Breach of Contract/Damages)

66.    Ambassador has been damaged as a result of ReachLocal's above-described breaches of the ReachLocal Agreement, in an amount to be determined in excess of $5,000,000, ReachLocal should be required to indemnify Ambassador as provided for in the ReachLocal Agreement, and Ambassador should be awarded its attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duty/Damages and Disgorgement)

67.    By reason of the ReachLocal Agreement, ReachLocal owes a fiduciary duty of loyalty, good faith and fidelity to Ambassador.

68.    ReachLocal has breached its fiduciary duty by taking and utilizing Ambassador's Proprietary Information, including its trade secrets, and by using same to unfairly compete against it, and by soliciting its employees to leave its employ and purloin its Proprietary Information for ReachLocal's benefit.

69.    By reason of ReachLocal's tortious, wrongful, knowing, willful and intentional conduct in breach of its fiduciary duty during the term of the ReachLocal Agreement and after the improper purported termination thereof, as set forth above, Ambassador has been damaged in an amount to be determined in excess of $5,000,000, and should be awarded punitive damages in

4826-7523-4817.2

17

an amount to be determined in excess of $5,000,000, and further is entitled to an accounting of all monies wrongfully obtained by ReachLocal by means of such conduct, and disgorgement of all such earnings, and ReachLocal should be compelled to repay to Ambassador all benefits received during the period of its disloyalty and the fruits of its wrongful conduct.

### THIRD CAUSE OF ACTION
**(Tortious Interference With Contract/Damages)**

70.     By reason of ReachLocal's tortious, wrongful, knowing, willful and intentional interference with and inducement to Stone, Cesarini and DeBiase, and possibly others, to breach their agreements and other obligations owed to Ambassador pursuant to their P&I Agreements, and to Cesarini to breach the Settlement Agreement,  Ambassador has been damaged in an amount to be determined in excess of $5,000,000, and should be awarded punitive damages in an amount to be determined in excess of $5,00,000.

### FOURTH CAUSE OF ACTION
**(Inducement to and Aiding and Abetting of Breach of Fiduciary Duty/Damages)**

71.     By reason of ReachLocal's tortious, wrongful, knowing, willful and intentional interference with and inducement to Stone, DeBiase and Cesarini, and possibly others, to breach their fiduciary duties owed to Ambassador, and aiding and abetting those individuals' breaches of their fiduciary duties, Ambassador has been damaged in an amount to be determined in excess of $5,000,000, and should be awarded punitive damages in an amount to be determined in excess of $5,00,000.

4826-7523-4817.2

### FIFTH CAUSE OF ACTION
#### (Misappropriation of Trade Secrets/Damages)

72.     By reason of ReachLocal's misappropriation, use and disclosure of Ambassador's Proprietary Information, including its trade secrets, Ambassador has been damaged in an amount to be determined in excess of $5,000,000, and should be awarded punitive damages in an amount to be determined in excess of $5,000,000.

### SIXTH CAUSE OF ACTION
#### (Unfair Competition and Tortious Interference
#### with Prospective Contractual Relations/Damages)

73.     ReachLocal and Cesarini, and their other agents including but not limited to Stone and DeBiase, knew that Ambassador had developed and taken steps to protect its Proprietary Information and to guard against the use and disclosure of same by its departing employees.

74.     ReachLocal and Cesarini possessed Ambassador's valuable Proprietary Information, including with respect to the identities and continued needs, capabilities and preferences of Ambassador's existing and potential customers and suppliers, pursuant to the ReachLocal Agreement.

75.     ReachLocal and Cesarini knew that, by unlawfully using and disclosing Ambassador's Proprietary Information, and then using that unlawfully acquired property to market the services of itself as a competitor, and by disparaging Ambassador and its products and services, Ambassador would lose business opportunities it had developed through the expenditure of significant time, effort and expense.

4826-7523-4817.2

76. ReachLocal and Cesarini's actions, including engaging in direct and unfair competition with Ambassador, have been done willfully and intentionally with the specific purpose of luring existing and potential customers away from Ambassador.

77. Defendants had no justification to interfere with Ambassador's prospective contractual relationships as set forth herein.

78. Defendants have utilized improper means, including the wrongful use and disclosure of Proprietary Information obtained in the course of performance of the ReachLocal Agreement, and by inducing Ambassador executives and employees to use and disclose documents and information containing Proprietary Information, and in breach of the obligations imposed pursuant to the Agreement, and the willful spreading and dissemination of knowingly false and misleading information about Ambassador.

79. As a direct and proximate result of defendants' wrongful and illegal conduct and unfair competition, Ambassador has been damaged in an amount to be determined in excess of $5,000,000, and should be awarded punitive damages in an amount to be determined in excess of $5,000,000.


### SEVENTH CAUSE OF ACTION
**(Breach of Contract/Damages)**

80. Ambassador has been damaged as a result of Cesarini's breach of the Settlement Agreement as described above, in an amount to be determined in excess of $1,000,000, and it should also be awarded its attorneys' fees as provided thereunder.

## EIGHTH CAUSE OF ACTION
### (Lanham Act § 43(a)/Damages)

81.    The trade name Ambassador has become uniquely associated with and has come to identify Plaintiff Ambassador and its advertising services provided under that name.

82.    ReachLocal's interstate use of the trade name Ambassador in connection with various customer communications and billings subsequent to ReachLocal's purported termination of the ReachLocal Agreement is a false designation of origin, or a false representation, wrongfully, intentionally and falsely designate ReachLocal's services as originating from or being connected with Ambassador, and constitute false descriptions or representations in interstate commerce and is causing diminution of Ambassador's good will.

83.    ReachLocal's acts as aforesaid constitute a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

84.    By reason of ReachLocal's actions, Ambassador has been seriously and irreparably damaged and, unless defendants are restrained from their activities Ambassador will continue to be so damaged.

85.    Ambassador should be awarded damages in an amount to be determined in excess of $5,000,000 as well as attorneys' fees in amounts to be determined.

## NINTH CAUSE OF ACTION
### (Violation of New York General Business Law § 349/Damages)

86.    ReachLocal has, with the intent to deceive and to mislead the public, used and appropriated for purposes of advertising and trade, Ambassador's name, so as to deceive and mislead the public as to the identity of defendants and as to a connection between ReachLocal

and Ambassador that no longer exists and to enable ReachLocal to steal and destroy Ambassador's good will.

87.    Said conduct is in contravention of the New York General Business Law § 349.

88.    By reason of ReachLocal's actions, Ambassador has been seriously and irreparably injured and, unless defendants are restrained therefrom, Ambassador will continue to be so damaged.

89.    Ambassador should be awarded damages in an amount to be determined in excess of $5,000,000 and all additional remedies available by statute.

## TENTH CAUSE OF ACTION
### (Trade Libel/Damages)

90.    By reason of ReachLocal's false statements about Ambassador, its products, means and methods, and its financial and general viability as a company, ReachLocal has libeled Ambassador, and  Ambassador has been damaged in an amount to be determined in excess of $5,000,000, and should be awarded punitive damages in an amount to be determined in excess of $5,000,000.

## ELEVENTH CAUSE OF ACTION
### (Commercial Defamation/Damages)

91.    By reason of ReachLocal's false statements about Ambassador, its products, means and methods, and its financial and general viability as a company, ReachLocal has committed commercial defamation, and  Ambassador has been damaged in an amount to be determined in excess of $5,000,000, and should be awarded punitive damages in an amount to be determined in excess of $5,000,000.

4826-7523-4817.2

22

## TWELFTH CAUSE OF ACTION
### (Fraud/Damages)

92.    ReachLocal intentionally induced Ambassador continue to perform pursuant to the ReachLocal Agreement, and to share its Proprietary Information concerning its customers and other matters, via Gordon's August 11, 2006 representation that ReachLocal would not seek to poach its customers, which representation was intended and expected to induce Ambassador to continue its existing relationship with ReachLocal.

93.    That representation was false in that Gordon knew, but concealed from Ambassador, that it intended to use, and was already using, Cesarini to compete for Ambassador's customers, and was further embarked upon its plan to solicit key Ambassador executives and other employees to leave Ambassador and join it for the purpose of such unfair competition, and otherwise to seek Ambassador's customer base for itself, and ultimately to cut off Ambassador's access to the Internet Marketing Platform so that it could complete the poaching of its customers.

94.    Ambassador reasonably relied on ReachLocal's misrepresentations by continuing to perform under the ReachLocal Agreement, which served ReachLocal's purposes by further exposing it to Ambassador's customers and other Proprietary Information, rather than terminating its relationship with ReachLocal in favor of utilization of its proprietary software or a relationship with another vendor.

95.    Ambassador has been damaged as a result of ReachLocal's fraud in an amount to be determined in excess of $5,000,000, and should be awarded punitive damages in an amount to be determined in excess of $5,000,000.

## THIRTEENTH CAUSE OF ACTION
### (Injunctive Relief)

96.    Defendants' actions have caused and will continue to cause irreparable harm to Ambassador for which legal damages are not sufficient.

97.    Accordingly, this Court should grant an injunction enjoining defendants as well as any and all persons or entities in concert or participation with them, preliminarily and then permanently, as follows:

(1)    Prohibiting them from, directly or indirectly, diverting or attempting to divert any business from Ambassador including by soliciting or calling on any of Ambassador's clients, or using or disclosing Ambassador's Proprietary Information;

(2)    Prohibiting them from, directly or indirectly, soliciting or inducing any employee or agent of Ambassador to leave Ambassador or to become employed or affiliated with them, or hiring any employee or agent of Ambassador, directly or indirectly;

(3)    Requiring them to cease to act under the ReachLocal Agreement including by using Ambassador's name, dealing with its clients, billing its clients, communicating with its customers and the general public as if it were Ambassador or authorized to act on behalf of Ambassador, and running advertisements for its clients;

(4)    Prohibiting them from, directly or indirectly, using Ambassador's Proprietary Information for any purpose or engaging in any other conduct which has the effect of diluting or destroying the value and utility of such Proprietary Information, breaching, or inducing the breach of, any covenants of any Ambassador employee under his or her proprietary information and inventions agreement; and

4826-7523-4817.2

24

(5)    Prohibiting them from competing with Ambassador by means of spreading false and misleading information about its business operations, means and methods; and

ReachLocal should be ordered by the Court to account for and pay over to Ambassador all gains, profits and advantages derived from defendants' unlawful and improper activities, as set forth herein or those that become known in discovery.

WHEREFORE, Ambassador demands judgment in its favor as follows:

(a) On the First Cause of Action, awarding damages against ReachLocal in an amount to be determined in excess of $5,000,000 with interest;

(b)    On the Second Cause of Action, awarding damages against ReachLocal in an amount to be determined in excess of $10,000,000 with interest, as well as an accounting of defendants' wrongfully gotten gains and disgorgement of same, as well as repayment of all benefits received from Ambassador during the period of disloyalty;

(c)    On the Third Cause of Action, awarding damages against ReachLocal in an amount to be determined in excess of $10,000,000 with interest;

(d)    On the Fourth Cause of Action, awarding damages against ReachLocal in an amount to be determined in excess of $10,000,000 with interest;

(e)    On the Fifth Cause of Action, awarding damages against ReachLocal in an amount to be determined in excess of $10,000,000 with interest;

(f)    On the Sixth Cause of Action, awarding damages against defendants in an amount to be determined in excess of $10,000,000 with interest;

(g)    On the Seventh Cause of Action, awarding damages against Cesarini in an amount to be determined in excess of $1,000,000 with interest;

(h)    On the Eighth Cause of Action, awarding damages against ReachLocal in an amount to be determined in excess of $10,000,000 with interest;

(i)    On the Ninth Cause of Action, awarding damages against ReachLocal in an amount to be determined in excess of $10,000,000 with interest;

(j)    On the Tenth Cause of Action, awarding damages against ReachLocal in an amount to be determined in excess of $10,000,000 with interest;

(k)    On the Eleventh Cause of Action, awarding damages against ReachLocal in an amount to be determined in excess of $10,000,000 with interest;

(l)    On the Twelfth Cause of Action, awarding damages against ReachLocal in an amount to be determined in excess of $10,000,000 with interest;

(m)    On the Thirteenth Cause of Action, ordering defendants to account for and pay over to Ambassador all gains, profits and advantages derived from their unlawful and improper activities, and imposing an injunction enjoining defendants as well as any and all persons or entities in concert or participation with them, as follows:

(1)    Prohibiting them from, directly or indirectly, diverting or attempting to divert any business from Ambassador including by soliciting or calling on any of Ambassador's clients, or using or disclosing Ambassador's Proprietary Information;

(2)    Prohibiting them from, directly or indirectly, soliciting or inducing any employee or agent of Ambassador to leave Ambassador or to become employed or affiliated with them, or hiring  any employee or agent of Ambassador, directly or indirectly;

(3)    Requiring them to cease acting under the ReachLocal Agreement including by using Ambassador's name, dealing with its clients, billing its clients, communicating with its

4826-7523-4817.2

customers and the general public as if it were Ambassador or authorized to act on behalf of Ambassador, and running advertisements for its clients;

(4)    Prohibiting them from, directly or indirectly, using Ambassador's Proprietary Information for any purpose or engaging in any other conduct which has the effect of diluting or destroying the value and utility of such Proprietary Information, breaching, or inducing the breach of, any covenants of any Ambassador employee under his or her proprietary information and inventions agreement; and

(5)    Prohibiting them from competing with Ambassador by means of spreading false and misleading information about its business operations, means and methods; and

ReachLocal should be ordered by the Court to account for and pay over to Ambassador all gains, profits and advantages derived from defendants' unlawful and improper activities, as set forth herein or those that become known in discovery.

(n)    awarding Ambassador the costs and disbursements of this action, including attorneys' fees and litigation expenses; and

(o)    granting such other and further relief as the Court deems just and proper.

Dated:    New York, New York
          May 24, 2007


LEWIS BRISBOIS BISGAARD & SMITH LLP


By: _____
     Peter T. Shapiro, Esq.
     Attorneys for Plaintiff
     199 Water Street
     New York, New York 10038
     212.232.1300


4826-7523-4817.2