UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMBASSADOR PUBLICATIONS, L.L.C.,

　　　　　　　　Plaintiff,

　　v.

REACHLOCAL, INC. and STEPHAN CESARINI,

　　　　　　　　Defendants.

---

07 Civ. 5687 (LTS)

**<u>ORAL ARGUMENT
REQUESTED</u>**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
OR TRANSFER PURSUANT TO RULE 12(b)(1), (3) AND/OR (6) OR, IN THE
<u>ALTERNATIVE, TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)</u>**

TABLE OF CONTENTS

PAGE

I. PRELIMINARY STATEMENT ................................................................................ 1

II. STATEMENT OF FACTS................................................................................... 3

    A.    The Parties. ................................................................................. 3

        1.    ReachLocal and the ReachLocal Service................................... 3

        2.    Ambassador................................................................. 4

        3.    Stephan Cesarini. ......................................................... 5

    B.    The Parties' Written Agreements......................................................... 5

    C.    The Forum Selection Clause Requires That Ambassador File This Action In California Exclusively. ........................................................ 6

    D.    Ambassador's Claims Center On the Parties' Agreements. ................................ 7

    E.    The Vast Majority of Critical Witness, Documents and Data Are Located in California. ................................................................... 9

III. A DISMISSAL OR TRANSFER BASED ON THE  FORUM SELECTION CLAUSE IS NECESSARY ...................................................................... 10

    A.    The Standard for Dismissal or Transfer under Rule 12. .................................... 10

    B.    The Forum Selection Clause Between Sophisticated Commercial Parties is Valid and Enforceable. ...................................................... 11

        1.    Ambassador Does Not and Cannot Claim Fraud or Coercion.................................................................... 12

        2.    California is Not an Inconvenient Forum. .............................. 12

        3.    California Law is Not Fundamentally Unfair to Ambassador, Nor Will its Application Deprive Ambassador of a Remedy. ............................................................. 13

        4.    California Favors Enforcement of Forum Selection Clauses. .................................................................. 14

    C.    The Forum Selection Clause Applies to this Dispute. ........................................ 14

    D.    The Forum Selection Clause Applies To Claims Against ReachLocal's Employees, Including Mr. Cesarini. .............................................. 15

IV. ALTERNATIVELY, A TRANSFER UNDER 28 U.S.C. § 1404(a) IS APPROPRIATE.............................................................................. 17

    A.    The Standard for Transfer Under 28 U.S.C. § 1404(a)........................................ 17

1.    The Convenience of Witnesses Weighs Heavily in Favor of
      Transfer. .................................................................................................. 18

2.    The Convenience of the Parties Weighs Heavily in Favor of
      Transfer. .................................................................................................. 19

3.    The Bulk of the Evidence is in California. .............................................. 19

4.    The Requirements of Compulsory Process Make California
      a More Convenient Forum. ...................................................................... 20

5.    The Central District of California is Likely to Be More
      Familiar With California Law .................................................................. 20

6.    The Relative Docket Conditions Favor a Transfer to
      California. ................................................................................................ 21

V. CONCLUSION ...................................................................................................... 22

# TABLE OF AUTHORITIES

## CASES

*Aarons v. Worldtel Services, Inc.*,
    1996 WL 185714 (S.D.N.Y. April 17, 1996) ............................................................20

*AVC Nederland B.V. v. Atrium Investment Partnership*,
    740 F.2d 148 (2d Cir. 1984)........................................................................................10

*Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*,
    11 F. Supp. 2d 729 (S.D.N.Y. 1998)...........................................................................19

*Bancomer, S.A. v. Superior Court of Los Angeles*,
    44 Cal. App. 4th 1450 (Cal. Ct. App. 1996) ..............................................................14

*Bense v. Interstate Battery System of America, Inc.*,
    683 F.2d 718 (2d Cir. 1982).......................................................................................12

*Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*,
    709 F.2d 190 (3d Cir. 1983)........................................................................................16

*Currie Medical Specialties, Inc. v. Bowen*,
    136 Cal. App. 3d 774 (Cal. Ct. App. 1982) ...............................................................14

*Effron v. Sun Line Cruises, Inc.*,
    67 F.3d 7 (2d Cir. 1995)..............................................................................................12

*Eslworldwide.com, Inc. v. Interland, Inc.*,
    2006 WL 1716881 (S.D.N.Y. June 21, 2006) ............................................................17

*Evolution Online System, Inc. v. Koninklijke PTT Netherland N.V.*,
    145 F.3d 505 (2d Cir. 1998)........................................................................................10

*Ferens v. John Deere, Co.*,
    494 U.S. 516 (1990)....................................................................................................17

*First Interstate Leasing Serv. v. Sagge*,
    697 F. Supp. 744 (S.D.N.Y. 1998)..............................................................................13

*Freietsch v. Refco, Inc.*,
    56 F.3d 825 (7th Cir. 1995) ........................................................................................16

*Gulf Oil Co. v. Gilbert*,
    330 U.S. 501 (1947)........................................................................................17, 18, 20

*Harris v. Rezai Bar Industrial, Ltd.*,
    1999 U.S. App. LEXIS 8577 (2d Cir. May 4,  1999) .................................................12

*Hernandez v. Graebel Van Lines*,
    761 F. Supp. 983 (E.D.N.Y. 1991) .............................................................................21

*Hugel v. Corporation of Lloyd's*,
    999 F.2d 206 (7th Cir. 1993) ......................................................................................15

*International Private Satellite Partners, L.P. v. Lucky Cat Ltd.*,
  975 F. Supp. 483 (W.D.N.Y. 1997) ...................................................................15

*Lambert v. Kysar*,
  983 F.2d 1110 (1st Cir. 1993) .......................................................................16

*Lipcon v. Underwriters at Lloyd's*,
  148 F.3d 1285 (11th Cir. 1998) ....................................................................15

*Longview Equity Fund, LP v. McAndrew*,
  2007 U.S. Dist. LEXIS 4581 (S.D.N.Y. Jan. 23, 2007) ...............................19

*Luckett v. Bure*,
  290 F.3d 493 (2d Cir. 2002)...........................................................................10

*M/S Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972)......................................................................................11, 12

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
  858 F.2d 509 (9th Cir. 1988) ...................................................................15, 16

*Nanopierce Techs., Inc. v. Southridge Capital Management LLC*,
  2003 U.S. Dist. LEXIS 21858 (S.D.N.Y. Dec. 4, 2003) ...............................15

*In re Nematron Corp. Securities Litigation*,
  30 F. Supp. 2d 397 (S.D.N.Y. 1998)...............................................................21

*New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*,
  121 F.3d 24 (2d Cir. 1997)...............................................................................11

*Orix Credit Alliance, Inc. v. Mid-South Materials Corp.*,
  816 F. Supp. 230 (S.D.N.Y. 1993)...................................................................13

*Person v. Google Inc.*,
  456 F. Supp. 2d 488 (S.D.N.Y. 2006).............................................................10

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981)..........................................................................................17

*Pocahontas Supreme Coal Co., Inc. v. National Mines Corp.*,
  90 F.R.D. 67 (S.D.N.Y. 1981) .........................................................................10

*Quebecor World (USA) Inc. v. Recognition Communications, Inc.*,
  2007 WL 776422 (W.D.N.Y. March 12, 2007)...............................................17

*Ricoh Corp. v. M/V MING PLENTY*,
  2002 WL 109576 (S.D.N.Y. Jan. 25, 2002) ...................................................18

*Roby v. Corp. of Lloyd's*,
  996 F.2d 1353 (2d Cir. 1993).............................................................11, 13, 14, 15

*Royal Insurance Co. v. United States*,
  998 F. Supp. 351 (S.D.N.Y. 1998)...................................................................18

*Scherk v. Alberto-Culver Co.*,
  417 U.S. 506 (1974).........................................................................................12

*Schlessinger v. Holland America, N.V.*,
 120 Cal. App. 4th 552 (Cal. Ct. App. 2004) ..............................................14

*Stewart Organization, Inc. v. Ricoh Corp.*,
 487 U.S. 22 (1988) ..............................................................................19

*Sun Forest Corp. v. Shvili*,
 152 F. Supp. 2d 367 (S.D.N.Y. 2001) ....................................................11

*Weingrad v. Telepathy, Inc.*,
 2005 U.S. Dist. LEXIS 26952 (S.D.N.Y. Nov. 3, 2005) ....................11, 15

*Weiss v. Columbia Pictures Television, Inc.*,
 801 F. Supp. 1276 (S.D.N.Y. 1992) ....................................................12, 21

*Wells Fargo Century, Inc. v. Brown*,
 475 F. Supp. 2d 368 (S.D.N.Y. Feb. 21, 2007) ........................................10

## RULES & STATUTES

Fed. R. Civ. P. 12(b)(1) ................................................................ *passim*

Fed. R. Civ. P. 12(b)(3) ................................................................ *passim*

Fed. R. Civ. P. 12(b)(6) ................................................................ *passim*

Fed. R. Civ. P. 45 ..................................................................................20

28 U.S.C. § 1404(a) ......................................................3, 17, 20, 22

## MISCELLANEOUS

Cal. Bus. & Prof. Code § 17200 *et seq* ................................................14

Federal Court Management Statistics 2006 available at
http://www.uscourts.gov/cgi-bin/cmsd2006.pl. ....................................21

# I.

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Ambassador Publications, L.L.C. ("Ambassador") has engaged in shameless forum-shopping by filing this preemptive lawsuit in New York, in clear violation of an unambiguous forum selection clause requiring that it be filed in Los Angeles, California. Pursuant to that forum selection clause contained in the written agreements between Ambassador and defendant ReachLocal, Inc. ("ReachLocal"), Ambassador agreed that California courts would exclusively resolve disputes between the parties.  There is no basis nor justification to disturb that agreement.  In fact, Ambassador's sole reason for filing suit in New York was to win a "race to the courthouse," before ReachLocal could file suit in California based on Ambassador's unpaid debt of $379,053.39 and its non-monetary breaches of the parties' agreements.  Ambassador's conduct plainly is designed to frustrate the forum selection clause, and force this Court and ReachLocal to engage in needless motion practice, to dismiss and/or transfer this action to the agreed-upon forum in Los Angeles, California.

This action arises out of written agreements between Ambassador and ReachLocal, pursuant to which Ambassador used ReachLocal's local search internet software to provide local advertising to businesses seeking to advertise on the Internet.  Ambassador's Complaint contains pages of allegations about that contractual relationship, and the first claim for relief is for breach of one of the parties' agreements.  In truth, Ambassador is the party in breach.  Ambassador's lawsuit comes on the heels of ReachLocal's demand for payment of Ambassador's outstanding debt of $379,053.39, and ReachLocal's notice of termination of the parties' agreements as a result of Ambassador's misuse of ReachLocal's software service and theft of proprietary information to create a product that competes directly with ReachLocal's software service.  Anticipating ReachLocal's forthcoming suit in California, Ambassador filed

this pretextual and makeweight action as a preemptive strike designed to frustrate the parties'
forum selection clause.

Pretext aside, Ambassador's claims plainly relate to the parties' agreements, and
thus, the forum selection clause requires dismissal or transfer under Rules 12(b)(1),(3), and/or (6)
under the applicable standard:

- First, Ambassador cannot contest the enforceability of the forum selection
  clause.  Ambassador does not and cannot allege that the clause was procured
  by fraud.  To the contrary, Ambassador's claims irrefutably turn on the
  validity and enforceability of the parties' agreements.

- Second, it would not be "gravely inconvenient" for Ambassador to litigate its
  claims in California.  Ambassador had the opportunity to consider whether it
  would be inconvenient to litigate disputes with ReachLocal in California when
  it negotiated the agreements.  In the end, Ambassador accepted California as
  the parties' chosen forum.

- Third, it would not be "fundamentally unfair" to require Ambassador to
  litigate its claims in California.  Ambassador agreed to the application of
  California law to this dispute, and a California court is best-situated to
  interpret and apply California law.  Moreover, all of the remedies Ambassador
  seeks under New York law also are available under California law.

- Finally, federal and state courts in New York and California strongly favor
  enforcement of forum selection clauses.  Thus, an order transferring the case
  to California would comport with the policies underlying New York and
  California forum selection laws.

Ambassador's gamesmanship should not be condoned. The forum selection clause applies, and the case should be dismissed, or at a minimum transferred to the Central District of California.

Even if Ambassador somehow could avoid the reach of the forum selection clause by filing this preemptive lawsuit, this Court can and should transfer the case to the Central District of California pursuant to 28 U.S.C. § 1404(a). This is a California case. The vast majority of critical witnesses, documents and data are located in California. Moreover, the Central District of California is best-situated to handle the case. The case turns on the interpretation of California contract law. The Central District of California is in a far better position to police any injunctions, in the unlikely event that any issue against ReachLocal and its employees, the majority of whom work and reside in California. Finally, the Central District of California's docket is far less congested than the Southern District of New York's docket. All of these factors weigh heavily in favor of a transfer.

## II.

## STATEMENT OF FACTS

### A.    The Parties.

#### 1.    ReachLocal and the ReachLocal Service.

ReachLocal is in the local search advertising business. ReachLocal's Internet Marketing Platform enables its agencies to establish, maintain, track and analyze local internet advertising campaigns. *See* Complaint, at ¶ 6.[1]  Like print yellow pages directories, ReachLocal does not target businesses looking to advertise on a nationwide scale. Rather, ReachLocal serves businesses looking to advertise in local markets. ReachLocal does so by delivering easy-to-use, proprietary technology and return-on-investment focused tools (the "ReachLocal Service") to

---

[1]    A copy of the Complaint is attached as Exhibit A to the Declaration of Robert C. Wright (the "Wright Decl.") accompanying ReachLocal's motion to dismiss or transfer, dated May 25, 2007.

help businesses run successful local Internet advertising campaigns ("Advertisers").  *See* Declaration of Robert C. Wright ( "Wright Decl."), at ¶¶ 3-4.

ReachLocal's sole product is the ReachLocal Service.  The ReachLocal Service is designed to ensure that an Advertiser's Internet advertisements appear prominently among the search results, when a local consumer enters certain keywords on leading search sites, such as Google, Yahoo!, MSN and AOL.  Since each advertisement appears in a premium position, it creates the best possible chance to generate a "click-through" to the Advertiser's website.  *See* Wright Decl., at ¶ 5.

ReachLocal markets the ReachLocal Service through two channels.  First, ReachLocal contacts Advertisers through its own sales force (*i.e.*, ReachLocal engages in direct marketing).  When ReachLocal engages in direct marketing, it bills and collects payment directly from the Advertiser.  Second, ReachLocal enlists independent sales agencies ("Agencies") who serve as resellers of the ReachLocal Service (*i.e.*, ReachLocal engages in indirect marketing).  In many cases, when ReachLocal engages in indirect marketing, it bills and collects payment from the Agencies, who, in turn, bill and collect payment from the Advertisers.  *See* Wright Decl., at ¶ 6.

### 2.    **Ambassador.**

Until recently, Ambassador limited its business to the publication of print yellow pages directories.  *See* Complaint, at ¶ 5.  After witnessing the boom of local search advertising businesses such as ReachLocal, Ambassador apparently decided to expand into that market.

Because ReachLocal already had developed the proven ReachLocal Service, Ambassador decided that it could enter the market more swiftly if it were to align with ReachLocal rather than attempt to develop a competing product from scratch.  To that end, Ambassador contacted ReachLocal and asked to become an Agency.  *See* Complaint, at ¶ 7.

3.    **Stephan Cesarini.**

Stephan Cesarini ("Cesarini"), a co-defendant in this lawsuit, is a former Ambassador employee and current direct sales agent and employee of ReachLocal.  Ambassador alleges that Mr. Cesarini usurped Ambassador's proprietary information, "stole" Ambassador's customers and employees, and disparaged Ambassador's name in the scope and course of his employment with ReachLocal.  *See* Complaint, at ¶¶ 4, 73-79.  Although Ambassador's allegations against Mr. Cesarini are wholly without merit, that is beyond the scope of this motion.

B.    **The Parties' Written Agreements.**

Parties interested in the ReachLocal Service become Agencies in the following manner.  First, the party opens an account with ReachLocal so that it can access the ReachLocal Service.  In order to do so, however, the party must first sign and agree to the Account Terms & Conditions Agreement (the "Account Agreement").  The Account Agreement governs the agency's use of the account and access to the ReachLocal Service.  Second, the party agrees to the Agency Program Terms & Conditions Agreement (the "Agency Agreement").  The Agency Agreement permits the agency to service Advertisers through the party's ReachLocal account.  Thus, interested parties must sign both agreements in order to become Agencies.  *See* Wright Decl., at ¶ 7.

On or about June 25, 2005, Ambassador entered into both an Agency Agreement and an Account Agreement with ReachLocal; Ambassador's CEO, Kathy Hipple, signed both agreements.  *See* Wright Decl., at ¶ 9, Exhs. B & C (the "Agreements").  Thus, *both* Agreements govern Ambassador's relationship to ReachLocal as an authorized Agency of ReachLocal.

The Agreements state on their face that each must be read in conjunction with the other.  Each agreement expressly incorporates the other.  The prefatory paragraph of the Agency

Agreement makes the Account Agreement "a part" of the Agency Agreement.  *See* Wright Decl.,

at ¶ 9, Exh. B.  Similarly, the prefatory paragraph of the Account Agreement states that the

Account Agreement is to be read "in conjunction with" the Agency Agreement.  *See* Wright

Decl., at ¶ 9, Ex. C.  Moreover, the Agency Agreement references the Account Agreement by

name.  *See* Wright Decl., at ¶ 9, Exh. B, ¶¶ 7, 19.

### C.  The Forum Selection Clause Requires That Ambassador File This Action In California Exclusively.

The parties agreed to litigate disputes arising under the Agreements in California.

The parties also agreed to the mandatory application of California law.  Paragraph 22 of the

Account Agreement – the Agreement governing Ambassador's access to the ReachLocal Service

– provides:

> *Choice of Law and Forum*.  This Agreement and the relationship between you and the company shall be governed by the laws of the State of California applicable to contracts entered into and performed in California by residents thereof.  ***Any claim by either party hereto against the other party hereto arising out of or in connection with this Agreement or the Service shall be brought in a court of competent jurisdiction located in the county of Los Angeles County, state of California***; provided that administrative and other non-judicial actions may be brought in any location.

Wright Decl., at ¶ 9, Exh. C (the Account Agreement) (emphasis added).  Paragraph 16 of the

Agency Agreement – the Agreement governing Ambassador's ability to use the ReachLocal

Service to service its customers – calls for the application of California law with respect to the

Agreements:

> *Choice of Law*.  The validity, interpretation, construction and performance of this Agency Agreement shall be construed and enforced in accordance with, and the rights of the parties ***shall be governed by, the laws of the State of California*** without regard to principles of conflicts of law.

*Id.*, at ¶ 9, Exh. B (the Agency Agreement) (emphasis added).[2]

---

[2]    Apparently seeking to avoid the reach of the agreed-upon forum selection clause, Ambassador references only the Agency Agreement in its Complaint.  *See*, *e.g.*, Complaint, at ¶¶ 8-13, 15-16, 49-65.  This is unavailing because Ambassador's claims cannot be decided

The parties negotiated the terms of the Agreements over the course of several weeks. Both parties were represented by counsel. While Ambassador sought and obtained concessions with respect to several provisions contained in the Agreements, it never once indicated disapproval with the forum selection clause. Apparently, Ambassador did not find a California forum to be inconvenient in the event of a dispute. *See* Wright Decl., at ¶¶ 8, 10.

### D. **Ambassador's Claims Center On the Parties' Agreements.**

Because the Agreements govern the parties' failed business relationship, all of Ambassador's claims against ReachLocal relate to the Agreements:

- The First Cause of Action for breach of contract plainly relates to the Agreements. Ambassador is suing ReachLocal for breaching the Agency Agreement. Complaint, at ¶ 66.

- The Second Cause of Action for breach of fiduciary duty relates to the Agreements. Ambassador's sole – albeit erroneous – basis for asserting the existence of a fiduciary duty on ReachLocal's part is the relationship created by the Agreements. Complaint, at ¶ 67.

- The Third and Fourth Causes of Action for tortious interference and aiding and abetting a breach of fiduciary duty both relate to the Agreements. Ambassador contends that ReachLocal stole employees and customers of Ambassador. Complaint, at ¶ 70. Ambassador must rely on provisions of the Agreements to assert that ReachLocal was unauthorized to hire Ambassador employees or do business with its customers. *See*, *e.g.*, Complaint, at ¶ 12.

- The Fifth Cause of Action for misappropriation of trade secrets relates to the Agreements. Ambassador contends that ReachLocal stole propriety

without reference to both Agreements; both define the rights and obligations of the parties pursuant to their failed business relationship.

information in violation of the "Return of Property" provision contained in the Agreements.  Complaint, at ¶¶ 13, 72.

- The Sixth Cause of Action for unfair competition and tortious interference with prospective contractual relations plainly relates to the Agreements:

> Defendants have utilized improper means, including the wrongful use and disclosure of Proprietary Information *obtained in the course of performance of the [Agreements]*, and by inducing Ambassador executives and employees to use and disclose documents and information containing Proprietary Information, and *in breach of the obligations imposed pursuant to the [Agreements]*, and the willful spreading and dissemination of knowingly false and misleading information about Ambassador.  Complaint, at ¶ 78 (emphasis added).

- The Eighth, Ninth, Tenth and Eleventh Causes of Action relate to the Agreements.  In each, Ambassador contends that ReachLocal wrongly used Ambassador's trade name in connection with routine communications and billings sent to Ambassador's customers who advertised on the ReachLocal Service.  Complaint, at ¶¶ 82, 86, 90, 91.  The Agreements define the parties' rights and obligations with respect to the ReachLocal Service, and therefore will control whether these customers belonged exclusively to Ambassador.  Likewise, the Agreements will control whether ReachLocal had authority to contact these customers as part of maintaining the ReachLocal Service.

- The Twelfth Cause of Action for fraud plainly relates to the Agreements.  Ambassador contends that "ReachLocal intentionally induced Ambassador to continue to perform pursuant to the ReachLocal Agreement," and that "Ambassador reasonably relied on ReachLocal's misrepresentations by continuing to perform under the ReachLocal Agreement."  Complaint, at ¶¶ 92, 94.

E.    **The Vast Majority of Critical Witness, Documents and Data Are Located in California.**

Ambassador's claims against ReachLocal primarily concern actions taken, services provided, and decisions made at the ReachLocal headquarters in Woodland Hills, California. *See* Wright Decl., at ¶ 2; *see also* Complaint, at ¶ 2. For this reason, the vast majority of critical witnesses and documents are located in Southern California. For example:

- ReachLocal's Chief Executive Officer, Zorik Gordon (mentioned numerous times in Ambassador's complaint, *see*, *e.g.*, Complaint, at ¶¶ 30-31), works and resides in Southern California. *See* Wright Decl., at ¶ 12. ReachLocal's Vice President of Business Development, Robert C. Wright, who negotiated and executed the Agreements, works and resides in Southern California. *See id.*, at ¶ 2. Some fifty other ReachLocal employees also are located in California. *See id.*, at ¶ 13.

- ReachLocal's books and records are housed at its headquarters in Southern California. *See* Wright Decl., at ¶ 16. Notably, Ambassador seeks an accounting of books and records maintained in Southern California. *See* Complaint (Prayer for Relief).

- All of the software engineers who maintain the ReachLocal Service live and work in Southern California. More than ten software engineers who developed the ReachLocal Service work and reside in Southern California. *See* Wright Decl., at ¶ 14.

- The ReachLocal Service is housed and maintained at ReachLocal's headquarters in Southern California. *See* Wright Decl., at ¶ 15.

- ReachLocal contends that Ambassador breached the Agreements by developing a competing product using stolen technology. SitePen, the

9

developer of the competing product (Complaint, at ¶ 49), is located in Palo

Alto, California.  *See* Declaration of Jason J. Kim ("Kim Decl."), at ¶¶ 2-

3.

## III.

## <u>A DISMISSAL OR TRANSFER BASED ON THE</u>

## <u>FORUM SELECTION CLAUSE IS NECESSARY</u>

### A.    <u>The Standard for Dismissal or Transfer under Rule 12.</u>

Dismissal or transfer is appropriate under Rules 12(b) (1),(3), or (6) where, as

here, a valid forum selection clause applies.  *See AVC Nederland B.V. v. Atrium Inv. Partnership*,

740 F.2d 148, 152 (2d Cir. 1984) (dismissal brought pursuant to 12(b)(1) motion for lack of

subject matter jurisdiction); *Person v. Google Inc*., 456 F. Supp. 2d 488, 498 (S.D.N.Y. 2006)

(dismissal brought pursuant to 12(b)(3) motion for improper venue*); Evolution Online Sys., Inc.

v. Koninklijke PTT Netherland N.V.*, 145 F.3d 505, 508 n.6 (2d Cir. 1998) (dismissal brought

pursuant to 12(b)(6) for failure to state a claim upon which relief can be granted).

The plaintiff bears the burden of establishing subject matter jurisdiction and

proper venue in opposition to a motion by the defendant challenging jurisdiction and venue.  *See

Wells Fargo Century, Inc. v. Brown*, 475 F. Supp. 2d 368, 371 (S.D.N.Y. Feb. 21, 2007) (internal

citations omitted) ("A party seeking to prevent the enforcement of a forum selection clause bears

the heavy burden of making a strong showing in order to overcome the presumption of

validity."); *see also Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002) (plaintiff bears burden

of establishing subject matter jurisdiction); *Pocahontas Supreme Coal Co., Inc. v. National

Mines Corp*., 90 F.R.D. 67, 69 (S.D.N.Y. 1981) (plaintiff bears the burden of establishing proper

venue).

As stated above, Ambassador's claims relate to Agreements containing a valid forum selection clause. Accordingly, this Court can and should dismiss or transfer this case pursuant to Rules 12(b)(1), (3), or (6).[3]

**B.    The Forum Selection Clause Between Sophisticated Commercial Parties is Valid and Enforceable.**

Forum selection clauses are valid and will be enforced, unless the party contesting the validity of the clause satisfies the "***heavy burden*** of showing . . . [that enforcement] will be so gravely inconvenient . . . [that plaintiff] will be effectively deprived of a meaningful day in court." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 19 (1972) (emphasis added); *see also New Moon Shipping Co., Ltd.*, 121 F.3d at 29 (plaintiff "who brought suit in a forum other than the one designated by the forum selection clause," must "make a strong showing in order to overcome the presumption of enforceability."). "The Second Circuit . . . has a 'strong policy' in favor of giving effect to . . . a [forum selection] clause." *Sun Forest Corp. v. Shvili*, 152 F. Supp. 2d 367, 380-81 (S.D.N.Y. 2001); *see also Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993).

A forum selection clause will be found unenforceable only in the following limited circumstances: "(1) if its incorporation into the agreement was the result of fraud or overreaching; (2) if the complaining party will for all practical purposes be deprived of his day in court, due to the grave inconvenience or unfairness of the selected forum; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) if the clause contravenes a strong public policy of the forum state." *Roby*, 996 F.2d at 1363 (citations and internal quotation marks omitted). None of these circumstances is present here.

---

[3]    In the Second Circuit, dismissal based on a forum selection clause is proper under Fed. R. Civ. P. 12(b)(1), (3), or (6). There is, however, no material difference in how these motions are analyzed. *See New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 28-29 (2d Cir. 1997); *see also Weingrad v. Telepathy, Inc.*, 05 Civ. 2024, 2005 U.S. Dist. LEXIS 26952, at *8-9 (S.D.N.Y.) (dismissing state and federal claims pursuant to Rule 12(b)(3) based on a forum selection clause).

1.    **Ambassador Does Not and Cannot Claim Fraud or Coercion.**

Ambassador does not and cannot show that the "inclusion of [the forum selection] clause in the contract was a product of fraud or coercion." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519, n.14 (1974); *see also Harris v. Rezai Bar Indus., Ltd.*, 1999 U.S. App. LEXIS 8577, *4 (2d Cir.) ("fraudulent inducement claim is no defense to a motion to dismiss based on a forum selection clause unless the fraud procured agreement to the clause specifically, rather than to the contract as a whole."). Ambassador does not allege fraud or coercion in connection with the Agreements. To the contrary, Ambassador's claims turn on the validity and enforceability of the Agreements. *See*, *e.g.*, Complaint, at ¶¶ 66-67, 69, 70-72, 74, 92, 94. Nor can Ambassador make a showing of fraud or coercion. Ambassador is a sophisticated, commercial entity that was represented by counsel at the time the Agreements were negotiated. According to Ambassador's own website, Ambassador "is led by a proven management team with extensive experience in media and publishing." Thus, this factor weighs heavily in favor of enforcement of the forum selection clause.

2.    **California is Not an Inconvenient Forum.**

Ambassador does not and cannot show "grave inconvenience or unfairness" if the selected forum is used. For starters, a party resisting enforcement of a forum selection clause on grounds of inconvenience bears a heavy burden of proof. *See Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 11 (2d Cir. 1995). "Trial in the contractual forum [must] be so ***gravely difficult and inconvenient*** that [plaintiff] will for all practical purposes be deprived of [its] day in court." *M/S Bremen*, 407 U.S. at 19 (emphasis added). "Mere inconvenience and expense of traveling are not, standing alone, adequate reasons to disturb the parties' contractual choice of forum." *Weiss v. Columbia Pictures Television, Inc.*, 801 F. Supp. 1276, 1279 (S.D.N.Y. 1992) (citing *Bense v. Interstate Battery Sys. of Am., Inc.*, 683 F.2d 718, 720 (2d Cir. 1982)). This is especially true

considering that such inconvenience was contemplated by the parties when entering into the contract containing the forum selection clause. *See First Interstate Leasing Serv. v. Sagge*, 697 F. Supp. 744, 747 (S.D.N.Y. 1998); *Orix Credit Alliance, Inc. v. Mid-South Materials Corp.*, 816 F. Supp. 230, 234 (S.D.N.Y. 1993) ("A forum selection clause is determinative of the convenience to the parties").

It would not be "gravely inconvenient" for Ambassador to litigate its claims in California. As stated above, Ambassador is a sophisticated entity that was represented by counsel when it negotiated the Agreements. *See* Wright Decl., at ¶ 8. As part of those negotiations, Ambassador considered whether it would be inconvenient to litigate disputes with ReachLocal in California. Even though Ambassador and ReachLocal exchanged multiple drafts of the Agreements, Ambassador never once fought to move the parties' chosen forum to New York. *See id.*, at ¶ 10. Rather, Ambassador accepted California as the parties' chosen forum. Inconvenience was not a factor. *See First Interstate Leasing*, 697 F. Supp. at 747; *Orix Credit Alliance*, 816 F. Supp. at 234. Thus, this factor also weighs heavily in favor of enforcement of the forum selection clause.

### 3.    California Law is Not Fundamentally Unfair to Ambassador, Nor Will its Application Deprive Ambassador of a Remedy.

Ambassador does not and cannot show that any fundamental unfairness of the chosen law may deprive the plaintiff of a remedy." *Roby*, 996 F.2d at 1363. To the contrary, the Central District of California can address each of Ambassador's claims against ReachLocal in a fair manner. As an initial matter, Ambassador agreed to the application of California contract law with respect to the Agreements. *See* Wright Decl., at ¶ 9, Exh. B (the Agency Agreement), ¶ 16 and Exh. C (the Account Agreement), ¶ 22. With respect to Ambassador's Lanham Act claim, the Central District of California is equally well-suited to interpret federal law as this Court. With respect to remedies sought in the Complaint, California law provides for the full

range of relief sought by Ambassador, including damages, injunctive relief, an accounting and restitution. California also has its own unfair competition statutes. *See* Cal. Bus. & Prof. Code § 17200 *et seq.* Thus, this factor also weighs in favor of enforcement of the forum selection clause.

### 4.    California Favors Enforcement of Forum Selection Clauses.

Ambassador cannot show that the forum selection clause "contravenes a strong public policy of the forum state." *Roby*, 996 F.2d at 1363. To the contrary, California law favors enforcement of forum selection clauses, and indeed, shoulders a party resisting a forum selection clause with a heavy burden of proof. *See Schlessinger v. Holland America, N.V.,* 120 Cal. App. 4th 552, 558 (Cal. Ct. App. 2004); *Bancomer, S.A. v. Superior Court of Los Angeles,* 44 Cal. App. 4th 1450, 1457 (Cal. Ct. App. 1996). Thus, enforcement of the forum selection clause is consistent with California public policy.

Indeed, Ambassador's filing of this preemptive lawsuit frustrates California's public policy. In accordance with the forum selection clause, ReachLocal filed a complaint against Ambassador in California on June 15, 2007 for breach of the parties' agreements. As a result of Ambassador's preemptive filing, however, ReachLocal could be forced to file its claims against Ambassador as compulsory counterclaims in New York. *See Currie Medical Specialties, Inc. v. Bowen*, 136 Cal. App. 3d 774, 775-77 (Cal. Ct. App. 1982) (res judicata may bar claims that should have been raised as compulsory cross complaints). Of course, such a result defeats the very purpose of the forum selection clause.

Ambassador cannot challenge the enforceability of the forum selection clause, and as set forth below, cannot dispute that it applies to this action.

### C.    The Forum Selection Clause Applies to this Dispute.

The forum selection clause contained in the Agreements provides:

14

> *Any claim* by either party hereto against the other party hereto
> arising out of or in connection with this Agreement or the Service
> shall be brought in a court of competent jurisdiction located in the
> *county of Los Angeles, state of California* . . .

Wright Decl., at ¶ 9, Ex. C (the Account Agreement), ¶ 22  (emphasis added).  As explained

above, each of Ambassador's claims against ReachLocal arise under the Agreements and/or the

ReachLocal Service.  *See supra* Section II(D).  Thus, each falls within the scope of the forum

selection clause.[4]

The forum selection clause is valid, enforceable and applies to the claims at issue.

Dismissal or transfer under Rule 12(b)(1), (3), or (6) is appropriate.

**D.**     **The Forum Selection Clause Applies To Claims Against ReachLocal's**
           **Employees, Including Mr. Cesarini.**

The forum selection clause also covers Mr. Cesarini.  It makes no difference that

he was not a party to the Agreements.  Forum selection clauses extend to cover non-parties that

are "closely related" to signatories.  *See Int'l Private Satellite Partners, L.P. v. Lucky Cat Ltd.*,

975 F. Supp. 483, 485-86 (W.D.N.Y. 1997) ("It is well established that 'a range of transaction

participants, parties and non-parties, should benefit from and be subject to forum selection

clauses.'") (citation omitted); *Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*, 2003

U.S. Dist. LEXIS 21858, at *16-17 (S.D.N.Y. Dec. 4, 2003) (quoting *Lipcon v. Underwriters at

Lloyd's*, 148 F.3d 1285, 1299 (11th Cir. 1998)) ("In order to bind a non-party to a forum

selection clause, the party must be 'closely related' to the dispute such that it becomes

'foreseeable' that it will be bound."); *accord Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209

(7th Cir. 1993) (quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir.

---

[4]     It makes no difference that some of the claims sound in tort, or are predicated on the
violation of a statute.  Forum selection clauses have been held to cover claims sounding in
contract and in tort, as well as statutory violations.  *Roby*, 996 F.2d at 1361; *Weingrad*, 2005
U.S. Dist. LEXIS 26952, at *8-9 (citing cases).

1988) n. 5); *see also Freietsch v. Refco, Inc.*, 56 F.3d 825, 827-28 (7th Cir. 1995) (non-party defendant may affirmatively invoke a forum selection clause based on principles of mutuality).

Mr. Cesarini is "closely related" to ReachLocal. Indeed, Mr. Cesarini is, and at virtually all relevant times was, a direct sales agent and employee of ReachLocal. *See* Complaint, at ¶ 33. Thus, according to the complaint, he served as the "instrument" for the alleged wrongdoings of ReachLocal. In this respect, ReachLocal and Mr. Cesarini must be treated equally under the Agreements.

Moreover, the nature of ReachLocal and Ambassador's contractual relationship is central to Ambassador's claims against Mr. Cesarini. Ambassador alleges that Mr. Cesarini usurped Ambassador's proprietary information, "stole" Ambassador's customers and employees, and disparaged Ambassador's name during and in violation of the contractual relationship. Complaint, at ¶¶ 4, 73-79. Ambassador alleges that all of Mr. Cesarini's supposed wrongdoings were committed "in breach of the obligations imposed pursuant to the Agreement" with ReachLocal. *Id.*, at ¶ 78. Because Mr. Cesarini is a "closely related" person, the forum selection applies to him as well, and Ambassador's entire action should be dismissed or transferred in favor of a proceeding in California.[5]

---

[5] A contractually-based forum selection clause also covers tort claims against non-signatories if the tort claims "ultimately depend on the existence of a contractual relationship" between the signatory parties, *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983), if "resolution of the claims relates to interpretation of the contract," *Manetti-Farrow, Inc.*, 858 F.2d at 514, or if the tort claims "involve the same operative facts as a parallel claim for a breach of contract." *Lambert v. Kysar*, 983 F.2d 1110, 1121-22 (1st Cir. 1993).

IV.

**ALTERNATIVELY, A TRANSFER UNDER 28 U.S.C.**

**§ 1404(a) IS APPROPRIATE**

A.    **The Standard for Transfer Under 28 U.S.C. § 1404(a).**

Even if Ambassador could somehow avoid application of the forum selection clause, this Court nonetheless can and should transfer the case to the Central District of California.

Section 1404(a) vests federal courts with broad discretion to transfer an action to any district or division where it might have been brought "[f]or the convenience of the parties and witnesses and in the interest of justice."[6] *Quebecor World (USA) Inc. v. Recognition Communications, Inc.*, 2007 WL 776422, *1 (W.D.N.Y.).  Section 1404(a) allows for the transfer of actions to a more convenient federal forum, in part to allay abuses by plaintiffs in picking a proper but inconvenient venue.  *Ferens v. John Deere, Co.*, 494 U.S. 516, 522 (1990); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981) (Section 1404(a) enacted to allow "easy change of venue").

Federal courts look to a number of "private" and "public" factors in ruling on a transfer motion under Section 1404(a).  *Piper Aircraft*, *supra*, 454 U.S. at 257.  Among the private factors considered are:  (1) where the operative events occurred; (2) the convenience of parties; (3) the convenience of witnesses, including who they are, where they are located, and why they are relevant; (4) the relative ease of access to proof; (5) the availability of compulsory process; and (6) the plaintiff's choice of forum, and all other practical problems that make trial of a case easy, expeditious and inexpensive.  *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508 (1947); *see*

---

[6]    28 U.S.C. § 1404(a) applies to actions removed from state court.  *See*, *e.g.*, *Eslworldwide.com, Inc. v. Interland, Inc.*, 2006 WL 1716881, *1 (S.D.N.Y.).

*also Ricoh Corp. v. M/V MING PLENTY*, 2002 WL 109576, *1 (S.D.N.Y.) (citing the *Gulf Oil Co.* factors). Among the public factors considered are: (1) a court's familiarity with governing state law; (2) the local interest in having localized controversies decided at home; (3) the avoidance of unnecessary problems of conflict of laws or the application of foreign law; (4) relative docket congestion; (5) feasibility of consolidation with an action elsewhere; and (6) all other problems relative to judicial economy. *Id.*

Each of these factors favors transfer to the Central District of California

### 1. The Convenience of Witnesses Weighs Heavily in Favor of Transfer.

The convenience of the witnesses is the "most powerful factor governing the decision to transfer a case." *Royal Ins. Co. v. United States*, 998 F. Supp. 351, 354 (S.D.N.Y. 1998). Here, the convenience of the witnesses weighs heavily in favor of a transfer to California.

The focal point of this dispute is the Agreements and the ReachLocal Service. The vast majority of witnesses with first-hand knowledge relevant to the Agreements and the ReachLocal Service work and reside in California. ReachLocal's Chief Executive Officer, Zorik Gordon, works and resides in California. *See* Wright Decl., at ¶ 12. ReachLocal's Vice President of Business Development, Robert C. Wright, who negotiated, signed and executed the Agreements, works and resides in California. *See id.*, at ¶ 2. Some fifty other ReachLocal employees also are located in California. *See id.*, at ¶ 13. For example, ReachLocal's team of software engineers, who developed and maintain the ReachLocal Service, are among those who work and reside in California. *See id.*, at ¶ 14. Finally, ReachLocal contends that Ambassador – and not ReachLocal – breached the Agreements by developing a competing software service based on stolen technology. SitePen, the purported developer of the pirated software, is located in California. *See* Kim Decl., at ¶¶ 2-3. Thus, this first factor weighs in favor of a transfer.

2.     **The Convenience of the Parties Weighs Heavily in Favor of Transfer.**

The convenience of the parties also weighs heavily in favor of a transfer to California. Ambassador cannot claim that California is an inconvenient forum. Ambassador agreed to litigate claims related to the Agreements and/or the ReachLocal Service in California. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) ("The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus."); *see also Longview Equity Fund, LP v. McAndrew*, 2007 U.S. Dist. LEXIS 4581, *14-16 (citing *Stewart Org., Inc.*). Thus, this second factor weighs in favor of a transfer.

3.     **The Bulk of the Evidence is in California.**

The location of relevant evidence in this action also mandates transfer to California. *See Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*, 11 F. Supp. 2d 729, 730 (S.D.N.Y. 1998) (noting that ease of access to evidence weighs in favor of transfer). The focal point of this dispute is the Agreements and the ReachLocal Service. The vast majority of evidence relevant to the Agreements and the ReachLocal Service is located in California. ReachLocal's internet servers are housed in California. *See* Wright Decl.*,* at ¶ 15. The ReachLocal Service is maintained in California. *See id.* Relevant documentation – including financial records for purposes of damages and/or an accounting, documentation relating to the Agreements, lists of "stolen" customers, documentation relating to the ReachLocal Service and the pirated SitePen service – is stored in California. *See* Kim Decl., at ¶¶ 2-3. Thus, this third factor weighs in favor of a transfer.

4.      **The Requirements of Compulsory Process Make California a
More Convenient Forum.**

The reach of this Court's subpoena power to secure witness attendance also

indicates that the action should be transferred to California.  *Gulf Oil Corp.*, *supra*, 330 U.S. at

508-509 (courts consider whether compulsory process is available in analyzing a § 1404(a)

transfer motion).  Under Federal Rule of Civil Procedure 45, a court may issue a subpoena to

compel attendance at a hearing anywhere within the district, or within one hundred miles of

where the hearing will occur.  Fed. R. Civ. P. 45.  Applying the rule to the instant matter, this

Court would be unable to compel the attendance of any of the third-party witnesses in California

who decline to travel to New York voluntarily, given that all of them reside far outside this

district and the hundred-mile limit.

A critical part of ReachLocal's defense concerns third-party witnesses located in

California.  As stated above, ReachLocal contends that Ambassador breached the Agreements –

not ReachLocal – by hiring SitePen to develop a pirated, competing version of the ReachLocal

Service using stolen technology.  With restricted access to witnesses from SitePen, ReachLocal

might be denied the opportunity to present fully a critical element of its defense.  Thus, this

fourth factor weighs in favor of a transfer.

5.      **The Central District of California is Likely to Be More
Familiar With California Law.**

In accordance with the choice of law provisions contained in the Agreements,

California law will apply.  In general, a presumption exists that a federal court has greater

familiarity with the substantive law of the state in which it sits, than its sister federal courts

sitting elsewhere.  *See Aarons v. Worldtel Services, Inc.*, 1996 WL 185714, at *5 (S.D.N.Y.)

("Although this Court is familiar with breach of contract and fraud issues, the California court is

likely to be far more familiar with the particulars of California substantive law."). Thus, this fifth factor weighs in favor of a transfer.

6.      **The Relative Docket Conditions Favor a Transfer to California.**

Courts also look to the relative docket conditions of the transferor and transferee courts. *In re Nematron Corp. Securities Litigation*, 30 F. Supp. 2d 397, 407 (S.D.N.Y. 1998) (noting the median time from filing to disposition was shorter in transferee forum); *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 991 (E.D.N.Y. 1991) (calendar congestion is "a proper factor for the Court to consider and is accorded 'some weight.'"). For the year 2005-2006, the median time from filing to trial of civil cases in the Central District of California has been over four months shorter than in the Southern District of New York. Moreover, in 2006, there were 443 civil cases per judge pending in the Central District of California, whereas there were 716 civil cases per judge pending in the Southern District of New York. *See Federal Court Management Statistics 2006*, available at http://www.uscourts.gov/cgi-bin/cmsd2006.pl. Consequently, this sixth factor weighs in favor of a transfer.

In the end, the vast majority of the Section 1404(a) factors weigh in favor of a transfer to the Central District of California. [7]

---

[7]    In light of the Agreements' mandatory forum selection clause, Ambassador's choice of forum is entitled to no deference. *See Weiss v. Columbia Pictures Television, Inc.*, 801 F. Supp. 1276, 1278 (S.D.N.Y. 1992) ("Although deference is normally accorded plaintiff's original choice of forum, deference is inappropriate where plaintiff has already contractually chosen the appropriate venue.")

## V.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants' respectfully request that the Court enter an order: (1) dismissing or transferring this case pursuant to Rule 12(b)(1),(3) and/or (6); or, alternatively, (2) transferring the case to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a).

Dated:        New York, New York
              June 21, 2007

                              LATHAM & WATKINS LLP

                              By: /s Sabrina Y. Hassan
                                 Blair G. Connelly (BC-0237)
                                 Sabrina Y. Hassan (SH-2081)
                                 885 Third Avenue, Suite 1000
                                 New York, NY  10022
                                 Tel: (212) 906-1200

                                 *Attorneys for Defendants*
                                 *ReachLocal, Inc. and Stephan Cesarini*

*Of Counsel:*

Daniel Scott Schecter
Jason J. Kim
Amjad M. Khan
Michele L. Lorbieski
LATHAM & WATKINS LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007
(213) 485-1234

22