**Agency Program Terms & Conditions**

ReachLocal, 17835 Ventura Blvd, #310 Encino, CA 91316 ("Company"), enters into an Agency Agreement with Ambassador Publications, LLC ("Business") with the following Program Terms and Conditions ("Agency Agreement") becoming immediately effective with Business establishing an Agency account with Company on the ReachLocal.com Web site. Capitalized terms used herein but not otherwise defined herein shall have the meaning ascribed to such terms in the Account Terms and Conditions, as modified from time to time, of which this agreement is a part, or, if applicable, in the form of Advertising Terms & Conditions attached hereto and made a part hereof for such purpose.

1. Definitions & Conditions.

*Advertiser:* "Advertiser" or "Advertisers" shall refer to an individual or business whose product(s) and/or service(s) are promoted on the Internet or any other medium by way of the Services and who have been set up as an Advertiser through the Company web site under the Business' Agency account. If Business sets itself up as an Advertiser, Business will NOT, for the purposes of this Agency Agreement, constitute an Advertiser that will be covered under this Agency Agreement. Business agrees that Company, at its sole discretion, may use whatever means it has to determine whether an Advertiser is to be covered under this Agency Agreement or whether the Advertiser is, in fact, one and the same as the Business. Business also acknowledges that any advertising purchased directly by one or more if its Advertisers – either current, future, or past -- through their own Advertiser or Agency account shall NOT be covered under this Agency Agreement; provided, however, Company shall engage in no action the likely effect of which will be to impair Business' relationship with Advertisers who have been set up through Business' Agency account.

*Agency:* "Agency" shall refer to an individual or business who represents one or more Advertisers for the purposes of purchasing advertising services through the Company Web Site or any other means covered under this Agency Agreement and who has set up those Advertisers within their Agency account. For purposes of this Agency Agreement, the Business shall constitute an Agency and shall be the only Agency affected by this Agreement contained herein.

*Amount Paid:* "Amount Paid" shall refer to the amount of money – in U.S. currency – received by Company for advertising placed by Business on behalf of one or more Advertisers. Payment may be by credit card, electronic check, physical check (payable to Company), cash, or cashier's check. Business acknowledges that credit card and electronic check payments are subject to third party approval and that such payments are not considered final – and, as such, part of the Amount Paid – until approval by one or more third parties. Business acknowledges that payments by physical check are considered paid once the check has cleared with Company's bank.

*Chargebacks:* "Chargebacks" shall refer to the amount of money – in U.S. currency – charged back to Company or assessed to Company by Business, Advertiser, or Business or Advertiser's agent(s). Examples include, but are not limited to: (i) Cancellation requests made by Agency or Advertiser from the Agency or Advertiser's credit card provider, regardless of reason; (ii) Cancellation requests made by Agency or Advertiser from the Agency or Advertiser's bank, regardless of reason – said cancellation requests resulting in monies charged back to Company, including fees in excess of the original amount paid.

*Commissionable Amount:* "Commissionable Amount" as of any time shall refer to the Actual Campaign Spend as of such time actually paid by Business or Advertiser as described in the definition of Amount Paid above, less any promotional credits, campaign credits or Chargebacks issued to Business or its Advertisers.

2. Agency Relationship. Business represents and warrants that it has been authorized by each Advertiser to act as such Advertiser's agent in all respects relating to the Services, including, without limitation, the making of any elections or giving of any consents. .

3. Term of Agency Agreement. The term of this Agency Agreement commences on the date at which Business creates an Agency account on Company Web Site and shall continue until thirty (30) days after either party notifies the other in writing of its election to terminate this Agreement.

4. Commissions. Company will pay Commissions to Business pursuant to Section 5 below for advertising placed and paid for by Business on behalf of one or more Advertisers in the amount of twenty five (25%) of the Commissionable Amount. Commissions will be calculated based on activity for an entire calendar month. Business acknowledges that Company may establish different commission rates with other businesses, which amounts may be higher or lower that the commission rate set forth herein.

5. Terms of Payment. Business shall pay all invoices submitted by Company within thirty (30) days of the date of the invoice. Amounts due and owing by Business that are not paid when due shall bear interest at the rate of one-and-one-half percent per month (or the highest rate permitted by law, if less) until paid in full. In the event of any failure by Business to make payment, Business will be responsible for all reasonable expenses (including attorneys' fees) incurred by Company in collecting such amounts. All payments due hereunder are in U.S. dollars and are exclusive of any sales, use or similar applicable taxes. Business shall promptly pay all such taxes and any associated interest and penalties. Payment shall be made to Business for the full amount of the Commissions owed Business, per the formula above, provided that the Commissions to be paid are greater than $50.00. In the event the Commissions are less than $50.00, that amount will be added to Commissions for future months, and, when that amount equals or exceeds $50.00, Company will pay Business for the full amount at that time. Payment shall be made to Business within thirty (30 days) of the end of the month for which the Commissions are calculated. In the event of a period where the Commissions are negative and the Business owes Company money – for instance, a period where the chargebacks exceed the Amount Paid – that amount will be deducted from future Commissions owed Business, unless that amount is greater than $50.00, in which case Business will be charged the full amount. Business will have thirty (30) days from the end of the month to pay the full amount (payable to Company). Amounts paid after such date shall bear interest at the rate of one-and-one-half percent per month (or the highest rate permitted by law, if less) until paid in full. In the event of any failure by Company or Business to make payment, the defaulting party will be responsible for all reasonable expenses (including attorneys' fees) incurred by the other in collecting such amounts. Commissions will be paid to the Business (in the name of the Business) and will be mailed to the Business address specified by Business as part of the Business Information section of the Company Web Site and as provided by Business. Company is not responsible for incorrect or inaccurate information provided by Business and will not be responsible for looking for current address information in the event a commission payment is returned to Company due to inaccurate address information; provided Company will notify Business of such return by e-mail, fax or other means. All payments due hereunder are in U.S. dollars and are exclusive of any applicable taxes for which Company shall make no deduction or withholding. Business shall be responsible for all applicable taxes.

6. Statistics & Reporting. Business acknowledges that statistics and Commission reports provided by Company are conclusive and binding on Business for all purposes of this Agreement; *provided, however,* that Business shall have the right, at its sole cost and expense, to audit such Commission reports no more than once in any twelve month period, and Company shall provide access to Business during normal business hours to review all relevant records and data.

7.      Mark-Up. Business agrees that it will not require its Advertisers to pay more than they would have paid by opening an advertising account directly. Any amounts Business charges in excess of such amount will be considered a "Mark-Up." No commission will be owed hereunder in connection with any Advertiser that pays any Mark-Up, and Business will immediately return any commission paid with respect to any such Advertiser.

8.      Highest Standards of Integrity, Honesty, and Responsibility. Company and Business agree to uphold the highest standards of integrity, honesty, and responsibility in its dealings with Advertisers and with each other. Business further agrees to present, and Company agrees to provide, the Services in a truthful and sincere manner and Business and the Company shall indemnify and hold each other harmless from and with respect to any losses, damages, claims, expenses (including without limitation attorneys' fees) resulting from or relating to any intentional or unintentional misrepresentations by the other (or in the case of Business any of its Advertisers).

9.      Company Trademarks & Name. Each of Company and Business agrees to protect the other's trademarks and trade name by obtaining from the other written permission prior to any use in any advertising or literature. Company agrees that, with respect to Business and Advertisers using Business as their Agency only, the final paragraph of Section 7 of the Account Terms & Conditions shall only be applicable for purposes of providing the Services hereunder.

10.     Obligation to Provide Goods or Services. Upon execution of any Advertising Agreement for Company's benefit, Company shall diligently and in good faith provide Services to Business or to Advertisers represented by Business; provided, however, that Company shall be entitled to reject any request for Services within 10 business days of the establishment of any Campaign through the Business Agency Account.

11.     Agreement Not to Interfere. Each of Company and Business agrees that it will not, during the term of this Agency Agreement and for a period of at least one (1) year after the termination of this Agency Agreement, (i) take any action to solicit or divert any Advertisers away from the other; provided, however, that Advertisers who have been set up through Business' Agency account shall not be deemed to be Advertisers of the Company for the purpose of Business' non-solicitation covenant herein, (ii) induce customers, clients, suppliers, service providers, vendors, agents or other persons under contract or otherwise associated or doing business with either party to terminate, reduce or alter any such involvement, association or business, and/or (iii) induce any person in the employment of, or any consultant to Business or Company to (A) terminate such employment or consulting arrangement, (B) accept employment, or enter into any consulting arrangement, with anyone other than such party, and/or (C) interfere with the suppliers, service providers, vendors, clients, or customers of Business or Company in any manner or the business of Business or Company in any matter. Business understands and acknowledges that Company is not responsible should one of Business' Advertisers, whether past, present, or future, establish, of their own accord, an Advertiser or Agency account through Company Web Site, and, under such circumstances, Business understands that subject to the provisions of this Agreement, Company shall in no way be construed as being in breach of this Section 11 or any other part of this Agency Agreement.

12.     Return of Property. All materials (including, without limitation, documents, drawings, models, apparatus, sketches, design and lists) furnished to the other party (the "Property") are the sole and exclusive property of delivering party or its suppliers or customers. The parties agree to promptly deliver the original and any copies of Property to the delivering party at any time upon request by such party. Upon termination of this Agency Agreement by either party for any reason, each party agrees to promptly

deliver to the other or destroy, at the delivering party's option, the original and any copies of Property of the delivering party. Each party agrees to certify in writing that such party has so returned or destroyed all such Property of the delivering party.

13. Termination. Notwithstanding any other provision hereof, either party may terminate this Agency Agreement upon written notice of the other party's material breach and/or any misconduct by such other party directly affecting this Agency Agreement. Either party may also terminate this Agency Agreement for "Cause", which shall include (i) willful misconduct, bad faith or material breach of this Agreement or any related agreement and (ii) willful failure to adequately provide services to their Advertisers more than two (2) times in any twelve (12) month period, such determination to be made by the Business in its reasonable discretion. The parties understand that termination, whether by Company or by Business, will involve the de-activation of all accounts established by the Business and that, as a result, Business will no longer have access to statistics, reports, or any information pertaining to Commissions at the time the accounts are de-activated; provided that in all events Company shall provide Business with a final report and shall pay any commissions relating to any deactivated account. The Effective Date of termination will be the date at which the last Business account is de-activated, though Company is under no obligation to provide notification to Business as to when that occurs. Business acknowledges that, subject to Company's non-impairment covenant set forth in Section 1, and further subject to Company's non-solicitation covenant set forth in Section 11 (each of which such covenants shall take precedence over the provisions of this Section 13), Company shall be allowed to market its services directly to Business' Advertisers without being in breach of any provision of this Agreement and Company acknowledges that this Agreement is non-exclusive in all respects whatsoever, and further, that upon termination for any reason or for no reason, or otherwise upon deactivation, nothing herein shall in any manner whatsoever restrict Business' ability to solicit prior, current or prospective Advertisers for the provision of one or more similar or alternative services, including, without limitation, services substantially similar to the Services to be provided by Company hereunder. Company agrees to honor, and make any Commission payments, due and owing, to Business – even if the amount is under $50.00 – within thirty (30) days of the Effective Date of Termination, subject to Company's right to offset any Commissions owing against amounts owed by Business or its Advertisers to Company. In the event the Commissions are less than $0.00, and the Business owes Company, Business will send payment within thirty (30) days of the Effective Date of Termination or the date at which Business notified Company of its desire to terminate (in the case the termination is initiated by Business), whichever is sooner.

14. Limitations of Liability. COMPANY'S ENTIRE LIABILITY UNDER OR RELATED TO THIS AGENCY AGREEMENT (INCLUDING UNDER THE ACCOUNT TERMS AND CONDITIONS), WHETHER IN TORT, CONTRACT OR OTHER THEORY, EXCEPT IN THE EVENT OF GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, SHALL NOT EXCEED THE AMOUNT OF COMMISSIONS ACTUALLY PAID HEREUNDER.

15. Counterparts. This Agency Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together will constitute one and the same instrument.

16. Choice of Law. The validity, interpretation, construction and performance of this Agency Agreement shall be construed and enforced in accordance with, and the rights of the parties shall be governed by, the laws of the State of California without regard to principles of conflicts of laws.

17. Waiver. No provision of this Agency Agreement shall be modified, waived or discharged unless the modification, waiver or discharge is agreed to in writing and signed by an authorized officer of the Business and the Company. No waiver by either party of any breach of, or of compliance with, any condition or provision of this Agency Agreement by the other party shall be considered a waiver of any other condition or provision or of the same condition or provision at another time.

18. Jury Trial Right Waiver/Costs. Each of the parties irrevocably waives any right it may have to a trial by jury in any such action, suit or proceeding. Each of the parties agrees that the prevailing party in any action or proceeding arising out of or relating to this Agency Agreement or the transactions contemplated hereby shall be entitled to recover its reasonable fees and expenses in connection therewith, including without limitation legal fees.

19. Amendment. Business acknowledges that the Account Terms and Conditions, of which this Agreement is a part, are subject to change by Company at any time; provided, however, that Company agrees (i) to provide at least thirty days notice of any such change whenever practical and (ii) that no change affecting Business' liability under this Agreement or the Account Terms and Conditions will be made as to Business without Business prior written consent.

20. Heirs, Successors and Assigns. Except as herein otherwise provided, this Agency Agreement shall be binding upon and inure to the benefit of the parties hereto, their respective heirs, executors, legal representatives, successors and assigns; provided, however, that Business may not assign this Agency Agreement or any of its rights or obligations hereunder (or under the Account Terms and Conditions) to any party whose principal business activities are competitive with the Service.

21. No Inconsistent Terms. In the event that Company's Web site has any terms (including without limitation in any "click through" agreements) that are inconsistent with the provisions of this Agency Agreement, this Agency Agreement shall take precedence.

---

Robert C. Wright
VP of Business Development
ReachLocal, Inc.

_[signature]_
Ambassador Publications, LLC
6/25/06