UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

AMBASSADOR PUBLICATIONS, L.L.C.,

07 CIV 5687 (LTS)

Plaintiff,

- against -

REACHLOCAL, INC.,  STEPHAN
CESARINI, PAUL DeBIASE,
LAWRENCE STONE, ADVANCED
ROI, ANDREW KNIGHT and
DOUGLAS KELLEHER,


Defendants.
-------------------------------------------------------x


# MEMORANDUM OF LAW IN OPPOSITION
# TO DEFENDANTS' MOTION TO DISMISS OR TRANSFER


**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
*Attorneys for Plaintiff*
199 Water Street, 25th Floor
New York, New York 10038
(212) 232-1300

# TABLE OF CONTENTS

**Page**

Preliminary Statement................................................................................. 1

STATEMENT OF FACTS............................................................................ 3

    A. The Allegations of the Amended Complaint............................................ 3

    B. The Facts Pertinent to This Motion........................................................ 4

ARGUMENT................................................................................................. 8

I  DEFENDANTS' MOTION TO DISMISS IS IMPROPER............................ 8

II THE COURT SHOULD EXERCISE ITS
   DISCRETION TO DENY DEFENDANTS' MOTION .................................. 9

    A.    This Action Could Not Have Been
         Commenced In the Proposed Transferee Court ...................................... 10

    B. Analysis of the Pertinent Factors Favors Ambassador ........................... 11

        1. The Convenience of Witnesses............................................................ 11

        2. The Locus of the Operative Facts........................................................ 14

        3. The Convenience of the Parties .......................................................... 15

        4. The Governing Law .......................................................................... 16

        5. The Availability of Documents ........................................................... 16

        6. Trial Efficiency Considerations .......................................................... 17

        7. The Ability To Add Additional Necessary Parties................................. 17

    C.    The Forum Selection Clause Does Not Mandate Transfer ..................... 18

    D.    The Interest of Justice Favors Ambassador ........................................... 19

CONCLUSION ............................................................................................. 21

## Preliminary Statement

Plaintiff Ambassador Publications, L.L.C. ("Ambassador"), by its attorneys Lewis Brisbois Bisgaard & Smith LLP, submits this memorandum of law in opposition to the motion to dismiss or transfer of defendants ReachLocal, Inc. ("ReachLocal") and Stephan Cesarini ("Cesarini").[1]

Immediately before defendants' motion to dismiss or transfer was filed, Ambassador filed an Amended Complaint, and the parties subsequently stipulated to permit Ambassador to file a Second Amended Complaint on the condition that this motion would be deemed to have been addressed to the Second Amended Complaint. The amendment makes even more clear that the motion should be denied, inasmuch as this action now includes as defendants four individuals and one unincorporated business entity, all residing or doing business in New York State and not subject to the jurisdiction of a California court, and as to whom this Court is clearly the more convenient forum.

Further, defendants' motion to dismiss should be denied because the action is properly placed in this Court, in which all the parties are subject to jurisdiction, and transfer is unavailable since Cesarini, and the newly added defendants Stone, DeBiase, Knight, Kelleher and Advanced ROI could not have been sued in the proposed transferee district.

Assuming *arguendo* that Defendants could surmount that obstacle, their argument that transfer is appropriate based on a contractual forum selection clause fails because this suit is broader than that clause. Ambassador asserts claims sounding in, among other things, misappropriation of trade secrets, unfair competition, tortious interference with contract, tortious

---

[1] Also submitted in opposition are the declaration of Peter T. Shapiro, Esq. (the "Shapiro Declaration") and the affidavits of Kathryn Hipple (the "Hipple Affidavit") and Richard Hargrave (the "Hargrave Affidavit").

interference with prospective business advantage, fraud, and pursuant to the Lanham Act and the General Business Law, against ReachLocal and Cesarini, a non-party to the agency agreement, as well as the four new defendants who likewise are not parties to the agreement and are being sued for conduct unrelated to an agreement to which they were not parties. Ambassador also alleges that Cesarini breached a settlement agreement with Ambassador which resolved an action pending in the Supreme Court, New York County, which was executed by both parties in New York State and which has no nexus at all to California. In sum, given that the forum selection clause is merely one consideration among various pertinent factors that the courts examine on transfer motions, and is not dispositive particularly given the myriad claims being asserted by Ambassador that are not limited to disputes arising under the contract containing that clause, and because the factors to be weighed on a transfer motion predominate in Ambassador's favor as demonstrated below, transfer is inappropriate.

The convenience of witnesses is a critical factor in addressing a transfer motion, and that factor decisively tips the balance in favor of litigation in New York. Defendants have not made out their burden to identify the witnesses in California, and the substance of their testimony, who would be inconvenienced by litigating in New York. They have not done so because they cannot do so. Virtually all of the non-party witnesses are in New York. As the Hargrave Affidavit demonstrates, the more than 50 clients with whom Defendants interfered are here; ReachLocal's independent agents who are part of their improper competition against Ambassador are here; the new software developers Ambassador utilized are here. Those New York based non-party witnesses cannot be subpoenaed for trial if this case is litigated in Los Angeles, and as a result Ambassador's ability to prove its case would be devastated were this case transferred. By contrast, there are virtually no non-party witnesses in California whose testimony cannot be

obtained in a New York litigation. And since the actionable conduct was committed by ReachLocal executives and agents in New York State, or via contacts with persons in New York State, and party witnesses such as all Ambassador personnel, and defendants Cesarini, Stone, DeBiase and Knight are here, this action belongs in the Southern District.

## STATEMENT OF FACTS

### A.    The Allegations of the Second Amended Complaint[2]

Ambassador filed this action in the Supreme Court, New York County, and it was subsequently removed to this Court by defendants based on federal question jurisdiction. Ambassador's Second Amended Complaint asserts 13 purported causes of action against the two originally named defendants – ReachLocal, a Delaware corporation with its principal place of business in California, and Cesarini, who has lived and worked in New York State at all relevant times - and five other New York based defendants added to the case via amendment: Stone, DeBiase, Knight, Kelleher and Advanced ROI.

As the Second Amended Complaint describes in some detail, Ambassador has sought to service clients interested in reaching customers via internet advertising. It contracted with ReachLocal pursuant to an Agency Agreement, executed in July 2005 (the "ReachLocal Agreement"), which enabled Ambassador to use ReachLocal's proprietary software to offer its clients pay per click advertising. When the ReachLocal Agreement was executed, it was agreed that ReachLocal would not be competing with Ambassador by offering internet advertising solutions to clients in New York State. It was not long, however, before ReachLocal began to do just that. During 2006, it began to seek its own advertising clients in New York. When

---

[2] A copy of the Second Amended Complaint (the "Second Amended Complaint") is annexed as Exhibit A to the Shapiro Declaration.

confronted about this breach, ReachLocal's CEO Zorick Gordon visited Ambassador at its New York City headquarters and reassured Ambasssador that ReachLocal would not be seeking business from Ambassador's own clients, but rather from other advertisers. Once again, ReachLocal's promises were false. It began to seek to establish direct relationships with Ambassador's clients and eliminate Ambassador's role. Perturbed by this turn of events and understandably concerned that ReachLocal would not be a viable long term partner, Ambassador contracted with SitePen, a third party, to develop its own software.

As part of ReachLocal's plan to steal Ambassador's clients and cripple its business, in March 2007 ReachLocal - without warning - purported to terminate Ambassador's ability to use the ReachLocal software to service its clients. Ambassador was forced to rapidly transition to its own software, earlier than had been contemplated. Meanwhile, ReachLocal and its local agents, including Cesarini, and Ambassador employees whom ReachLocal had solicited – DeBiase and Stone, and subsequently Knight, also a former Ambassador employee whom Stone and DeBiase apparently recruited to join this illicit scheme, and also Kelleher, who is now selling the ReachLocal product  - swooped in and began to intensively solicit Ambassador's clients to end their relationships with Ambassador in favor of direct relationships with ReachLocal, and also continued to use the Ambassador name and trademark in order to confuse the clients about the origin of the services being provided. Ambassador's business has been substantially harmed as a result of the conduct of ReachLocal and the other defendants.

## B.    The Facts Pertinent to This Motion

Ambassador is a Delaware limited liability company with executive headquarters in New York City and small satellite sales offices in New York State. It has no personal or real property or accounts anywhere other than in New York State. It has no regular ongoing connection to

California other than pursuant to the ReachLocal Agreement and by virtue of having contracted with SitePen, a company based in the Silicon Valley (although the SitePen employees and consultants working with Ambassador are in New York (Hargrave Affidavit ¶ 8).

Defendant Cesarini lives and works in New York State. All of his actionable conduct occurred here, including his breach of a settlement agreement entered into to resolve a litigation pending in the Supreme Court, New York County, and his actionable conduct in aiding and abetting ReachLocal's various wrongful acts as detailed in the Second Amended Complaint including interfering with Ambassador's clients and employees. There is no forum selection clause even arguably applicable to the claims against Cesarini or the new defendants.

Defendants Stone, DeBiase, Kelleher and Knight are all individuals who worked for Ambassador in New York City and who live in New York State. Defendant Advanced ROI is an unincorporated business entity located in Westchester County, with or through which those individuals are working to compete with Ambassador. Thus, all of the defendants other than ReachLocal are located exclusively within the Southern District. Ambassador's claims against them are exclusively based on their New York conduct.

Critically, virtually every party and non-party witness with knowledge relevant to the instant litigation is located in New York State, with the exception of certain ReachLocal employees located in Southern California mentioned generally in the declaration of ReachLocal Vice President Robert C. Wright (the "Wright Decl.") at ¶¶ 12-14. The Wright Declaration identifies only two witnesses by name: Mr. Wright and CEO Zorik Gordon, the executives, and otherwise refers to employees and engineers as a group, and does not explain what they might testify about pertaining to this case. Every employee of Ambassador with relevant knowledge – including Kathryn Hipple, Sergio Alvarez and Richard Hargrave - works in New York State and

most live here as well. Cesarini, Stone, DeBiase, Kelleher and Knight live and work in New York State. But it is most significant that the non-party witnesses with knowledge are all in New York State. Those non-party witnesses include representatives of the various clients of Ambassador with which ReachLocal has interfered. The individuals from more than 50 companies at issue set forth in the Hargrave Affidavit will testify about defendants' unfair competition, committed in New York with respect to New York clients.

Much of the conduct at issue in Ambassador's Second Amended Complaint occurred in New York State. ReachLocal CEO Gordon visited Ambassador at its New York offices for the purpose of discussing how matters would proceed under the ReachLocal Agreement once ReachLocal began to breach its obligations to Ambassador by competing directly in New York for clients; it was there that Mr. Gordon misrepresented that ReachLocal would not go after Ambassador's clients. It was there that Ambassador relied on Mr. Gordon's representations, by continuing to do business with ReachLocal. And it was there that ReachLocal proceeded to breach, by having defendant Cesarini and other local personnel and agents such as DeBiase and Stone breach their contractual obligations to Ambassador and unfairly compete with Ambassador by stealing its trade secrets, and by using those individuals to compete for Ambassador's clients.

Defendants' brief (cited as "Defendants' Mem.) accuses Ambassador of forum shopping (e.g., Defendants' Mem. at 1, 14). That accusation finds no support in the Wright Declaration or other factual foundation in the moving papers. It is ludicrous to accuse Ambassador of forum shopping in an attempt to file a preemptive lawsuit and beat ReachLocal to the courthouse when Ambassador first filed suit here against DeBiase, Stone and Advanced ROI in March 2007, and then in May 2007 filed a second suit against ReachLocal and Cesarini as the impact of their conduct came to more severely impact Ambassador's business. While Ambassador had received

ReachLocal's two March 2007 letters, purporting to claim that Ambassador owed it money and had acted improperly, given the circumstances it did not appear that ReachLocal intended to file suit in the near future, and it failed to file suit as the months passed.[3] If anything, Ambassador believed that ReachLocal would hesitate to bring suit particularly regarding its putative intellectual property claims since Ambassador's counsel had corresponded with ReachLocal's counsel and explained persuasively that ReachLocal could not possibly prove copyright infringement or other actionable conduct in view of Ambassador's lack of access to any of the information that would have been needed to copy ReachLocal's software (Hipple Affidavit ¶ 8 and Exh. B).

Thus, it is ReachLocal, not Ambassador, that is forum shopping, and fostering judicial inefficiency, by – after being served with process in this action - filing a Summons and Complaint in the California Superior Court for Los Angeles, asserting claims that could have and should have been filed as compulsory counterclaims in this action (Hipple Affidavit ¶¶ 8 and Exhibit D). While Defendants' motion purports to rely on efficiencies and conveniences to be served by transferring this case to California federal court, it is apparent that ReachLocal is abusing the process and fostering inefficiency, inconvenience and waste of judicial resources, in a misguided effort to stack the deck in favor of litigating in its home court where Ambassador's claims against all defendants cannot be fully aired. Although the "first filed rule" may not apply here since the second suit is in a state court, this Court should not ignore Defendants' blatant and counterproductive forum shopping.

---

[3] ReachLocal's demand letters conspicuously failed to say that suit was going to be imminently, or set a deadline for a response under threat of imminent legal action. No suit had been filed more than two months after the second letter. Hipple Affidavit ¶ 7 and Exh. A. Ambassador's commencement of this action was not an anticipatory filing. *See generally,* Schnabel v. Ramsey Quantitative Systems, Inc., 322 F. Supp.2d 505, 512-513 (S.D.N.Y. 2004).

# ARGUMENT

## I    DEFENDANTS' MOTION TO DISMISS IS IMPROPER

Defendants' motion should be denied insofar as it seeks dismissal of this action rather than transfer.[4] Defendant Cesarini resides in the Southern District, and ReachLocal is considered a resident of any jurisdiction in which it is subject to personal jurisdiction under 28 U.S.C. § 1391(c). Day Village L.P. v. CW Capital, L.L.C., 06 CV 3424, 2006 WL 2572118, at *2 (S.D.N.Y. Sept. 7, 2006). ReachLocal's authorization to do business in New York and selection of a local agent for service of process (Shapiro Affidavit Exhibit B) and operation of a New York sales office through Cesarini (Hargrave Affidavit ¶ 9) renders it subject to personal jurisdiction in New York State. It so concedes by failing to move to dismiss on the basis of lack of *in personam* jurisdiction. *Id.*

"The fact that a forum selection clause exists is not a relevant part of the analysis to determine whether venue is proper" in this District. Matera v. Native Eyewear, Inc., 355 F. Supp.2d 680, 683 (E.D.N.Y. 2005). That that the parties contractually agreed to litigate disputes in another forum is not a question of venue, but one of contract. Licensed Practical Nurses, Technicians & Health Care Workers of New York v. Ulysses Cruises, 131 F. Supp.2d 393, 405 (S.D.N.Y. 2000). Thus, courts deciding motions to dismiss, as opposed to transfer motions, should not predicate their analysis upon the import of such contractual provisions.

---

[4] It goes without saying that service of an amended complaint moots a dismissal motion. *E.g.,* Kolari v. New York-Presbyterian Hospital, 455 F.3d 118, 120 n. 2 (2d Cir. 2006); Seldon v. Jacobs Debrauwere LLP, 2007 WL 1552396 , at *1 n. 1 (S.D.N.Y. May 29, 2007);  SEC v. Apolant, 411 F. Supp.2d 271, 274 (E.D.N.Y. 2006).

In sum, here, as in <u>Day Village</u>, *id.,* Defendants' contention that the Southern District is an improper venue is without merit, and the contractual provision relied upon does not require a different result. Accordingly, we turn our attention to Defendants' motion to transfer.[5]

## II    THE COURT SHOULD EXERCISE ITS DISCRETION TO DENY DEFENDANTS' MOTION

Under 28 U.S.C. § 1404(a), the District Court has considerable discretion in addressing a motion to transfer an action to another District Court in which venue would be proper. This Court should exercise that discretion to deny Defendants' motion here given that this action could not have been commenced in the proposed transferee court, as well as based on the strong presumption in favor of the plaintiff's choice of its home forum, the convenience of the non-party witnesses who are crucial to Ambassador's ability to prove its claims, the locus of the dispute in this District, and the movants' inability to sustain their "significant" burden (<u>Hummingbird USA, Inc. v. Texas Guaranteed Student Loan Corp.</u>, 06 CV 7672, 2007 WL 163111, at *2 (S.D.N.Y. Jan. 22, 2007)) "of making out a strong case for transfer" (<u>Filmline (Cross-Country) Productions, Inc. v. United Artists Corp.</u>, 865 F.2d 513, 521 (2d Cir. 1989)) by "clear and convincing evidence" (<u>Hummingbird USA, Inc.</u>, supra, at *2). *See generally,* <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 255 (1981).

The operative statute gives this Court discretion to adjudicate motions to transfer according to "an individualized, case-by-case consideration of convenience and fairness". <u>Stewart Org. Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 29 (1988). The existence of a forum selection

---

[5]  It appears that Defendants' dismissal motion was a ruse to avoid ReachLocal's having to serve an answer which would have to include as counterclaims the claims asserted by ReachLocal in its California action against Ambassador, and thereby potentially undermine Defendants' argument that its claims are being pressed in an alternate forum.

clause is only one factor in the Court's calculus. *Id.*   We show below that enforcement of the instant forum selection clause would be improper and unreasonable under the circumstances. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972).

## A.    This Action Could Not Have Been Commenced In the Proposed Transferee Court

A threshold question under Section 1404(a) is whether the action is one that "might have been brought" in the transferee district court. Reliance Ins. Co. v. Six Star, Inc., 155 F. Supp.2d 49, 56 (S.D.N.Y. 2001). Ambassador could not have commenced this action in the Central District of California because Cesarini would not have been subject to the jurisdiction of that Court. Cesarini is a New York resident being sued based on his conduct in New York, including his breach of a settlement agreement with Ambasador, an entity operating in New York, pertaining to a New York state court litigation between Ambassador and Cesarini. Similarly, the new individual defendants - Stone, DeBiase, Kelleher and Knight - are domiciled here and all of the claims against them arise from their conduct here while working for Ambassador at its New York City office and thereafter from their own bases in Westchester County, and new defendant Advanced ROI's sole office identified on its website is in New Rochelle (Hargrave Affidavit ¶ 9). Given these facts, the Court need go no further and should deny the motion.[6]

---

[6] Defendants cannot argue that Cesarini would voluntarily subject himself to suit in California. The inquiry is whether the defendant was amenable to suit there at the time the action was filed. Hoffman v. Blaski, 363 U.S. 335, 344 (1960)(holding that transfer could not be granted to a district in which a defendant could not have been sued). Defendants' motion does not assert that Cesarini was jointly fraudulently or for improper reasons.

**B.    Analysis of the Pertinent Factors Favors Ambassador**

Assuming *arguendo* that Cesarini and the new defendants could have been sued in California, Section 1404(a) requires that this Court assess the balance of convenience and the interest of justice by weighing the following factors: (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts: (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interest of justice based on the totality of the circumstances. *Id.*, 155 F. Supp.2d at 56-7;  Posven, C.A. v. Liberty Mutual Ins. Co., 303 F. Supp.2d 391, 404 (S.D.N.Y. 2004).  No single factor is determinative. American Eagle Outfitters, Inc. v. Tala Brothers Corp., 457 F. Supp.2d 474, 477 (S.D.N.Y. 2006).

**1.    The Convenience of Witnesses**

The convenience of witnesses and their availability for trial is a paramount consideration. Reliance, *supra,* 155 F. Supp.2d at 57; Schnabel v. Ramsey Quantitative Systems, Inc., *supra,* 322 F. Supp.2d at 516 (convenience is "probably considered the single most important factor"). This factor should be dispositive when, as here, the key non-party witnesses predominate in New York, and it is likely that they would not be available for trial in the transferee forum.[7] As

---

[7]  The forum selection clause is not determinative with respect to witness convenience. While the party's inconvenience may be less of a factor if it has signed a forum selection clause, "district courts must still consider whether 'the interest of justice' or the convenience . . . of

Ambassador has demonstrated, it can only prove its claims by means of testimony from its present and former clients in New York. Those clients are expected to testify that: ReachLocal solicited them and sought to induce them to terminate their relationships with Ambassador; ReachLocal disparaged Ambassador's products and services; ReachLocal misled clients by continuing to use the Ambassador name after purportedly terminating the ReachLocal Agreement. The Hargrave Affidavit identifies more than 50 such clients (¶¶ 4-5). Ambassador may be required to seek the testimony of SitePen engineers to refute ReachLocal's infringement claims; those engineers are all in New York, not in Northern California where SitePen has its headquarters (Hargrave Affidavit ¶ 8).

A litigant relying on witness convenience must identify the witnesses and describe what they are expected to say. Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978). The moving party must supply an affidavit that contains detailed factual statements explaining why the motion should be granted, including information on the potential principal witnesses and a general statement as to their testimony. "Vague generalizations and failure to clearly specify the key witnesses to be called, along with a statement concerning the nature of their testimony, are insufficient basis upon which to grant a change of venue under § 1404(a)." Day Village LP v. CW Capital LLC, *supra*, 2006 WL 2572118, at *3 (citations omitted) (denying motion where defendant "failed to include the requisite factual information in its moving papers"). While Defendants' moving papers pay lip service to this factor, they do not identify any non-party witnesses in California by name or describe what any would testify about. Accordingly, they have not made out their burden as to this factor. *See,* American Eagle Outfitters, Inc., supra, 457 F. Supp.2d at 478 (denying transfer motion based on movant's failure to provide a list of the

witnesses' require transferring a case. Heller Financial, Inc. v. Midwhey Powder Co. Inc., 883 F.2d 1286, 1293 (7th Cir. 1989) (internal citations omitted; ellipsis added).

non-party witnesses to be called and a general statement of the substance, and instead relying on the conclusory statement that all of defendants' witnesses are in California).

Notably, Defendants argue that witnesses from SitePen will be the most significant non-party witnesses, and therefore assert – albeit without identifying any of those witnesses – that this factor favors transfer since those witnesses can only be subpoenaed in the Silicon Valley where SitePen is headquartered (Defendants' Mem. at 20). In fact, as the Hargrave Affidavit shows, some of the engineers who actually did work for Ambassador on its proprietary software (developed independently of ReachLocal's software, to which Ambassador at all times had only limited access) performed their work in New York City and others outside California (¶ 8). Since it is Defendants' position that "[w]ith restricted access to witnesses from SitePen, ReachLocal might be denied the opportunity to present fully a critical element of its defense" (*id.*), Defendants should concede that their interests are best served by litigating in New York, where access to these critical witnesses would not be restricted as would be the case in California.

The Hargrave Affidavit identifies the specific SitePen witnesses, as well as numerous client contact personnel who may be called as witnesses, and describes the subject matter of their anticipated testimony in some detail, and identifies many other clients whose testimony may well be necessary and to the same effect (¶¶ 4, 5, 8). ReachLocal's nonexistent showing regarding its witnesses is telling regarding the determination this Court must make about where this case would best be litigated.

While it would be possible to depose New York non-party witnesses in New York and possibly present their videotaped testimony or deposition transcripts at trial in Los Angeles (*see* Reliance, *supra*, 155 F. Supp.2d at 58), the witnesses would not be subject to process to compel their attendance at a trial in Los Angeles. If Ambassador is unable to present the live testimony

of those non-party witnesses at the trial of this action, its prospects for proving its claims are diminished because presentation of these witnesses by deposition or videotaped testimony is "second-best to their live testimony". <u>American Steamship Owners Mutual Protec. & Indem. Ass'n, Inc.</u>, 474 F. Supp.2d 474, 485 (S.D.N.Y. 2007). Ambassador could not subpoena them for trial in Los Angeles, and there is no reason to believe that any of the clients would be willing to subject themselves to the inconvenience of traveling from New York to Los Angeles to testify as a witness in a lawsuit in which they have no stake. So too with respect to the SitePen engineers.

Even assuming *arguendo* that there were any non-party witnesses in California whose testimony is needed, there are more such witnesses in New York. And even if the number of witnesses in each location were equal, "[w]here the inconvenience to the parties and witnesses are evenly balanced, the plaintiff is entitled to his choice of forum". <u>Zangiacomi v. Saunders</u>, 714 F. Supp. 658, 660 (S.D.N.Y. 1989)(citation omitted).

## 2.    The Locus of the Operative Facts

Another critical factor is the place where the operative facts occurred, or the locus of the operative facts. <u>Reliance</u>, *supra,* 155 F. Supp.2d at 59. This was recently characterized as a "primary factor" in determining whether to transfer venue. <u>American Steamship Owners Mutual Protec. & Indem. Ass'n, Inc.</u>, *supra,* 474 F. Supp.2d at 485 (citation omitted). *See also,* <u>Aerotel, Ltd. v. Sprint Corp.</u>, 100 F. Supp.2d 189, 198 (S.D.N.Y. 2000).

The ReachLocal Agreement was executed by Ambassador in New York, and Ambassador performed under it in New York. ReachLocal's CEO Gordon came to New York in connection with the parties' relationship, and in New York he made misrepresentations to Ambassador concerning ReachLocal's intentions in respect of competing for Ambassador's clients, which Ambassador relied on in New York. ReachLocal and its local employees and

agents breached ReachLocal's obligations to Ambassador via actions they took in New York, including communications with Ambassador's clients in which they solicited their business and misrepresented themselves as Ambassador, and by stealing Ambassador's trade secrets from its New York headquarters. ReachLocal attempted to induce key Ambassador executives working in New York to abandon Ambassador in favor of a direct relationship with ReachLocal.[8] Stone and DeBiase stole Ambassador's trade secrets and then used them to compete against Ambassador in selling the ReachLocal platform, in violation of non-compete agreements they signed in connection with their employment for Ambassador in New York. Advanced ROI is aiding and abetting that conduct from its Westchester County offices. Ambassador's former New York employee Knight is also breaching his non-compete agreement,  and working with Stone and DeBiase in Westchester County targeting Ambassador's New York clientele.

### 3.    The Convenience of the Parties

Obviously, New York is a more convenient forum for Ambassador, as well as for Cesarini, Stone, DeBiase, Knight and Advanced ROI. While Defendants argue that the Agency Agreement's forum selection clause is determinative as to convenience (Defendants' Mem. at 19), that argument appears to be correct only when the claims being litigated genuinely arise under the agreement which contains that provision. By contrast, in this case Ambassador is prosecuting multiple causes of action that are not for breach of that contract, including defamation, trade libel, misappropriation of trade secrets and other counts that are not dependent on the parties' contractual relationship, and has named as defendants non-parties to that contract

---

[8]  This case is analogous to a traditional trademark infringement case, in which sale of infringing goods in a district supports venue there. American Eagle Outfitters, Inc. v. Tala Brothers Corp., *supra,* 457 F. Supp.2d at 477. Here, ReachLocal's conduct in misleading Ambassador clients and sales representatives in New York about its affiliation with Ambassador (Amended Complaint ¶ 71 and Hargrave Affidavit ¶ 4) likewise supports keeping the action in this Court.

on claims that do not arise under the contract, including based on Cesarini's breach of the New York settlement agreement and the breaches by Stone, DeBiase, Kelleher and Knight of their obligations under their New York Ambassador Proprietary and Inventions Agreements, as well as myriad tort claims.

## 4.    The Governing Law

The Court's familiarity with governing law favors Ambassador. While the ReachLocal Agreement provides that California law applies to govern disputes arising thereunder, and if that provision is upheld the transferee court would be more familiar with the governing law, that is the source of law for only one of Ambassador's 13 claims for relief. The Lanham Act claim is governed by federal law.  The claim under New York General Business Law Section 349 obviously is governed by New York law. Ambassador's common law tort claims would all be governed by New York law, under applicable choice of law rules, in that applying an interest analysis would confirm that New York has the greatest interest in addressing the harms caused to a corporation headquartered here, as a result of the tortious acts of five New York based defendant and one California based defendant. White Plains Coat & Apron Co., Inc. v. Cintas Corp., 460 F.3d 281, 284 (2d Cir. 2006). In any event, this Court has frequently been called upon to apply other states' laws (Reliance, supra, 155 F. Supp.2d at 59-60), and is well "capable" of applying California law if it is necessary to do so here.  S-Fer International, Inc. v. Paladion Partners, Ltd., 906 F. Supp. 211, 215 (S.D.N.Y. 1995)(denying transfer motion).

## 5.    The Availability of Documents

The availability of documents factor favors Ambassador. All of the documents of Ambassador, its clients, defendant Cesarini, the non-parties (but potential additional defendants)

DeBiase, Stone and Advanced ROI, are located in New York. The documents of the non-parties could not be subpoenaed for trial in Los Angeles.

### 6.    Trial Efficiency Considerations

Trial efficiency considerations favor Ambassador. As this Court noted in <u>Reliance</u>, *supra*, when the defendant could have filed counterclaims rather than commencing a separate action in another court after being sued in the transferor court, "trial efficiency and the interests of justice do not favor transfer under these circumstances." 155 F. Supp.2d at 60. So too here, rather than filing a separate action for purported unfair competition in Los Angeles Superior Court for transparently tactical reasons, ReachLocal could have – and should have - asserted its claims as counterclaims here "if it really were concerned with judicial efficiency". <u>Clarendon Nat'l Ins. Co. v. Pascual</u>, 99 Civ. 10840, 2000 WL 270862, at *7 (S.D.N.Y. Mar. 13, 2000). ReachLocal's disingenuous contention that judicial efficiency would be achieved by transfer should be given short shrift.

### 7.    The Ability To Add Additional Necessary Parties

The ability to add non-parties as additional defendants also supports keeping this action in this Court. <u>Prentice-Hall Corp. Systems, Inc. v. Ins. Co. of N. Am.</u>, 81 F.R.D. 477, 481 (S.D.N.Y. 1979). If discovery reveals that other former Ambassador employees solicited by ReachLocal have likewise breached their obligations to Ambassador and committed actionable conduct to Ambassador's detriment, or that other individuals working for ReachLocal in New York were involved in Stone's theft of Ambassador's trade secrets, those individuals may be proper party defendants and would have to be sued here.

## C.    The Forum Selection Clause Does Not Mandate Transfer

A forum selection clause is not dispositive in view of the District Court's obligation under § 1404(a) "to take into account factors other than those that bear solely on the parties' private ordering of their affairs . . . [including] the convenience of the witnesses and those public interest factors of systematic integrity and fairness". Stewart, supra, 487 U.S. at 30.  Thus, even when, as in the Stewart case, a contract purported to bestow exclusive jurisdiction on one forum, the Supreme Court remanded for an analysis of whether transfer should be granted in view of all pertinent considerations. Id.[9]  The pertinent considerations here – as explored in Point B above – demonstrate that the forum selection clause does not present a convincing basis for transfer of this New York centered litigation.

The pertinent provisions of the Account Terms and Conditions document, set forth in Paragraph 22, entitled "Choice of Law and Forum", provide that the agreement and Ambassador's relationship with ReachLocal are governed by California law, and that: "Any claim by either party hereto against the other party hereto arising out of or in connection with this Agreement or the Service shall be brought in a court of competent jurisdiction located in the County of Los Angeles, state of California . . ." The "Service" is defined in Paragraph 2 as ReachLocal's activity in providing users with the ability to set up online advertising campaigns, pay for those campaigns, and access reports detailing the activity for those campaigns.

The forum selection clause should not be applicable to Ambassador's claims which are not based on the ReachLocal Agreement. For example, Ambassador alleges that defendants violated Section 43(a) of the Lanham Act and General Business Law Section 349 by misleading

---

[9] Accordingly, courts have frequently denied, or granted, transfer motions notwithstanding forum selection clauses. E.g., Falconwood Fin. Corp. v. Griffin, 838 F. Supp. 836, 843 (S.D.N.Y. 1993); Savin v. CSX Corp., 657 F. Supp. 1210, 1214 (S.D.N.Y. 1987).

clients via the continuing use of Ambassador's trademarks at a time when it had no license to do so as a result of its termination of the ReachLocal Agreement (Second Amended Complaint Eighth and Ninth Claims of Relief). Also, Ambassador alleges that ReachLocal's disparagement of it and its products and services to its customers renders it liable under defamation and trade libel theories (Tenth and Eleventh Claims for Relief). It alleges a scheme to defraud Ambassador (Twelfth Claim for Relief).  Those claims do not arise under the Agreement or relate to the Services that ReachLocal was supposed to be providing pursuant thereto. Rather, the claims reflect a course of conduct pursuant to which ReachLocal came into this jurisdiction and committed a wide variety of actionable conduct so that it could steal Ambassador's trade secrets and customers in order to establish a line of business in New York that it did not otherwise possess. Ambassador's execution of a forum selection clause designed to govern claims such as for unpaid commissions should not be extended to encompass the conduct at issue.

Additionally, the strong presumption in favor of the plaintiff's chosen forum should apply here notwithstanding the forum selection clause because this is not a case in which Ambassador selected this forum for tactical advantage. Ambassador, and defendants Cesarini, DeBiase, Stone, Kelleher, Knight and Advanced ROI are all present here, and those defendants would not have been subject to suit in California. Judicial efficiency is best served by litigating all of the claims arising from ReachLocal's actionable course of conduct in one forum, and this is the sole forum that can hear all of the claims arising from the dealings of all of the parties.

## D.    The Interest of Justice Favors Ambassador

To the extent defendants contend that the interest of justice support transfer because the ReachLocal Action is pending in California Superior Court, they are incorrect. ReachLocal chose to commence that action in a state court, after Ambassador sued it in New York state court, and

the claims ReachLocal has asserted therein cannot be consolidated with Ambassador's claims herein unless the California action could be removed to federal court (which apparently cannot be done given the current ambiguous pleading, which does not make clear whether any of ReachLocal's claims are preempted by the Copyright Act). It appears that two separate discovery tracks will be required, and two separate trials, unless the ReachLocal Action is stayed or dismissed (relief which Ambassador is likely to seek in that action) and this action proceeds, or *vice versa*. In short, granting ReachLocal's motion will not change the fact that, by commencing a separate state court action arising from the same dispute after Ambassador commenced this action, ReachLocal is creating the very "wastefulness of time, energy and money" that § 1404(a) was designed to avoid. Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 26 (1960).

Ambassador respectfully submits that the interest of justice favors keeping this action in this Court, where the operative facts occurred, where all defendants are present, and where all non-party witnesses can be subpoenaed. Defendants have failed to satisfy their "burden to establish by a clear and convincing showing that a transfer is appropriate and that the motion should be granted". Mattera v. Native Eyewear, Inc., *supra*, 355 F. Supp.2d at 687 (citation omitted) (quoted by this Court in General Elec. Capital Corp. v. Titan Aviation, LLC, 06 CV 4795, 2007 WL 107752, at *6 (S.D.N.Y. Jan. 15, 2007)). The motion should be denied in all respects, and Defendants should be directed to serve answers to the Amended Complaint and commence discovery.

# CONCLUSION

For the foregoing reasons, it is respectfully submitted that Defendants' motion should be denied in all respects.

Dated:    New York, New York
          July 11, 2007

                    LEWIS BRISBOIS BISGAARD & SMITH LLP

                    By: _____
                          Peter T. Shapiro (PS9692)
                          *Attorneys for Plaintiff*
                          199 Water Street, 25th Floor
                          New York, New York 10038
                          212-323-1300

## CERTIFICATE OF SERVICE

Peter T. Shapiro hereby certifies that the within memorandum of law is being duly filed by ECF and served upon the attorneys for those defendants who have previously appeared herein this 11th day of July, 2007.

Peter T. Shapiro