# Hargrave Affidavit

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------X
AMBASSADOR  PUBLICATIONS,  L.L.C.,

             Plaintiff,

      - against-

REACHLOCAL,  INC., STEPHAN
CESARINI, PAUL DeBIASE, LAWRENCE
STONE, ADVANCED ROI, ANDREW
KNIGHT and DOUGLAS KELLEHER,

             Defendants.
---------------------------------------------------}{

07 CN  5687 (LTS)


**HARGRAVE  AFFIDAVIT**

| STATE  OF NEW  YORK | ) | |
|---|---|---|
| | ) | ss.: |
| COUNTY  OF NEW  YORK | ) | |

    RICHARD  HARGRA VE, being duly sworn, deposes and says:

    1.  I am employed by plaintiff Ambassador Publications, L.L.C. ("Ambassador")  as

Vice President  of its Internet Division,  and I submit this affidavit based on my personal

knowledge  in opposition to the motion of defendants ReachLocal, Inc. ("ReachLocal")  and

Stephan  Cesarini to dismiss or transfer this action to the Central District of California.

    2.  Ambassador  is a publisher  of print yellow pages directories  and has also

increasingly  been involved  in local internet marketing  services for both its current  and new

advertisers.  Ambassador  builds, manages, tracks, fulfills, and analyzes  local and national  internet

advertising  campaigns  across multiple search engines and internet yellow pages. Ambassador's

internet advertising  services enable its clients to be connected  with potential customers  within

their respective  markets. After initially using another vendor, Ambassador  contracted  with

ReachLocal  to use ReachLocal' s software to fulfill these internet advertising  campaigns,  and

.un!>.7QQ0.llnQ7   i

successfully did so until ReachLocal terminated its access to the software earlier this year on a pretextual basis.

3.     It is Ambassador's contention that ReachLocal actually terminated the contract in order to continue its scheme to harm Ambassador and steal its trade secrets and clients. The Amended Complaint details ReachLocal's actions in that connection. ReachLocal, through defendant Cesarini, its employee and agent, and defendants Stone, DeBiase and Knight, all former Ambassador employees, and the company with which they apparently are affiliated, Advanced ROI, have contacted Ambassador's clients, making all manner of disparaging statements about Ambassador, in a calculated effort to induce the clients to abandon Ambassador and sign up with them and to utilize ReachLocal' s platform. Many clients have signed on with ReachLocal, and many more apparently are confused by conflicting messages they are receiving, including emails and other communications from ReachLocal falsely advising clients that the ReachLocal personnel are still the Ambassador internet team. ReachLocal has no license or other basis to use Ambassador's name in this blatantly misleading manner.

4.     In order for Ambassador to prove its claims concerning defendants' improper interference with its clients and related defamation and unfair competition claims, Ambassador will be required to seek deposition and trial testimony from those clients, each of which agreed to advertise with Ambassador as a result of solicitations by Ambassador personnel in New York City (including solicitations by Stone and DeBiase when they were Ambassador employees). Set forth below are the names of several client contacts, the companies they are affiliated with, their locations, and the anticipated substance of what they would be able to testify about if subpoenaed or if they were willing to appear voluntarily:

4835-7990-8097 1

company that does not know how to use the software, that he is overspending with Ambassador and ReachLocal can do it more economically.

      g.     Bernard Lesser, Lockaway Self Storage, Brooklyn, NY, would testify that ReachLocal contacted him after it terminated the Ambassador contract, and solicited him to cancel with Ambassador and establish a direct relationship with ReachLocal, and that in the past several months he has received emails or other communications from ReachLocal branded with the Ambassador name which caused him confusion and concern about Lockaway's ad campaigns.

      h.     Steve Karel, Larry Flynt's Hustler Club, New York, NY, would testify that ReachLocal solicited him after terminating with Ambassador to induce him to terminate the club's ad campaign and instead advertise with ReachLocal.

      i.     Carol Lam, Highlight Studio, New York, NY, would testify that ReachLocal solicited her to induce her to terminate with Ambassador and form a relationship with ReachLocal.

      j.     Terry Cazar, Ambulatory Surgical Center, Brooklyn, NY, would testify that ReachLocal contacted the center to induce it to advertise with ReachLocal instead of Ambassador.

      k.     Jimmy Tsamutalis, Brott)( Auto Auction, Brott)(, NY, would testify that defendants DeBiase and Knight visited him and disparaged Ambassador in an effort to induce the client to use their services and advertise via the ReachLocal program.

4826-7000-8097 1

l.    Telly Hatzigiorgiou, of Play d/b/a Global Entertainment, Long Island City, NY, would testify that he cancelled the advertising with Ambassador based on DeBiase's accusations that Ambasador was fraudulent.

m.    Telly Hatzigerorgiou, of Slate, New York, NY, would testify that he cancelled the advertising with Ambassador based on DeBiase's statement that Ambassador was cheating its customers.

n.    Bartolo Cante, of Vital Dent, Long Island, NY, would testify that Stone called to solicit his company's business and that he cancelled his advertising with Ambassador based on Stone's solicitation.

o.    Sal Pappacoda, of Long Island Beauty School, Brooklyn, NY, Ed Feldman, of Sovereign Mercedes Benz, Brooklyn NY, and John Patikas, ofDitmas Flower Shop, Brooklyn, NY, would testify that they received emails from ReachLocal, branded with the Ambassador name during the past several months, which led them to be concerned and to contact Ambassador with questions about their campaigns.

p.    Roman Yagudaev, Rush Passport, New York, NY, would testify that Stone called him to induce him to cancel his Ambassador advertising and establish a relationship with Stone to run advertising on the ReachLocal platform.

q.    William Degel, Uncle Jacks, New York, NY, would testify that as a result of solicitation by ReachLocal it cancelled its Ambassador advertising and is now running an ad campaign with ReachLocal.

.tR-'.7QO8JU)Q7  ı

r.    Bruce Baron, Car Cash, New York, NY, would testify that Stone solicited him to cancel its advertising with Ambassador and instead run a ReachLocal ad campaign.

s.    William Puricelli, Advanced Exterminating, Glendale, NY, would testify about being contacted by Stone as part of his campaign to induce Ambassador clients to cancel.

t.    Ralph Fink, New York Video Conference, would testify that Stone solicited him to induce him to cancel its Ambassador advertising.

u.    Michael DiBattista, All Star Security, Westchester County, New York, would testify that All Star cancelled its Ambassador ad campaign as a result of solicitation by DeBiase.

v.    JeffNyikos and/or Frank, Maid for You New York, would testify that their company cancelled its Ambassador ad campaign as a result of DeBiase's solicitation.

w.    Brad Levy, DDS, Smile Design Studio, New York, NY, would testify that he cancelled his Ambassador campaign as a result of DeBiase's solicitation.

x.    Matt Bohn, Weather Shield Roofing, Westchester County, NY, would testify that the Ambassador ad campaign was cancelled as a result of DeBiase's solicitation.

y.    Gary Herskovitz, DDS, Brooklyn, NY, would testify that he cancelled with Ambassador and established a relationship with Stone, presumably as a result of solicitation ..

z.    Michael Lenchner, DMD, Forest Hills, NY, would testify that he cancelled with Ambassador and established a relationship with Stone, presumably as a result of Stone's solicitation.

5.    Ambassador also anticipates that some of the clients will substantiate the defamation and disparagement to which defendants have resorted as part of their campaign to eliminate

4836-7090-8097.1

Ambassador as a competitor. The details concerning that conduct can only be obtained by deposing these non-party witnesses. Other clients whose testimony may be necessary concerning defendants' conduct in soliciting them and attempting to induce cancellation and establishment of a relationship pursuant to which ad campaigns would be run using ReachLocal's software, and attendant disparagement of Ambassador, include the following:

      a.    18 New York City advertisers: 635 Madison Dental (Michael Gelb); Access France (Francois Avenas); Astoria Dental Group (Elaine Langsam); Basket Mania (Karl Lifavi); Colbren Plumbing & Heating (Robert Harris); Dr. Braverman; EBA Wholesale Corp. (Tony Tesoriero); Green Ex Cleanouts (Frank Pennetta); Man to Male (Ivan Polishchuk); Park Avenue Medical & Surgical Assoc. (John Tomasula); Starmites Kids Parties (Barry Keating); Tobin Productions (Dwight Tobin); Bradley D. Shaw; Century 21 Mancuso (Harold Maniram); Empire Safe (Jeff Brown); Pet Haven (Mike Kesner); Vigilante Plumbing (Sal Vigilante); W&W Cabinet Distributors (Tyrone Salazar).

      b.    11 Westchester County advertisers: Bellizzi (Isidoro Albanese); Little Years Daycare (Donald Degling); Mamma Rosa's (Anthony Anganano); Premier Collection (Jim Walters); Servpro of Greenburgh (Robert Charles); Tamika's Happy Faces (Tamika Douglas); Thermo- Tite Windows (Randy Leeds); Arthur Murray Dance Studios (Michael Powers); Chrysler Jeep of White Plains (August Difeo); National Environmental Specialists (Jeneen Ferrara); and White Plains Piano & Organ Co. (Silviero Mazzella).

      6.    Ambassador has had numerous clients cancel their advertising arrangements, most of the cancellations occurring after ReachLocal purported to terminate its contract with

4836-7000-8097 1

Ambassador, and it appears that those cancellations resulted from defendants' improper competition. Many of the clients will be necessary witnesses to determine the causes of Ambassador's losses and to identify wrongful conduct. Those clients include the following, identified by contact name, client name, and location:

      a.    Arnie Kolodner, Arnie Kolodner Magic, New York, NY.

      b.    Christopher Pfund, Piano Clearing House, Peekskill, NY.

      c.    Sandy Stantucci, Spatucci' s, Mohegan, NY.

      d.    Matt Bohn, Weather Shield Roofing, Bedford, NY.

      e.    Michael DiBattista, All Star Security, Ossining, NY.

      f    Mark Polanski DDS, Rego Park, NY.

      g.    Matthew Esposito, Buona Notte Restaurant, NY.

      h.    Shenia Maria, Sheina Spa, New York, NY.

      i.    Joonghae Lee, Acupuncture & Zen, New York, NY.

      j.    Dionisio F. Alvarez, New York Mexicana, Queens, NY.

      k.    Aaron Hoffman, Wogies, New York, NY.

      l.    JeffNyikos, Leros Point to Point, Hawthorne, NY.

      m.    Marc Brown, Kick the Habit LLC, New York, NY.

      n.    Jeneen Ferrava, National Environmental, Hawthorne, NY.

      o.    Donald E. Degling, Little Years Day Care, Hawthorne, NY.

      p.    Ted Boultadakis, Brothers Aluminum, Valley Stream, NY.

      q.    Mary Ann, 635 Madison Avenue, New York, NY.

r.    Adam Glousky, A&A Auto Glass, Brooklyn, NY.

s.    Killian Ganly , All Deck Out, New York, NY.

t.    Greg M. Reuben Alliance Parking, New York, NY.

u.    John Menechino, Alyssa Mechanical, New York, NY.

v.    Jan Maclatchie, Artistic Tile, New York, NY.

w.    Gary Greenberg, Beckenstein Fabrics, New York, NY.

x.    Igal Mizrahi, Beverly Hills Limo. Long Island City, NY.

y.    Eric Walter, Brott)(Foot Rehab, Brott)(,NY.

z.    Todd Pemberton, Bugs Are Gone, Brooklyn, NY.

aa.    Guy Pipolo, Clickable Oil, Mount Vernon, NY.

bb.    Robert Harris, Colbren Plumbing, Brooklyn, NY.

cc.    Dr. Arnold Angrist, New York, NY.

dd.    Oleg Voskov, EZ Tanning, New York, NY.

ee.    Mario Steward, EMRG, New York, NY.

ff.    Pauline D'Chiutis, Great Neck Mitsubishi, Great Neck, NY.

gg.    Cheryl Goldberg, Greener Seasons, Chester, NY.

hh.    Clifton Ramsundar, Jamili Garden, New York, NY.

ii.    Gary Babyatzky, Manhattan Fabrics, New York, NY.

jj.    Gus Johnson, Pump & Motor Corp., Westbury, NY.

JR-^_?QQ0_RBQ7  1

7.      At this early stage of the case, Ambassador does not have complete information about defendants' unfair competition to date, and since defendants' improper conduct continues unabated it is certain that additional New York based clients will be contacted, and unfortunately it is foreseeable that some of those clients will cancel their Ambassador contracts, such that additional clients with whom defendants have tampered will become necessary witnesses ..

8.      Another potential witness is Chris Gizzo, Camelot Caterers d/b/a Surf Club, New Rochelle, NY, who apparently is a principal or somehow affiliated with Advanced ROI, which has its offices at the same location as this business. Mr. Gizzo will testify about his involvement with DeBiase, who may be his son or stepson, Stone, Knight and Advanced ROI, and about their competition with Ambassador and activities on behalf of ReachLocal, as well as threats made to Ambassador personnel to induce them to discontinue the claims being asserted against Stone and DeBiase.

9.      To the extent ReachLocal's baseless contention that Ambassador copied its proprietary software are litigated in this action, it would appear that the engineers who worked with Ambassador on the software development would be necessary witnesses. Ambassador utilized the services of SitePen, Inc., a Silicon Valley company headquartered in Palo Alto, CA, for the software development. However, this work was not primarily performed by SitePen personnel in California, but rather via contractors in New York, Illinois and elsewhere. Some of the personnel worked out of Ambassador's offices on West 17th Street in Manhattan. Those persons - who will testify about the independent development of the software and the rush to complete the transition to using the software as a result of ReachLocal's wrongful conduct -

4R-1>_7001_R807   1

include the following: Lex Dreitser (Garnerville, NY); Todd Macallusso (Astoria, NY); Charles

Farrugia (Brooklyn, NY); John Mambo (Chicago, IL); Russell Balest (Knoxville, TN); Ed Bond

(Washington, DC); Neil Roberts (Washington, DC); Ronald Trenka (Merrick, New York); and

Richard Oller (New York, NY) (the latter two have subsequently been hired by Ambassador).

  10. I also note that ReachLocal has established a local sales office, headed by

defendant Cesarini apparently, which operates from offices on West 31st Street in Manhattan.

ReachLocal apparently is authorized to do business in New York. Cesarini apparently operates

ReachLocal's New York office, and he lives in New York State.

  11. Defendants Stone, DeBiase, Knight and Kelleher all live and work in New York;

they formerly worked for Ambassador in Manhattan and signed contracts restricting their ability

to compete with Ambassador and use its trade secrets, which were to be governed by New York

law (a sample such contract, for Kelleher, is annexed hereto as Exhibit A). Advanced ROI has

its only offices in New Rochelle, New York, according to my visit to its website several months

ago.

  12. Defendants' improper conduct has continued unabated notwithstanding the

commencement of this action. As of June 29, 2007, we learned that client Chelsea Mini Storage

was cancelling its Ambassador ad campaign and signing on with Advanced ROI to run ads using

the ReachLocal platform as a result of solicitation by Stone. We also learned that, during the

week of June 18, 2007, DeBiase solicited Ambassador's internet employee Arc Horitani to leave

Ambassador and join Advanced ROI (were Arc to do so, he would violate his agreement with

Ambassador). Most troubling is the discovery that ReachLocal has induced another former

4836-7900-8007 1

Ambassador internet employee, Douglas Kelleher, to join it, and that Kelleher is actively

soliciting Ambassador's clients to establish new relationships with ReachLocal. Kelleher's

competition is in clear breach of his Ambassador proprietary and inventions agreement, and

Ambassador has had to add him as a party defendant. In short, the defendants' egregious

actionable conduct is taking place in New York City and the metropolitan area on a daily basis,

and it appears that this Court is the only Court that would be able to provide us with the

necessary access to witnesses who can substantiate Ambassador's claims about the devastating

harm defendants seek to inflict on its business to enable it to obtain the relief it needs.

RICHARD HARGRAVE

swo~to   before me this
   10 )   day of July, 2007

Ccat~HL £. C~
Notary Public

4836-7000-8007 1

# HARGRAVE
# AFFIDAVIT
# EXHIBIT A

**Ambassador**YellowPages
*the right direction in yellow pages*

245 West 17th Street,
New York, NY 10011
Tel: 212.564.3345
Fax: 212.967.5706

# PROPRIETARY INFORMATION AND INVENTIONS AGREEMENT

## Recital

I, **Douglas Kelleher** currently serving as an employee of Ambassador Publications, LLC, a Delaware limited liability company (the "Company"), in consideration of the benefits to be received by me either directly or indirectly, by the Company and/or through the financial and other support of the Company by various third-parties who have agreed to provide such support in part in reliance upon the assurances herein given by me, and the covenants herein undertaken by me, and by the similar assurances and covenants of one or more of the other members of the Company's management group, and for other good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, agree to the following, effective as of the date hereof.

1.     Proprietary Information.

1.1     Restrictions on Proprietary Information. I acknowledge that (i) because of my responsibilities at the Company, I will help develop and create, and will be exposed to, the Company's business strategies, information on customers, customer lists, clients and other valuable confidential, proprietary and trade secret information of the Company (as more fully defined below, "Proprietary Information"), (ii) in such capacity I will become familiar with procedures and methods by which the Company develops and conducts its business, (iii) I will have access to the Company's clients, channels for developing clients, and other Proprietary Information, (iv) it would be unfair to the Company if I were to appropriate to myself or others the benefits of the Company's resources expended to develop such business relationships, (v) it would be unfair to the Company if I were to appropriate to myself or others the benefits of the business, personnel and other Proprietary Information which the Company has developed and continues to develop in the conduct of its business, and (vi) it is therefore fair that reasonable restrictions should be placed on certain of my activities during my employment and after my employment with the Company terminates. I agree to hold in strict confidence and in trust for the sole benefit of the Company all Proprietary Information that I may have access to during the course of my employment with the Company and, except as required in my authorized duties on behalf of the Company, will not disclose any Proprietary Information, directly or indirectly, to anyone outside of the Company, or use, copy, publish, summarize or remove from Company premises such information (or remove from the premises any other property of the Company).

1.2     Definition of Proprietary Information. As used herein, "Proprietary Information" means all information and any idea in whatever form, tangible or intangible,

1



# **Ambassador**YellowPages
the right direction in yellow pages

245 West 19th Street
New York, NY 10011
Tel: 212.924.9494
Fax: 212.987.5709

when disclosed to, learned by or developed by me, pertaining in any manner to the business of the Company (or any of its affiliates) or to the Company's customers, consultants, suppliers, licensors and other commercial partners, including without limitation: (i) the Company's business strategies, procedures and methods, information on customers and clients, client lists, client prospects, and business development information; (ii) Company lists, profiles and reports; (iii) training and research materials and methodologies; (iv) structure, operations, pricing, financial and personnel information; (v) information systems design and procedures; (vi) website or computer technology designs, hardware configuration systems, and software designs and implementations; (vii) information databases, interactive procedures, navigation, functionality, web site design, tests, analysis and studies developed by or for the benefit of the Company; (viii) plans, designs, inventions, formulas, research and technology developed by or for the benefit of the Company; (ix) confidential information and business information and business secrets of the Company and its clients; (x) trade secrets of the Company; (xi) plans, prospects, policies, practices, and procedures of the Company which are not generally known in the industry; (xii) licenses and agreements of any nature; and (xiii) all other proprietary and confidential information of every nature and source. Notwithstanding the foregoing, Proprietary Information does not include information which: (A) is or becomes generally available to the public through no breach of this agreement or any other agreement to which the Company is a party; (B) was received by me from a third party free to disclose such information without restriction or breach; (C) is approved for release in writing by the Board of Directors of the Company (the "Board"), subject to whatever conditions are imposed by such Board; or (D) is required by law or regulation to be disclosed, but only to the extent necessary and only for the purpose required; provided that I shall provide the Company notice of any such required disclosure and I have knowledge of it and shall help the Company to the extent reasonable to obtain an appropriate protection order.

1.3    **Unfair Competitive Practices.** I acknowledge and agree that the pursuit of the activities forbidden by this agreement would necessarily involve the use or disclosure of Proprietary Information in breach of the preceding subsections, but that proof of such a breach would be extremely difficult to establish. To forestall any breach by such disclosure or use, and in consideration of my employment with the Company, I agree that during my employment with the Company and for a period of two (2) years after termination of my employment for any reason, I shall not, directly or indirectly, (i) divert or attempt to divert from the Company any business of any kind in which it is engaged, including without limitation by calling on, soliciting or attempting to call on or solicit any of the Company's customers; or (ii) solicit, induce or influence any person employed by the Company to terminate his or her employment or (without the express written approval of the Company) recommend for employment any person employed by the Company. While I am an employee of the Company and for a period of one (1) year thereafter, I shall not, directly or indirectly, either as an employee, employer, consultant, agent, principal, partner, member, stockholder (except for up to 5% of any class of securities in any publicly traded company), corporate officer or director, or in any other individual or representative capacity, engage in or participate in any business that is in competition in any manner whatsoever with the business of the Company unless I have obtained the written consent of the Company's board of directors.



# **Ambassador***YellowPages*
the right direction in yellow pages

245 West 17th Street
New York, NY 10011
Tel: 212.584.8625
Fax: 212.987.5708

1.4     Third-Party Information. I acknowledge that the Company has received and in the future will receive from third parties their confidential information subject to a duty on the Company's part to maintain the confidentiality of this information and to use it only for certain limited purposes. I acknowledge and agree that I owe the Company and these third parties, during and after my employment with the Company, a duty to hold all such confidential information in the strictest confidence and not to disclose or use it, except as necessary to perform my obligations hereunder and as is consistent with the Company's agreement with third parties.

1.5     Limitation on Future Employment. For a period of one (1) year following the termination of my employment with the Company, I will not accept any employment or other relationship, directly or indirectly, with any person or entity that provides services that are similar to the Company's business wherein the loyal and complete fulfillment of the duties of the competitive employment or relationship would require or be expected to require me to reveal, to make judgments on or otherwise to use, any Proprietary Information of the Company.

2.     Inventions.

2.1     Defined; Statutory Notice. During the term of my employment, there will be certain restrictions on my development of technology, ideas, and inventions, collectively referred to in this agreement as "Invention Ideas." Except as expressly stated below, the term "Invention Ideas" means any and all ideas, processes, trademarks, service marks, inventions, technology, computer programs, original works of authorship, writings, designs, formulas, discoveries, patents, copyrights, navigation, functionality, web site design, and all improvements, rights, business concepts, and claims related to the foregoing that are conceived, developed, or reduced to practice, relating to any business of the Company that have been or will be conceived or developed by me alone or with others (a) during the term of my employment, whether or not conceived or developed during regular business hours, and whether or not conceived before, on or after the date of my employment with the Company or (b) if based on Proprietary Information, after termination of my employment except to the extent that New York law lawfully prohibits the assignment of rights in such Invention Ideas. "Invention Ideas" does not include ideas, processes, trademarks, service marks, inventions, technology, computer programs, original works of authorship, writings, designs, formulas, discoveries, patents, copyrights, navigation, functionality, web site design, and all improvements, rights, business concepts, and claims related to the foregoing that do not relate to any business of the Company.

2.2     Records of Invention Ideas. I agree to maintain adequate and current written records on the development of all Invention Ideas and to disclose promptly to the Company all Invention Ideas and relevant records, which records will remain the sole property of the Company. I further agree that all information and records pertaining to any idea, process, trademark, service mark, invention, technology, computer program, original work of authorship, design, formula, discovery, patent, or copyright that I do not believe to be an Invention Idea, but that is conceived, developed or reduced to practice by me (alone or with others) during my period of employment or during the one-year period following termination of my employment, shall be promptly disclosed to the Company (such disclosure to be received in confidence). The Company shall examine such information to determine if in fact the idea, process, or invention, etc., is an Invention Idea subject to this agreement.

3



# **Ambassador***YellowPages*
*the right direction in yellow pages*

245 West 17th Street,
New York, NY 10011
Tel: 212.564.3945
Fax: 212.987.5706

2.3    Assignment; Appointment as Attorney-in-Fact.  I agree to assign to the Company, without further consideration, my entire right, title, and interest (throughout the United States and in all foreign countries), free and clear of all liens and encumbrances, in and to each Invention Idea, which shall be the sole property of the Company and, to the maximum extent permitted by applicable law, shall be deemed works made for hire.  If any Invention Idea is deemed by the Company to be patentable or otherwise registrable, I will assist the Company (at its expense) in obtaining letters patent or other applicable registrations thereon and I will execute all documents and do all other things (including testifying at the Company's expense) necessary or proper to obtain letters patent or other applicable registrations thereon and to vest the Company with full title thereto.  Should the Company be unable for any reason to secure my signature on any document necessary to apply for, prosecute, obtain, or enforce any patent, copyright, or other right or protection relating to any Invention Idea, whether due to my mental or physical incapacity or any other cause, I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact, to act for and in my behalf and stead, to execute and file any such document, and to do all other lawfully permitted acts to further the prosecution, issuance, and enforcement of patents, copyrights, or other rights or protections with the same force and effect as if executed and delivered by me. The power-of-attorney granted pursuant to this Section 2.3 is coupled with an interest and is irrevocable.

2.4    License for Other Inventions.  If, in the course of my employment with the Company, I incorporate into Company property any materials owned by me or in which I have an interest (which does not constitute an Invention Idea), and such incorporation is not pursuant to a prior mutually agreed-to license agreement between the Company and myself, the Company is granted a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to make, modify, use and sell, copy, publicly display, publicly perform, and create derivative works based on and distribute any of such materials as part of and in connection with the Company property.

2.5    Patent and Copyright Registration.  I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Invention Ideas and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which the Company shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to the Company, its successors, assignees, and nominees the sole and exclusive rights, title and interest in and to such Invention Ideas, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto.  I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this agreement.

3.    Former or Conflicting Agreements.  I recognize that the Company desires not to improperly obtain or use any unpublished document, proprietary information or trade secrets of any former employer or other person or entity.  During my employment with the Company, I will not bring onto the premises of the Company, disclose to the Company, or use or induce the Company to use, any proprietary information, unpublished document or trade secret in any form of

4



# **Ambassador***YellowPages*

*the right direction in yellow pages*

245 West Fifth Street
New York, NY 10021
Tel: 212.967.5700
Fax: 212.967.5708

employer or other person or entity. I represent that I have returned all property of my former employer (including proprietary information) to my former employer and my performance of this agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Company. I hereby certify that I am not bound by the terms of any agreement with any previous employee or other party that restricts in any way my engagement in any business. I hereby certify that I have no outstanding agreement or obligation that is in conflict with any of the provisions of this agreement, or that would preclude me from complying with the provisions hereof, and I agree not to enter into any written or oral agreement in conflict herewith.

4.      Termination.

    4.1    Returning Company Property. I agree that, at the time of leaving the employ of the Company, or at any other time the Company so requests, I will immediately deliver to the Company (and will not keep in my possession, make copies, recreate or deliver to anyone else) all property belonging to the Company and all material containing or constituting Proprietary Information and Invention Ideas, including any copies in my possession or control, whether prepared by me or others.

    4.2    Termination Certificate. In the event that my employment is terminated for any reason, I agree to sign and deliver the Termination Certificate attached hereto as Schedule A.

    4.3    Subsequent Employers. After the termination of my employment with the Company, I will not enter into any agreement that conflicts with my obligations under this agreement and will inform any subsequent employers of my obligations under this agreement.

    5.    Nature of Agreement. I hereby acknowledge that this agreement is not an employment contract. Subject to the terms of any written employment agreement between the Company and myself, the relationship between the Company and myself is one of "employment-at-will," meaning that I may quit at any time with or without cause, and the Company may terminate my employment at any time with or without cause.

    6.    Equitable Relief. I recognize that any violation of this agreement would cause the Company irreparable harm and significant injury, the amount of which may be extremely difficult to estimate, thus, making any remedy at law or in damages inadequate. Therefore, I agree that the Company shall have the right to obtain from any court of competent jurisdiction a temporary or permanent order or injunction, without the posting of a bond, restraining any breach or threatened breach of this agreement and for any other relief the Company deems appropriate. This right shall be in addition to any other remedy available to the Company in law or equity.

    7.    Governing Law. This agreement is to be construed in accordance with and governed by the internal laws of the State of New York without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction other than the internal laws of the State of New York to the rights and duties of the parties.

5



# Ambassador *YellowPages*
the right direction in yellow pages

245 West 17th Street
New York, NY 10011
Tel: 212.645.0708
Fax: 212.967.5706

**Severability.** If any provision of this agreement, or its application to any person, place, or circumstance, is held by an arbitrator or a court of competent jurisdiction to be invalid, unenforceable, or void, such provision shall be enforced to the greatest extent permitted by law, and the remainder of this agreement and such provision as applied to other persons, places, and circumstances shall remain in full force and effect.

   9.      **Entire Agreement; Amendment.** The terms of this agreement and any written employment agreement by and between the Company and me, if any, are the final expression of my agreement with respect to the subject matter hereof. This agreement and any employment agreement by and between the Company and me, if any, supersedes all other prior and contemporaneous agreements and statements, whether written or oral, express or implied, pertaining to the subject matter of this agreement, and they may not be contradicted by evidence of any prior or contemporaneous statements or agreements. Unless specifically set forth in this agreement, no representations, warranties or covenants have been made or agreed to by the Company and no agent of the Company has been authorized to make or agree to any such representations, warranties or covenants. To the extent that the practices, policies, or procedures of the Company, now or in the future, apply to me and are inconsistent with the terms of this agreement, the provisions of this agreement shall control.

   10.     **Amendment; Waivers.** This agreement can be amended or terminated only by a written agreement signed by both parties. No failure to exercise or delay by the Company in exercising any right under this agreement shall operate as a waiver thereof.

   11.     **Reasonableness of Restrictions.** I hereby acknowledge that the type and periods of restriction imposed in this Agreement are fair and reasonable and are reasonably required for the protection of the Company and of the goodwill associated with the business of the Company.

   12.     **Assignment.** I agree that the Company may assign to another person or entity any of its rights under this agreement, including, without limitation, any successor in interest to the Company or its business operations. This agreement shall be binding upon me and my heirs, executors, administrators, and successors, and shall inure to the benefit of the Company's successors and assigns, and my obligations hereunder shall survive the termination of my employment regardless of the manner of such termination.

   This Proprietary Information and Inventions Agreement is made and entered into as of the date first written above and made effective as of the earlier of the date I commenced employment with the Company.

Douglas Kelleher

Dated: June 12, 2006

6

## CERTIFICATE OF SERVICE

Peter T. Shapiro hereby certifies that the within affidavits and declaration in opposition to defendants' motion to dismiss or transfer is being duly filed by ECF and served upon the attorneys for those defendants who have previously appeared herein this 11th day of July, 2007.

Peter T. Shapiro