# Hipple Affidavit

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
AMBASSADOR PUBLICATIONS, L.L.C.,                         07 CIV 5687 (LTS)

                Plaintiff,

- against -                                              **HIPPLE AFFIDAVIT**

REACHLOCAL, INC., STEPHAN
CESARINI, PAUL DeBIASE, LAWRENCE
STONE, ADVANCED ROI, ANDREW
KNIGHT and DOUGLAS KELLEHER,


                Defendants.
-------------------------------------------------------------------x

STATE OF NEW YORK       )
                          )   ss.:
COUNTY OF NEW YORK    )


      KATHRYN HIPPLE,  being duly sworn, deposes and says:


      1.    I am employed by plaintiff Ambassador Publications, L.L.C. ("Ambassador") as

Chief Executive Officer, and I submit this affidavit based on my personal knowledge in

opposition to the motion of defendant ReachLocal, Inc. ("ReachLocal") to dismiss or transfer

this action to the Central District of California.


      2.    Ambassador is a publisher of print yellow pages directories and has also

increasingly been involved in local internet marketing services for both its current and new

advertisers. Ambassador builds, manages, tracks, fulfills, and analyzes local and national internet

advertising campaigns across multiple search engines and internet yellow pages. Ambassador's

internet advertising services enable its clients to be connected with potential customers within

their respective markets. After initially using another vendor, Ambassador contracted with ReachLocal to use ReachLocal's software to fulfill these internet advertising campaigns, and successfully did so until ReachLocal terminated its access to the software earlier this year on a pretextual basis.

3.    Ambassador has commenced this action to recover damages and obtain injunctive relief attributable to a scheme by which ReachLocal successfully induced and misled Ambassador in order to obtain access to Ambassador's employees, trade secrets and client information. Despite ReachLocal's having covenanted to protect Ambassador and not to compete with Ambassador by poaching its clients, ReachLocal surreptitiously acted to steal Ambassador's key internet executives and other employees, including defendant Cesarini, and used them to obtain Ambassador's trade secret information, and then sought to cripple Ambassador by suddenly, wrongfully and without warning, terminating Ambassador's access to the ReachLocal software by which Ambassador serviced its clients, while disparaging Ambassador and its ability to deliver the advertising results it had promised,  all in order to induce Ambassador's clients to terminate their relationships with Ambassador and to instead become direct clients of ReachLocal.

4.    ReachLocal's motion asserts that the legal disputes at issue herein should be heard in the Central District of California because a forum selection clause in a contract between it and Ambassador contemplated that any breach of contract suit be heard in Los Angeles, California. Inasmuch as this action concerns Ambassador's claims for misappropriation of trade secrets, tortious interference with contract and with prospective contractual relations, fraud, and several other causes of action in addition to breach of contract, all of the conduct at issue took place in

and concerned New York, defendant Stephan Cesarini is a New Yorker and a local agent of ReachLocal, and the newly added defendants are all New York based, the non-party witnesses we need in order to prove our claims – the clients with which defendants interfered – and the non-party witnesses we need to disprove ReachLocal's intellectual property claims – the engineers working with SitePen, Inc., who developed our own proprietary software - are in New York, and Ambassador has no personnel, property, or operations in California, and as further explained in the accompanying papers, we ask the Court to keep this action in New York.

5.    Ambassador's headquarters are in Manhattan. It has satellite sales offices in Queens, Staten Island and Nassau County. It has no offices, employees or commissioned sales people or other agents outside of New York State, other than two sales people in Texas (who have nothing to do with the present disputes). It has no bank accounts outside New York State. It has no real or personal property outside New York State. It does not conduct business in California. Virtually Ambassador's only regular contacts with California entailed dealings with ReachLocal. It is not authorized to do business in California as far as I am aware.

6.    I am not aware of any non-party witnesses with knowledge pertinent to the disputes between Ambassador and the defendants who are located in California.

7.    During March 2007, ReachLocal counsel Latham & Watkins sent two letters setting forth certain purported grievances with Ambassador. Those letters did not state that suit would

be filed on any particular date if Ambassador did not respond appropriately, stating only

generally in the first letter (dated March 11, 2007) that suit would be filed in the Central District

of California. Copies of those letters are annexed hereto as Exhibit A. No such suit was ever

filed, and ReachLocal never advised us of any purported deadline. It appeared that ReachLocal

realized that it would be unwise to file suit since, as persuasively explained by the

correspondence of our counsel Henry Beck, Esq. (Exhibit B hereto), ReachLocal could not

possibly prove infringement.


      8.    Ambassador subsequently filed suit in March 2007 in the Supreme Court, New

York County against defendants DeBiase, Stone and Advanced ROI, based on the harm being

sustained as a result of their theft of trade secrets and unfair competition at the behest of

ReachLocal. Copies of the Summons and Complaint in that action are annexed as Exhibit C. As

the harm being sustained mounted, Ambassador determined that it had no alternative but to file

this action in May 2007, against ReachLocal and Cesarini, intending to consolidate the two

actions (see paragraph 47 of Ambassador's Complaint herein, stating that intent).   ReachLocal

eventually filed suit against Ambassador in the Superior Court, Los Angeles County, on June 15,

2007, weeks after Ambassador filed this suit. Copies of ReachLocal's Summons and Complaint

are annexed hereto as Exhibit D.


      9.  Ambassador had previously sued defendant Cesarini in the Supreme Court, New

York County, as a result of his improper competition after he left Ambassador's employ and

established an employee or agent relationship with ReachLocal. Cesarini and Ambassador signed

a settlement agreement in 2006, which we believe Cesarini has breached by continuing to solicit

Ambassador's clients on ReachLocal's behalf after covenanting not to do so. A copy of the

settlement agreement is annexed hereto as Exhibit E. All of Cesarini's activities are believed to

have been conducted in New York, and he apparently works here for ReachLocal out of its New

York City sales office on West 31st Street in Manhattan.

 

                                           KATHRYN HIPPLE

Sworn to before me this
7th day of July, 2007


*Catherine E. Chrichella*
Notary Public

σ̄

4828-1076-9665.1835-8199-4497.1

# HIPPLE AFFIDAVIT EXHIBIT A

**Daniel Scot Schecter**
**Direct Dial: 213-891-8679**
**daniel.schecter@lw.com**

633 West Fifth Street, Suite 4000
Los Angeles, California 90071-2007
Tel: (213) 485-1234  Fax: (213) 891-8763
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Barcelona | New Jersey |
| Brussels | New York |
| Chicago | Northern Virginia |
| Frankfurt | Orange County |
| Hamburg | Paris |
| Hong Kong | San Diego |
| London | San Francisco |
| Los Angeles | Shanghai |
| Madrid | Silicon Valley |
| Milan | Singapore |
| Moscow | Tokyo |
| Munich | Washington, D.C. |

March 11, 2007

**VIA E-MAIL, FACSIMILE, FEDERAL EXPRESS**

Ms. Kathy Hipple
Chief Executive Officer
Ambassador Publications, LLC
245 W. 17 Street, 2nd Floor
New York, New York  10011

Re:  Agreements between ReachLocal, Inc. and Ambassador Publications, LLC

Dear Ms. Hipple:

We represent ReachLocal, Inc. ("ReachLocal"). ReachLocal recently became aware of conduct by Ambassador Publications, LLC ("Ambassador") which is a blatant violation of the Agency Program Terms & Conditions dated June 25, 2005 ("Agency Agreement") and Account Terms & Conditions dated June 25, 2005 ("Account Agreement") (collectively, the "Agreements") between ReachLocal and Ambassador. Based on Ambassador's conduct, please be advised that ReachLocal is terminating the Agreements, and by this notice is terminating immediately Ambassador's account and access to the ReachLocal service, suspending all campaigns currently running, and will not be provisioning any new campaigns.

Although the full extent of Ambassador's wrongful conduct is not yet known to ReachLocal, ReachLocal nevertheless has learned that Ambassador has been developing its own web-based, Internet advertising service. This service undeniably will compete directly with ReachLocal. However, despite the clear prohibitions of the Account Agreement, it is apparent that Ambassador has engaged in wholesale copying and misappropriation of numerous proprietary aspects of ReachLocal's service to launch this competing business, and has used a third-party web developer – SitePen – in furtherance of this wrongful conduct

Ambassador's conduct is a flagrant violation of the following express provisions of the Agreements, in addition to the implied covenant of good faith and fair dealing and California's Unfair Competition Act:

- Section 9 of Account Agreement: "You agree not to reproduce, duplicate, copy . . . for any commercial purposes, any portion of the Service, use of the service, or access to the Service."

March 11, 2007
Page 2

**LATHAM&WATKINS**LLP

- Section 14 of Account Agreement: "You acknowledge and agree that the Service and any Company software used in connection with the Service ("Software") contain proprietary and confidential information that is protected by applicable intellectual property and other laws. [] Except as expressly provided herein to the contrary, you are not authorized, and you agree not, to modify . . . or create derivative works based on the Service, Content, or the Software, in whole or in part."

- Section 15 of Account Agreement: "[Y]ou are not authorized, and you agree not (and do not allow any third party) to copy, modify, create a derivative work of, distribute, reverse engineer, reverse assemble or otherwise attempt to discover any source code . . . ."

Ambassador's conduct violates the foregoing provisions of the Account Agreement. Accordingly, ReachLocal is entitled to terminate the Account Agreement pursuant to Section 11, and the Agency Agreement pursuant to Section 13. Section 11 of the Account Agreement provides that ReachLocal may "immediately terminate your account and access to the Service, with or without cause of any type or nature, upon notice to you." Section 13 of the Agency Agreement provides for termination by Reach Local in the event of "willful misconduct, bad faith, or material breach of the [Agency] Agreement or any related agreement," as well as "any misconduct by such other party directly affecting this Agency Agreement." These grounds for immediate termination undeniably are met, and ReachLocal has no duty of continued performance under the Agreements in light of these flagrant breaches.

In addition to exercising its rights to terminate the Agreements immediately and bar Ambassador's use of the ReachLocal service, ReachLocal also is prepared to commence legal action in federal court in the Central District of California (the exclusive forum pursuant to Section 22 of the Account Agreement) absent immediate steps by Ambassador to mitigate the harm caused by its conduct, and any further unlawful conduct discovered by ReachLocal. Specifically, ReachLocal demands that Ambassador do the following: (1) Suspend all development on Ambassador's web-based, Internet advertising service (the "Unlawful Service") and to delay indefinitely any launch of any aspect of the Unlawful Service; (2) Provide us (subject to appropriate non-disclosure provisions) a copy of all materials related to the Unlawful Service and any development of same; (3) Notify SitePen of ReachLocal's claims set forth herein, and instructing them to suspend all development work on the Unlawful Service; (4) Pay all invoices and other sums due to ReachLocal; (5) Return to ReachLocal all sales materials in the possession of Ambassador and/or its agents and representatives, and refrain from any use of such materials or the making of any derivative works therefrom; and (6) Confirm in writing that, as a result of Ambassador's breaches of contract and unlawful conduct, the provisions of Section 11 of the Agency Agreement are terminated immediately and shall have no continuing effect (notwithstanding anything to contrary in Section 13 of the Agency Agreement), and that ReachLocal and its representatives shall be permitted to solicit business of any kind from any and all Advertisers or other parties, irrespective of their prior relationship with Ambassador.

\* \* \* \* \*

**March 11, 2007**
**Page 3**

**LATHAM&WATKINS**LLP

Please be advised that ReachLocal expressly reserves all rights, remedies, and claims.

If you or your counsel have any questions, please contact me at (213) 891-8679.

Very truly yours,

Daniel Scott Schecter
of LATHAM & WATKINS LLP

Daniel Scot Schecter
Direct Dial: 213-891-8679
daniel.schecter@lw.com

**LATHAM&WATKINSLLP**

633 West Fifth Street, Suite 4000
Los Angeles, California 90071-2007
Tel: (213) 485-1234  Fax: (213) 891-8763
www.lw.com

FIRM / AFFILIATE OFFICES
Barcelona      New Jersey
Brussels       New York
Chicago        Northern Virginia
Frankfurt      Orange County
Hamburg        Paris
Hong Kong      San Diego
London         San Francisco
Los Angeles    Shanghai
Madrid         Silicon Valley
Milan          Singapore
Moscow         Tokyo
Munich         Washington, D.C.

March 29, 2007

**VIA E-MAIL AND FACSIMILE**

Henry Beck, Esq.
Heller Ehrman LLP
7 Times Square
New York, New York 10036

> Re:    ReachLocal, Inc. and Ambassador Publications, LLC

Dear Mr. Beck:

It has come to ReachLocal, Inc.'s attention that your client, Ambassador Publications, LLC, continues its flagrant violations of the June 25, 2005 agreements between ReachLocal and Ambassador, namely the Agency Program Terms & Conditions dated June 25, 2005 ("Agency Agreement") and Account Terms & Conditions dated ("Account Agreement") (collectively, the "Agreements")

Indeed, ReachLocal has learned that, in addition to the breaches identified in our letter of March 12th, Ambassador has solicited ReachLocal customers, in blatant disregard for the provisions of Section 11 of the Agency Agreement.  It is manifest from Ambassador's repeated and unrelenting violations of the Agreements that it has no intention of honoring any continuing obligations under those contracts.  Accordingly, ReachLocal is free to vigorously pursue any and all advertisers for its service; Ambassador is estopped from contesting this.

We note that your assurances that Ambassador would respond "in due course" ring hollow; we have heard nothing further from you since your email on March 12th.

Finally, ReachLocal expects immediate payment of the attached invoice by Ambassador, for activity through and including March 11, 2007.

ReachLocal expressly reserves all rights, remedies, and claims.

Very truly yours,

Daniel Scott Schecter
of LATHAM & WATKINS LLP

Encl.

LA\1691866.1



**INVOICE (Payable Upon Receipt)**

March 28, 2007

ATTENTION:  Accounts Payable
Ambassador Publications
245 W. 17th Street, 2nd Floor
NY, NY 10011

| Service(s) | Total | |
|---|---|---|
| February 2007 Invoice | $603,406.67 | |
| Less Payments Received (March 1, 2007) | ($318,627.10) | |
| March 1 – 11 Gross Advertising Spend | $125,698.43 | |
| Less Net Invoice Adjustments (25%) | ($31,424.61) | |
| TOTAL DUE | $379,053.39 | |

Please remit payment to:
ReachLocal, Inc.
Attn: Accounts Receivable
21700 Oxnard Street
Suite 1600
Woodland Hills, CA 91367

ReachLocal, Inc.
21700 Oxnard Street, Suite 1600
Woodland Hills, CA 91367
818-274-0260 (Phone)
818-274-0261 (Fax)
http://www.reachlocal.com

# HIPPLE AFFIDAVIT
# EXHIBIT B

**From:** Beck, Henry [mailto:Henry.Beck@hellerehrman.com]
**Sent:** Monday, March 12, 2007 5:43 PM
**To:** DANIEL.SCHECTER@lw.com
**Cc:** Kathy Hipple
**Subject:** Ambassador Publications LLC

Dear Mr. Schecter:

Kathy Hipple has asked me to respond to your letter of March 11, 2007 asserting various claims of infringement and misappropriation by Ambassador and purporting to terminate ReachLocal, Inc.'s agreements with Ambassador.

The purpose of this email is to let you know that we are looking into the matter, but based on a preliminary assessment and information provided by Ambassador I do not see how Ambassador could---as a matter of law--be guilty of either infringement or misappropriation given that it has not had access to any information or protectible (under either copyright or trade secret law) technology of ReachLocal. The relationship between the parties is one in which Ambassador merely resells a service provided by ReachLocal. This service is provided by ReachLocal on ReachLocal's own servers which are inaccessible to Ambassador. Ambassador does not have (and has not had access to) and does not run any ReachLocal code nor does it have access to the kinds of confidential information which you assert it has misappropriated. I reiterate: Ambassador does not and has not possessed any ReachLocal code or technical documentation which it could conceivably have infringed or misappropriated or with respect to which it may be said to be creating a "derivative work" (the predicate for which is that the derivative work be based on protectible elements of the work from which it allegedly derives).

The three sections of the Account Agreement which you cite (9,

14, and 15) have therefore not been breached and any failure of
ReachLocal to continue to perform under its agreements with Ambassador
will be considered by Ambassador as an actionable willful breach of
contract by ReachLocal as well as a tortious attempt to interfere with
Ambassador's relations with third parties. Limitations on liability in a
contract, as you know, may be inapplicable for actions in tort.

ReachLocal's main concern seems to be that Ambassador may be
creating a competing technology. But if Ambassador can do so without
infringing, I do not see that ReachLocal has any standing to complain of
this fact. Indeed, attempting to leverage the agreements between the
parties to prevent Ambassador from doing so may constitute copyright
misuse under applicable law.

We will respond in more detail in due course, but urge
ReachLocal not to breach its agreements with Ambassador based on the
flimsy claims asserted.

Very truly yours,

Henry Beck

==================================================

This email is sent by a law firm and contains information that may
be privileged and confidential. If you are not the intended recipient,
please delete the email and notify us immediately.

==================================================

# HIPPLE AFFIDAVIT EXHIBIT C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------x
AMBASSADOR PUBLICATIONS, L.L.C.,

                    Plaintiff,

- against -

PAUL DEBIASE, LAWRENCE STONE
and ADVANCED ROI,

                    Defendants.
-------------------------------------------------------------------x

Index No. 600937/07
Date Purchased: 3/22/07

**SUMMONS**

TO:    Paul Debiase
        129 Pythian Avenue
        Hawthorne, NY 10532

        Lawrence Stone
        31 S. 9th Street
        Mount Vernon, NY 10550

        Advanced ROI
        280 Davenport Avenue
        New Rochelle, NY 10805

      YOU ARE HEREBY SUMMONED to answer the complaint of the plaintiff, a copy of which is now served upon you in this action, and to serve copies of your answer upon the undersigned attorneys, within twenty (20) days after service of this summons and complaint exclusive of the day of service, or within thirty (30) days after service is completed if service is made by any method other than personal delivery to you within the State of New York.

      In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint, together with the costs and disbursements of this action.

      Plaintiff designates New York County as the place of trial. The basis of the venue designated is defendants having done business in this County and have engaged in the allegedly tortious and otherwise actionable conduct thereat.

4815-6583-4753.1

Dated:    New York, New York
          March 21, 2007


                    **LEWIS BRISBOIS BISGAARD & SMITH LLP**


                    By: _____
                        Peter T. Shapiro, Esq.
                        Attorneys for Plaintiff
                        199 Water Street
                        New York, New York  10038
                        212.232.1300

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------x

AMBASSADOR PUBLICATIONS, L.L.C.,                       Index No.  600937/07

                              Plaintiff,

- against -                                            **COMPLAINT**

PAUL DEBIASE, LAWRENCE STONE
and ADVANCED ROI,

                              Defendants.
-----------------------------------------------------------x

Plaintiff Ambassador Publications, L.L.C., by its attorneys Lewis Brisbois Bisgaard &

Smith LLP, as and for its Complaint, alleges as follows:


## THE PARTIES

1.      Plaintiff Ambassador Publications, L.L.C. (Ambassador) is a Delaware limited

liability company with its principal place of business in New York, New York.

2.      Defendant Paul DeBiase ("DeBiase") is an individual residing in Hawthorne,

New York, who during the relevant time period was employed by Ambassador in New York,

New York.

3.      Defendant Lawrence Stone ("Stone") is an individual residing in Mount Vernon,

New York, who during the relevant time period was employed by Ambassador in New York,

New York.

4       Defendant Advanced ROI ("Advanced") is, on information and belief, a business

entity formed by DeBaise and/or Stone with a principal place of business in New Rochelle, New

York.

## THE FACTUAL BACKGROUND

5.    Ambassador is a publisher of telephone directories and is also engaged in the business of acting as an authorized reseller of internet marketing pay per click, or PPC, platforms (the "Internet Marketing Platform").

6.    Ambassador hired DeBiase as an employee on or about April 17, 2006 and hired Stone on or about November 16, 2005.

7.    At the time of their hiring, both DeBiase and Stone executed Ambassador's Proprietary Information and Inventions Agreement (the Agreement).

8.    The Agreement provides, among other things, that the employee will help develop and create, and will be exposed to, Ambassadors Proprietary Information, as defined therein in some detail, including valuable confidential, proprietary and trade secret information, and will become familiar with Ambassador's procedures and methods of doing business, as well as have access to Ambassador's clients and channels for developing clients.

9.    Stone and DeBiase stated in the Agreement that it would be fair that reasonable restrictions be placed on certain of their activities during and after the termination of their employment.

10.    Stone and DeBiase stated further in the Agreement that they would hold in strict confidence and trust for Ambassador all Proprietary Information to which they have access during their employment and will not disclose same to anyone outside Ambassador, directly or indirectly.

11.    Stone and DeBiase also agreed that the pursuit of activities forbidden by the Agreement would necessarily involve the use of disclosure of Proprietary Information in breach of the Agreement. Accordingly, Stone and DeBiase covenanted that during their employment

and for two years thereafter they would not divert or attempt to divert any business from Ambassador including by soliciting Ambassador's customers, or solicit, induce or influence any person employed by Ambassador to terminate his or her employment.

12.   Further, Stone and DeBiase covenanted that, while employed and for one year thereafter, they would not, directly or indirectly, engage in or participate in any business that is in competition in any manner whatsoever with the business of Ambassador unless they obtained written consent from Ambassador's board of directors, and for a like period would not accept employment or any relationship with any person or entity that provides services similar to Ambassador's business when such a relationship would require revelation or use of Ambassador's Proprietary Information.

13.   As reflected by the Agreement, Ambassador engages in extensive efforts to protect its trade secrets and confidential and proprietary information from use or disclosure outside the company or use by third parties, particularly competitors.

14.   The Agreement provided that any violation by Stone or DeBiase would cause Ambassador irreparable harm and significant injury, and they covenanted that Ambassador would have the right to obtain temporary and preliminary injunctive relief to restrain their breach or threatened breach of the Agreement.

15.   During the course of their employment by Ambassador, Stone and DeBiase engaged in various activities for the benefit and at the direction of Ambassador. Among other things, they engaged in the development of, and efforts to sell and market, the Internet Marketing Platform sale of advertising in Ambassadors telephone directories, and engaged in efforts to sell the ReachLocal Platform to customers and prospective customers within Manhattan, the Bronx, Queens, Brooklyn and metropolitan area businesses that advertise in those markets.

16.    In order to be able to sell and market the Internet Marketing Platform, Ambassador expended considerable time, effort and expense to train, educate and familiarize Stone and DeBiase with its business methods and customers generally and specifically with respect to the Internet Marketing Platform and the potential customers for such platforms.

17.    Stone and DeBiase sought to sell and market the Internet Marketing Platform to various customers and prospective customers, and during their employment were exposed to the names of and critical competitive information concerning such customers and their advertising needs, preferences and business means and methods.

18.    Notwithstanding their execution of the Agreement and continued employment by Ambassador, Stone and DeBiase have recently resigned from Ambassador's employ, and, on information and belief, taken from Ambassador its trade secrets and confidential and proprietary information concerning its customers, business means and methods, and have commenced a course of conduct that entailed myriad violations of the Agreement and their obligations to Ambassador as well as other actionable fraudulent, defamatory and tortuous acts of unfair competition.

19.    Stone and DeBiase have commenced efforts to sell a competing internet marketing platform to customers in the New York metropolitan area, and have specifically targeted Ambassador customers they came to know by virtue of their work for Ambassador.

20.    Additionally, DeBiase sought to solicit current employees of Ambassador to resign from Ambassador and to join with them in their efforts to compete unfairly with Ambassador, and thereby to breach the proprietary information and inventions agreements that each Ambassador sales employee executes upon joining the company.

21.    On information and belief, DeBiase and Stone formed Advanced ROI as the business entity by which their unfair competition is being carried out. Advanced ROI has a website,

advanced-roi.com, and is doing business from offices at 280 Davenport Avenue, New Rochelle, New York, the same address at which DeBiase's father operates an unrelated business.

22.    As employees or agents of Advanced ROI, a direct competitor in the New York City market for internet marketing platforms, Stone and DeBiase are in a position to disclose and utilize Ambassador's Proprietary Information and to unfairly compete with Ambassador, and on information and belief they are already doing so.

23.    On information and belief, defendants have contacted many of Ambassador's customers within the past several weeks and attempted to induce them to cease doing business with Ambassador and instead establish a relationship with them and/or Advanced ROI pursuant to which the customers can obtain the same services as Ambassador was contracted to employ.

24.    Defendants have in the course of such contacts with Ambassador's customers stated multiple falsehoods concerning Ambassador's business operations, means and methods, including misrepresentations to customers that Ambassador is unable to offer and service a functional internet marketing platform and that it is experiencing serious financial problems and is otherwise unable to service its customers. Ambassador has been contacted by customers who are understandably alarmed by the false information disseminated by defendants.

25.    Ambassador is being irreparably harmed by the above-described improper competitive activity of defendants and on behalf of Advanced ROI and risks the collapse of its business and forfeiture of obligations to lenders should defendants' activities go unchecked.

## FIRST CAUSE OF ACTION
### (Breach of Contract/Damages)

26.    Ambassador has been damaged as a result of the above-described breaches of the Agreement in an amount to be determined in excess of $600,000.

## SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duty/Damages and Disgorgement)

27.   Stone and DeBiase breached their fiduciary duties of loyalty, good faith and fidelity to Ambassador by taking with them its Proprietary Information, including its trade secrets, and by using same to unfairly compete against it, and by soliciting its employees to leave its employ.

28.   By reason of Stone and DeBiase's tortious, wrongful, knowing, willful and intentional conduct in breach of duties during the term of their employment and thereafter, as set forth above, Ambassador has been damaged in an amount to be determined in excess of $600,000, and should be awarded punitive damages in an amount to be determined in excess of $1,000,000, and further is entitled to an accounting of all monies wrongfully obtained by defendants by means of such conduct, and disgorgement of all such earnings, and defendants should be compelled to repay to Ambassador all benefits received during the period of their disloyalty and the fruits of their wrongful conduct.

## THIRD CAUSE OF ACTION
### (Tortious Interference With Contract/Damages)

29.   By reason of DeBiase's tortious, wrongful, knowing, willful and intentional interference with and inducement to Stone and possibly others to breach their agreements and other obligations owed to Ambassador, Ambassador has been damaged in an amount to be determined in excess of $600,000, and should be awarded punitive damages in an amount to be determined in excess of $1,00,000.

## FOURTH CAUSE OF ACTION
### (Misappropriation of Trade Secrets/Damages)

30.    By reason of defendants' misappropriation, use and disclosure of Ambassador's Proprietary Information, including its trade secrets and confidential and proprietary information, Ambassador has been damaged in an amount to be determined in excess of $600,000, and should be awarded punitive damages in an amount to be determined in excess of $1,000,000.

## FIFTH CAUSE OF ACTION
### (Unfair Competition and Tortious Interference with Prospective Contractual Relations/Damages)

31.    Stone and DeBiase knew that Ambassador had developed and taken steps to protect its Proprietary Information.

32.    Stone and DeBiase possessed information regarding the continued needs, capabilities and preferences of Ambassador's existing and potential customers and suppliers.

33.    Stone and DeBiase knew that, by unlawfully using and disclosing Ambassador's Proprietary Information, and then using that unlawfully acquired property to market the services of a competitor, and by disparaging Ambassador and its products and services, Ambassador would lose business opportunities it had developed through the expenditure of significant time, effort and expense.

34.    Defendants' actions, including engaging in direct and unfair competition with Ambassador, have been done willfully and intentionally with the specific purpose of luring existing and potential customers away from Ambassador.

35.    Defendants have no justification to interfere with Ambassador's prospective contractual relationships as set forth herein.

4846-1823-9489.1

36.   Defendants have utilized improper means, including the wrongful use and disclosure of Proprietary Information obtained in the course of his employment by Ambassador, and in breach of the obligations imposed pursuant to the Agreement, and the willful spreading and dissemination of knowingly false and misleading information about Ambassador.

37.   As a direct and proximate result of defendants' wrongful and illegal conduct and unfair competition, Ambassador has been damaged in an amount to be determined in excess of $600,000, and should be awarded punitive damages in an amount to be determined in excess of $1,000,000.

## SIXTH CAUSE OF ACTION
### (Injunctive Relief )

38.   Defendants' actions have caused and will continue to cause irreparable harm to Ambassador for which legal damages are not sufficient as Stone and DeBiase acknowledged pursuant to the Agreement.

39.   Accordingly, this Court should grant an injunction enjoining defendants as well as any and all persons or entities in concert or participation with them, as follows:

(1)   Preliminarily and then permanently enjoining Stone and Dibiase from, directly or indirectly, acting as employees, agents or servants of Advanced ROI or any similar entity, directly or indirectly, or otherwise diverting or attempting to divert any business from Ambassador including by soliciting or calling on any of Ambassador's customers, or using or disclosing Ambassador's Proprietary Information, for a period of two years from the dates Stone and DeBiase left Ambassador;

(2) Preliminarily and then permanently enjoining defendants from, directly or indirectly, soliciting or inducing any employee or agent of Ambassador to leave Ambassador or to become

employed or affiliated with them, or hiring any employee or agent of Ambassador, directly or indirectly, for a period of two years from the dates Stone and DeBiase left Ambassador;

(3) Preliminarily and then permanently enjoining Stone and DeBiase from, directly or indirectly, engaging or participating in any business that competes with Ambassador without written consent of Ambassador's board of directors, for a period of one year from the dates they left Ambassador;

(4)     Preliminarily and then permanently enjoining defendants from, directly or indirectly, using Ambassador's Proprietary Information for any purpose or engaging in any other conduct which has the effect of diluting or destroying the value and utility of such Proprietary Information, breaching, or inducing the breach of, any covenants of any Ambassador employee under his or her proprietary information and inventions agreement; and

(5)     Competing with Ambassador by means of spreading false and misleading information about its business operations, means and methods.

40.     Defendants should be ordered by the Court to account for and pay over to Ambassador all gains, profits and advantages derived from their unlawful and improper activities, as set forth herein or those that become known in discovery.

## SEVENTH CAUSE OF ACTION
### (Trade Libel)

41.     By reason of defendants' false statements about Ambassador, its products, means and methods, and its financial and general viability as a company, defendants have libeled Ambassador, and Ambassador has been damaged in an amount to be determined in excess of $600,000, and should be awarded punitive damages in an amount to be determined in excess of $1,000,000.

4846-1823-9489.1

## EIGHTH CAUSE OF ACTION
### (Commercial Defamation)

42.    By reason of defendants' false statements about Ambassador, its products, means and methods, and its financial and general viability as a company, defendants have committed commercial defamation, and  Ambassador has been damaged in an amount to be determined in excess of $600,000, and should be awarded punitive damages in an amount to be determined in excess of $1,000,000.

WHEREFORE, Ambassador demands judgment in its favor as follows:

(a) On the First Cause of Action, awarding damages in an amount to be determined in excess of $600,000 with interest from February 1, 2007;

(b)    On the Second Cause of Action, awarding damages in an amount to be determined in excess of $600,000 with interest from February 1, 2007, and punitive damages in an amount to be determined in excess of $1,000,000, as well as an accounting of defendants' wrongfully gotten gains and disgorgement of same, as well as repayment of all benefits received from Ambassador during the period of disloyalty;

(c)    On the Third Cause of Action, awarding damages in an amount to be determined in excess of $600,000 with interest from February 1, 2007, and punitive damages in an amount to be determined in excess of $1,000,000;

(d)    On the Fourth Cause of Action, awarding damages in an amount to be determined in excess of $600,000 with interest from February 1, 2007, and punitive damages in an amount to be determined in excess of $1,000,000;

(e)    On the Fifth Cause of Action, awarding damages in an amount to be determined in excess of $600,000 with interest from February 1, 2007, and punitive damages in an amount to be determined;

(f)    On the Sixth Cause of Action, ordering defendants to account for and pay over to Ambassador all gains, profits and advantages derived from their unlawful and improper activities, and imposing an injunction enjoining defendants as well as any and all persons or entities in concert or participation with them, as follows:

(1) Preliminarily and then permanently enjoining defendants Stone and DeBaise from, directly or indirectly, acting as an employee, agent or servant of Advanced ROI directly or indirectly; or otherwise diverting or attempting to divert any business from Ambassador including by soliciting or calling on any of Ambassador's customers, or using or disclosing Ambassador's Proprietary Information in violation of the Agreement, for a period of two years from the dates they left Ambassador;

(2) Preliminarily and then permanently enjoining defendants from, directly or indirectly, soliciting or inducing any employee or agent of Ambassador to leave Ambassador or to become employed or affiliated with them including Advanced ROI or hiring any employee or agent of Ambassador, directly or indirectly, for a period of two years from the dates they left Ambassador;

(3)    Preliminarily and then permanently enjoining Stone and DeBiase from, directly or indirectly, engaging or participating in any business that competes with Ambassador without written consent of Ambassador's board of directors, for a period of one year from the dates they left Ambassador;

(4)    Preliminarily and then permanently enjoining defendants from using Ambassador's Proprietary Information for any purpose or engaging in any other conduct which has the effect of

diluting or destroying the value and utility of same; breaching, or inducing the breach of, any covenants under the Agreement; and

(5)     ordered to account for and pay over to Ambassador all gains, profits and advantages derived from their unlawful and improper activities

(g)     On the Seventh Cause of Action, awarding damages in an amount to be determined in excess of $600,000 with interest from February 1, 2007, and punitive damages in an amount to be determined;

(h)     On the Eighth Cause of Action, awarding damages in an amount to be determined in excess of $600,000 with interest from February 1, 2007, and punitive damages in an amount to be determined;

(i)     awarding Ambassador the costs and disbursements of this action, including attorneys' fees and litigation expenses; and

(j)     granting such other and further relief as the Court deems just and proper.

Dated:     New York, New York
            March 21, 2007

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: _____
    Peter T. Shapiro, Esq.
    Attorneys for Plaintiff
    199 Water Street
    New York, New York  10038
    212.232.1300

# HIPPLE AFFIDAVIT
# EXHIBIT D

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
AMBASSADOR PUBLICATIONS, LLC, a Delaware limited
liability company, and DOES 1 through 50

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUN 15 2007

John A. Clarke, Executive Officer/Clerk
By _____ Deputy
D.M. Swain

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
REACHLOCAL, INC., a Delaware corporation

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.    A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
    There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
    Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of the State of California<br>111 N. Hill Street<br>Los Angeles, California 90012 | CASE NUMBER:<br>*(Número del Caso):*<br>BC372791 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Daniel Scott Schecter, Esq.                    213-845-1234      213-891-8763
Latham & Watkins LLP
633 West Fifth Street
Los Angeles, CA 90071

DATE: JUN 15 2007          John A. Clarke     Clerk, by _____ , Deputy
*(Fecha)*                              D.M. Swain           *(Secretario)*                    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

(SEAL)

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* AMBASSADOR PUBLICATIONS, LLC

   under: ☒ CCP 416.10 (corporation)           ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. January 1, 2004)

**SUMMONS**

Legal
Solutions
Plus

Code of Civil Procedure §§ 412.20, 465

1  LATHAM & WATKINS LLP
     Daniel Scott Schecter (Bar No. 171472)
2    Jason J. Kim (Bar No. 221746)
     Amjad M. Khan (Bar No. 237325)
3    Michele L. Lorbieski (Bar No. 247696)
     633 West Fifth Street, Suite 4000
4  Los Angeles, California 90071-2007
     Telephone: (213) 485-1234
5    Facsimile: (213) 891-8763

6  Attorneys for Plaintiff
     REACHLOCAL, INC.
7

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUN 15 2007

John A. Clarke, Executive Officer/Clerk
By_____ Deputy
D.M. Swain

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF LOS ANGELES

10                          CENTRAL DISTRICT

11                                                    BC372791

12  REACHLOCAL, INC., a Delaware
     corporation,                          CASE NO._____
13
                    Plaintiff,             REACHLOCAL, INC.'S COMPLAINT FOR:
14
          v.                               (1)  BREACH OF CONTRACT;
15
     AMBASSADOR PUBLICATIONS, LLC, a        (2)  BREACH OF IMPLIED COVENANT
16   Delaware limited liability company, and      OF GOOD FAITH AND FAIR
     DOES 1 through 50,                           DEALING; AND
17
                    Defendant.             (3)  VIOLATION OF BUSINESS &
18                                               PROFESSIONS CODE §§ 17200 ET
                                                 SEQ.
19
                                           DEMAND FOR JURY TRIAL
20

21

22

23

24

25

26

27

28

LATHAM&WATKINS™  LA\1730449.3
ATTORNEYS AT LAW
LOS ANGELES                                                    COMPLAINT

1

## INTRODUCTION AND BACKGROUND

2    1.    This dispute arises out of the rising popularity of local search advertising

3  on the Internet.  Plaintiff ReachLocal, Inc. ("ReachLocal") has pioneered a service by which

4  local advertisers can reach customers using Internet advertising through an easy-to-use,

5  proprietary software technology.  Until recently, when ReachLocal terminated its agreements

6  with Defendant Ambassador Publications, LLC ("Ambassador") as a result of Ambassador's

7  breaches, ReachLocal provided proprietary, web-based local search software to Ambassador,

8  who, in turn, used ReachLocal's technology to service local businesses seeking to advertise on

9  the Internet.

10    2.    In 2005, Ambassador and ReachLocal signed two agreements that gave

11  Ambassador access to ReachLocal's software.  However, the increasing popularity of local

12  search advertising apparently caused Ambassador to become dissatisfied with the bargain it

13  struck with ReachLocal.  Despite ReachLocal's substantial efforts to support Ambassador's

14  efforts and perform under the parties' agreements, Ambassador determined to "cut out the

15  middle man" and develop its own Internet advertising platform.

16    3.    ReachLocal brings this action because Ambassador developed its

17  competing product by shamelessly copying the ReachLocal service and incorporating it into a

18  competing product, in a flagrant violation of the parties' contract.  Accordingly, ReachLocal

19  terminated the agreements.

20    4.    Moreover, Ambassador was not merely content to copy ReachLocal's

21  product.  Ambassador also has refused to pay more than $350,000 in outstanding invoices due

22  and payable to ReachLocal, and has solicited ReachLocal's customers in order to persuade them

23  to switch over to Ambassador's software.  Accordingly, ReachLocal brings this action to enforce

24  its rights under the parties' agreements and at law.

25

## PARTIES, JURISDICTION AND VENUE

26    5.    Plaintiff ReachLocal is, and at all relevant times was, a Delaware

27  corporation with its principal place of business at 21700 Oxnard Street, Suite 1600, Woodland

28  Hills, California 91367.

1

1     6.     ReachLocal is informed and believes that defendant Ambassador is, and at

2  all relevant times was, a Delaware limited liability company with its principal place of business

3  at 245 West 17 Street, Second Floor, New York, New York 10011, that is authorized to conduct

4  and does conduct business in Los Angeles County.

5     7.     ReachLocal does not know the true names or capacities of the defendants

6  sued herein under the fictitious names Does 1 through 50 inclusive. ReachLocal will amend this

7  complaint to state their true names and capacities when ascertained.

8     8.     ReachLocal is informed and believes that Does 1 through 50 are the agents

9  for, and acting on behalf of, the other defendants.

10     9.     Jurisdiction is proper in this Court because the amount in controversy

11  exceeds $25,000. Venue is proper in this Court pursuant to California Code of Civil Procedure

12  Section 395.5 and Local Rule 2.0(c) because, among other things, the purported breaches and

13  other conduct occurred and caused injury in Los Angeles County. Moreover, the parties

14  expressly agreed in the agreements at issue that:

> Any claim by either party hereto against the other party hereto
> arising out of or in connection with this Agreement or the Service
> shall be brought in a court of competent jurisdiction located in the
> county of Los Angeles County, state of California; provided that
> administrative and other non-judicial actions may be brought in
> any location.

## GENERAL ALLEGATIONS

### ReachLocal And The ReachLocal Service

21     10.     ReachLocal is in the local search advertising business. Like print yellow

pages directories, ReachLocal does not target businesses looking to advertise on a nationwide

scale. Rather, ReachLocal serves businesses seeking to advertise in local markets. ReachLocal

does so by delivering easy-to-use, proprietary technology and ROI-focused tools (the

"ReachLocal Service") to help businesses run successful local Internet advertising campaigns

("Advertisers").

27     11.     ReachLocal's sole product is the ReachLocal Service. The ReachLocal

Service is designed to ensure that an Advertiser's advertisements appear prominently among the

2

1   search results, when a local consumer enters certain keywords on leading search sites, such as
2   Google, Yahoo, MSN and AOL. Since each advertisement appears in a premium position, it
3   creates the best possible chance to generate a "click-through" to the Advertiser's website.

4           12.     ReachLocal markets the ReachLocal Service through two channels. First,
5   ReachLocal contacts Advertisers through its own sales force (*i.e.*, ReachLocal engages in direct
6   marketing). When ReachLocal engages in direct marketing, it bills and collects payment directly
7   from the Advertiser. Second, ReachLocal enlists independent sales agencies ("Agencies") who
8   serve as resellers of the ReachLocal Service (*i.e.*, ReachLocal engages in indirect marketing). In
9   many cases, when ReachLocal engages in indirect marketing, it bills and collects payment from
10  the Agencies, who, in turn, bill and collect payment from the Advertisers.

11          13.     Interested parties become Agencies in the following manner. First, the
12  party opens an account with ReachLocal so that it can access the ReachLocal Service. In order
13  to do so, however, the party must first sign an Account Terms & Conditions Agreement (the
14  "Account Agreement"). The Account Agreement governs the party's usage of the account and
15  access to the ReachLocal Service. Second, the party signs an Agency Program Terms &
16  Conditions Agreement (the "Agency Agreement"). The Agency Agreement permits the party to
17  service Advertisers through the party's ReachLocal account. Thus, interested parties must sign
18  both Agreements in order to become Agencies.

19                            **Ambassador**

20          14.     Until recently, Ambassador limited its business to the publication of print
21  yellow pages directories. But, after witnessing the boom of local search advertising businesses
22  such as ReachLocal, Ambassador decided to expand into that market.

23          15.     Since ReachLocal already had developed a proven system (*i.e.*, the
24  ReachLocal Service), Ambassador decided that it could enter the market more swiftly if it were
25  to align with ReachLocal rather than attempt to develop a competing product from scratch. To
26  that end, Ambassador contacted ReachLocal and asked to become an Agency.

27

28

LATHAM•WATKINS℠  LA\1730449.3
ATTORNEYS AT LAW
LOS ANGELES

1

## THE AGREEMENTS

2        16.    As stated above, parties must enter into the Account and Agency

3   Agreements in order to become an Agency. On June 25, 2005, ReachLocal and Ambassador

4   entered into two such Agreements. True and correct copies of the Account and Agency

5   Agreements are attached hereto as Exhibits A and B, respectively.

6                          ## The Account Agreement

7        17.    ReachLocal limits public access to the ReachLocal Service. Users must

8   first open an account with ReachLocal or one of its independent sales Agencies before gaining

9   access to the ReachLocal Service.

10       18.    On or about June 25, 2005, Ambassador opened an account with

11  ReachLocal. The Account Agreement signed by Ambassador describes the ReachLocal Service

12  as follows:

13              [ReachLocal] provides users with the ability to set up online
                advertising campaigns, pay for those campaigns, and access reports
14              detailing the activity for those campaigns [ ] through the
                Company's Platform.
15
16       19.    As stated above, Ambassador is paid by the Advertisers that it services

17  through its ReachLocal account. ReachLocal, on the other hand, is paid by Ambassador.

18  Paragraph 4 of the Account Agreement memorializes this payment structure. And, to ensure

19  timely payment on the part of Ambassador, Paragraph 4 contains provisions for interest and

20  attorneys' fees:

21              Amounts due and owing by [Ambassador] that are not paid when
                due shall bear interest at the rate of one-and-one-half percent per
22              month (or the highest rate permitted by law, if less) until paid in
                full.   In the event of any failure by [Ambassador] to make
23              payment, [Ambassador] will be responsible for all reasonable
                expenses (including attorneys' fees) incurred by [ReachLocal] in
24              collecting such amounts.

25       20.    In order to help Ambassador market the ReachLocal Service and service

26  its Advertisers, ReachLocal worked extensively with Ambassador employees to train them on

27  the use and sale of the ReachLocal Service. To that end, ReachLocal provided Ambassador with

28  a number of tutorials and user manuals regarding the ReachLocal Service. Over the years,

4

1   ReachLocal fielded countless technical questions from Ambassador regarding the ins-and-outs of

2   the ReachLocal Service. Thus, Ambassador not only gained access that allowed it to observe

3   firsthand the layout, design and interface of the ReachLocal Service, Ambassador also gained

4   insight that delved beneath the surface and into explanations as to "why" and "how" the

5   ReachLocal Service performed or operated in a certain manner.

6           21.   ReachLocal incorporated protections in the Account Agreement which

7   prevented users like Ambassador from misusing or capitalizing on its extensive visibility into the

8   operations of the ReachLocal Service. The Account Agreement contains several prohibitions

9   against unauthorized duplication of the ReachLocal Service (the "Unauthorized Duplication

10   Provisions"):

11         •   Paragraph 9 of Account Agreement: "[Ambassador] agree[s] not to

12           reproduce, duplicate, copy . . . for any commercial purposes, any portion of

13           the Service, use of the service, or access to the Service."

14         •   Paragraph 14 of Account Agreement: "[Ambassador] acknowledge[s] and

15           agree[s] that the Service and any [ReachLocal] software used in connection

16           with the Service ("Software") contain proprietary and confidential information

17           that is protected by applicable intellectual property and other laws. [] Except

18           as expressly provided herein to the contrary, [Ambassador] [is] not authorized,

19           and [Ambassador] agree[s] not, to modify . . . or create derivative works based

20           on the Service, Content, or the Software, in whole or in part."

21         •   Paragraph 15 of Account Agreement: "[Ambassador] [is] not authorized, and

22           [Ambassador] agree[s] not (and do[es] not allow any third party) to copy,

23           modify, create a derivative work of, distribute, reverse engineer, reverse

24           assemble or otherwise attempt to discover any source code . . . ."

25           22.   As a further means of preventing Ambassador from misusing its account,

26   the Account Agreement contains a provision which permits ReachLocal to "immediately

27   terminate [Ambassador's] account and access to the Service, with or without cause of any type or

28

1    nature, upon notice to you." Thus, Ambassador agreed to permit ReachLocal to terminate its

2    account at any time and without cause for doing so.

3                              **The Agency Agreement**

4          23.    The Agency Agreement, in turn, permitted Ambassador to use its

5    ReachLocal account to service its own "Advertisers." In effect, Ambassador became one of

6    ReachLocal's independent sales agents, or "Agencies."

7          24.    Paragraph 1 of the Agency Agreement defines "Agency" as:

8          [A]n individual or business who represents one or more
           Advertisers for the purposes of purchasing advertising services
9          through [ReachLocal's] Web Site or any other means covered
           under this Agency Agreement and who has set up those
10         Advertisers within their Agency account.

11         25.    Paragraph 1 of the Agency Agreement defines "Advertiser" as:

12         [A]n individual or business whose product(s) and/or service(s) are
           promoted on the Internet or any other medium by way of the
13         Services and who have been set up as an Advertiser through the
           [ReachLocal] we site under [Ambassador's] Agency account.
14
15         26.    As stated above, Ambassador bills and collects payment directly from its

16    Advertisers. ReachLocal, in turn, bills and collects payment from Ambassador. Since

17    ReachLocal is responsible for the continued maintenance of the ReachLocal Service (which can

18    be quite expensive), it bargained for prompt payment from Ambassador.

19         27.    To that end, paragraph 5 of the Agency Agreement requires Ambassador

20    to pay "invoices submitted by [ReachLocal] within thirty (30) days." In the event Ambassador

21    fails to do so, Paragraph 5 also contains provisions for interest and attorneys' fees:

22         Amounts due and owing by [Ambassador] that are not paid when
           due shall bear interest at the rate of one-and-one-half percent per
23         month (or the highest rate permitted by law, if less) until paid in
           full. In the event of any failure by [Ambassador] to make
24         payment, [Ambassador] will be responsible for all reasonable
           expenses (including attorneys' fees) incurred by [ReachLocal] in
25         collecting such amounts.

26         28.    In order to prevent the theft of proprietary information and the

27    development of competing software, paragraph 11 of the Agency Agreement contains the

28    following non-compete provision (the "Non-Compete Provision"):

                                          6

1         Each of [ReachLocal] and [Ambassador] agrees that it will not,
during the term of this Agency Agreement and for a period of at
2         least one (1) year after the termination of this Agency Agreement, .
. . take any action to solicit or divert any Advertisers away for the
3         other . . .

4         29.     Like the Account Agreement, the Agency Agreement contains a

5 termination provision to further prevent misuse on the part of Ambassador. Paragraph 13 of the

6 Agency Agreement permits ReachLocal to terminate the Agency Agreement in the event of

7 "willful misconduct, bad faith, or material breach of the [Agency] Agreement or any related

8 agreement," as well as "any misconduct by such other party directly affecting this Agency

9 Agreement."

10                                   **THE BREACHES**

11                                 **The Payment Defaults**

12         30.     Ambassador presently owes ReachLocal the sum of $379,053.39

13 (exclusive of interest) in connection with two outstanding invoices.

14         31.     On two occasions, counsel for ReachLocal wrote to counsel for

15 Ambassador demanding payment on the outstanding invoices.

16         32.     Counsel for Ambassador did not respond, and to date, Ambassador has

17 made no efforts to pay any portion of the outstanding invoices.

18         **The Theft Of Proprietary Information To Create A Competing Service**

19         33.     Ambassador's defaults under the Agreements are not limited to monetary

20 defaults. Ambassador also has violated the Unauthorized Duplication and Non-Compete

21 Provisions.

22         34.     In or around March 2007, ReachLocal learned that Ambassador had used

23 its access to the ReachLocal Service to develop its own competing service. Even worse,

24 Ambassador began to solicit ReachLocal's customers, asking them to switch over to

25 Ambassador's Platform. Thus, on March 11, 2007, ReachLocal invoked the termination

26 provisions contained in the Agreements and immediately terminated Ambassador's use of the

27 ReachLocal Service.

28

1        35.    On March 29, 2007, counsel for ReachLocal wrote to counsel for

2  Ambassador demanding that Ambassador immediately cease its competition with ReachLocal

3  and its solicitation of ReachLocal's customers.  Since then, ReachLocal is informed and believes

4  that Ambassador has continued to solicit ReachLocal's customers.

5        36.    ReachLocal is informed and believes that Ambassador has solicited and

6  taken customer accounts from ReachLocal that amount to many thousands of dollars each year.

7  Even worse, Ambassador's theft of ReachLocal's propriety technology enabled it to do so.

8                      **FIRST CAUSE OF ACTION**

9                      **(BREACH OF CONTRACT)**

10        37.    ReachLocal realleges and incorporates herein by reference paragraphs 1

11  through 36 above as though fully set forth herein.

12        38.    On or about June 25, 2005, ReachLocal and Ambassador entered into a

13  two written agreements – the Account Agreement and the Agency Agreement (together, the

14  "Agreements").  True and correct copies of the Agency and Account Agreements are attached

15  hereto as Exhibits A and B, respectively.

16        39.    ~~ReachLocal has performed all conditions, covenants and promises~~

17  required on its part to be performed in accordance with the terms and conditions of the

18  Agreements, except those, if any, that have been waived, prevented, or excused by the actions or

19  inaction of Ambassador.

20        40.    Ambassador breached the Agreements by failing to pay ReachLocal for its

21  use of the ReachLocal Service, by copying ReachLocal's proprietary technology and creating a

22  competing version of the ReachLocal Service, and by soliciting ReachLocal's customers in

23  violation of the Non-Compete Provision contained in the Agency Agreement.

24        41.    As a result of Ambassador's various breaches of the Agreements,

25  ReachLocal has been damaged in an amount to be proven at trial.

26

27

28

LATHAM&WATKINS™  LA\1730449.3
ATTORNEYS AT LAW
LOS ANGELES

1               **SECOND CAUSE OF ACTION**

2           **(BREACH OF THE IMPLIED COVENANT**

3           **OF GOOD FAITH AND FAIR DEALING)**

4        42.    ReachLocal realleges and incorporates herein by reference paragraphs 1

5 through 41 above as though fully set forth herein.

6        43.    Implied in the Agreements were covenants of good faith and fair dealing

7 wherein Ambassador covenanted that it would, in the exercise of good faith and fair dealing, deal

8 with ReachLocal fairly and honestly and would not do anything to deprive ReachLocal of the

9 benefits of the Agreements.

10        44.    Ambassador breached the covenant of good faith and fair dealing to

11 ReachLocal by, among other things: (1) failing to pay ReachLocal hundreds of thousands of

12 dollars for its use of the ReachLocal Service; (2) copying ReachLocal's proprietary technology

13 and creating a competing version of the ReachLocal Service; and (3) soliciting and diverting

14 ReachLocal's customers to Ambassador's competing service.

15        45.    As a result of Ambassador's breach of the covenant of good faith and fair

16 ~~dealing, ReachLocal has been damaged in an amount to be proven at trial.~~

17               **THIRD CAUSE OF ACTION**

18        **(VIOLATION OF BUSINESS & PROFESSIONS**

19           **CODE §§ 17200 ET SEQ.)**

20        46.    ReachLocal realleges and incorporates herein by reference paragraphs 1

21 through 45 above as though fully set forth herein.

22        47.    California's Unfair Competition Law ("UCL") prohibits acts of unfair

23 competition, which means and includes "any unlawful, unfair or fraudulent business act or

24 practice[.]"

25        48.    ReachLocal is informed and believes that Ambassador committed

26 numerous acts of unfair competition, as forbidden by the UCL.

27        49.    Specifically, Ambassador's use of ReachLocal's proprietary technology to

28 develop a competing version of the ReachLocal Service and its solicitation of ReachLocal

1   customers both violate the UCL. Any benefit provided to Ambassador based on these acts is

2   outweighed by the harm that has been and will be inflicted upon ReachLocal.

3          50.    As a result of Ambassador's violation of the UCL, ReachLocal is entitled

4   to restitution and an injunction enjoining and restraining Ambassador from its continued

5   violation of the UCL.

6                                 **PRAYER**

7         **WHEREFORE**, plaintiff ReachLocal prays as follows:

8     A.    For compensatory, incidental and consequential damages plus other amounts to be

9   established at trial.

10     B.    For an injunction preventing Ambassador, and its officers, agents, servants,

11   employees, parents, subsidiaries and related companies, and those persons in active concert or

12   participation with any of them from engaging in any or all of the following:

13         a.    Directly or indirectly competing with ReachLocal for a period of one (1)

14             year;

15         b.    Using in any manner Ambassador's competing service, which

16             ~~incorporates proprietary elements of the ReachLocal Service.~~

17     C.    For attorneys' fees and costs.

18     D.    For such other and further relief as the Court may deem just and proper.

19   DATED: June 15, 2007             Respectfully submitted,

20                         LATHAM & WATKINS LLP

21                           Daniel Scott Schecter
                          Jason J. Kim

22                           Amjad M. Khan
                          Michele L. Lorbieski

23

24                       By
                          Daniel Scott Schecter

25                         Attorneys for Plaintiff ReachLocal, Inc.

26

27

28

LATHAM-WATKINS  LA-1730449.3
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

1

## DEMAND FOR JURY TRIAL

2  WHEREFORE, plaintiff ReachLocal demands a jury trial on all issues triable to a jury.

3

DATED: June 15, 2007

4                                        Respectfully submitted,
                                          LATHAM & WATKINS LLP
5                                            Daniel Scott Schecter
                                             Jason J. Kim
6                                            Amjad M. Khan
                                             Michele L. Lorbieski
7
                                          
8                                        By
                                             Daniel Scott Schecter
9                                        Attorneys for Plaintiff ReachLocal, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

## Agency Program Terms & Conditions

ReachLocal, 17835 Ventura Blvd, #310 Encino, CA 91316 ("Company"), enters into an Agency Agreement with Ambassador Publications, LLC ("Business") with the following Program Terms and Conditions ("Agency Agreement") becoming immediately effective with Business establishing an Agency account with Company on the ReachLocal.com Web site. Capitalized terms used herein but not otherwise defined herein shall have the meaning ascribed to such terms in the Account Terms and Conditions, as modified from time to time, of which this agreement is a part, or, if applicable, in the form of Advertising Terms & Conditions attached hereto and made a part hereof for such purpose.

1.      Definitions & Conditions.

*Advertiser:* "Advertiser" or "Advertisers" shall refer to an individual or business whose product(s) and/or service(s) are promoted on the Internet or any other medium by way of the Services and who have been set up as an Advertiser through the Company web site under the Business' Agency account. If Business sets itself up as an Advertiser, Business will NOT, for the purposes of this Agency Agreement, constitute an Advertiser that will be covered under this Agency Agreement. Business agrees that Company, at its sole discretion, may use whatever means it has to determine whether an Advertiser is to be covered under this Agency Agreement or whether the Advertiser is, in fact, one and the same as the Business. Business also acknowledges that any advertising purchased directly by one or more if its Advertisers – either current, future, or past -- through their own Advertiser or Agency account shall NOT be covered under this Agency Agreement; provided, however, Company shall engage in no action the likely effect of which will be to impair Business' relationship with Advertisers who have been set up through Agency' Agency account.

*Agency:* "Agency" shall refer to an individual or business who represents one or more Advertisers for the purposes of purchasing advertising services through the Company Web Site or any other means covered under this Agency Agreement and who has set up those Advertisers within their Agency account. For purposes of this Agency Agreement, the Business shall constitute an Agency and shall be the only Agency affected by this Agreement contained herein.

*Amount Paid:* "Amount Paid" shall refer to the amount of money – in U.S. currency – received by Company for advertising placed by Business on behalf of one or more Advertisers. Payment may be by credit card, electronic check, physical check (payable to Company), cash, or cashier's check. Business acknowledges that credit card and electronic check payments are subject to third party approval and that such payments are not considered final – and, as such, part of the Amount Paid – until approval by one or more third parties. Business acknowledges that payments by physical check are considered paid once the check has cleared with Company's bank.

*Chargebacks:* "Chargebacks" shall refer to the amount of money – in U.S. currency – charged back to Company or assessed to Company by Business, Advertiser, or Business or Advertiser's agent(s). Examples include, but are not limited to: (i) Cancellation requests made by Agency or Advertiser from the Agency or Advertiser's credit card provider, regardless of reason; (ii) Cancellation requests made by Agency or Advertiser from the Agency or Advertiser's bank, regardless of reason – said cancellation requests resulting in monies charged back to Company, including fees in excess of the original amount paid.

*Commissionable Amount:* "Commissionable Amount" as of any time shall refer to the Actual Campaign Spend as of such time actually paid by Business or Advertiser as described in the definition of Amount Paid above, less any promotional credits, campaign credits or Chargebacks issued to Business or its Advertisers.

2.      Agency Relationship. Business represents and warrants that it has been authorized by each Advertiser to act as such Advertiser's agent in all respects relating to the Services, including, without limitation, the making of any elections or giving of any consents. .

3.      Term of Agency Agreement. The term of this Agency Agreement commences on the date at which Business creates an Agency account on Company Web Site and shall continue until thirty (30) days after either party notifies the other in writing of its election to terminate this Agreement.

4.      Commissions. Company will pay Commissions to Business pursuant to Section 5 below for advertising placed and paid for by Business on behalf of one or more Advertisers in the amount of twenty five (25%) of the Commissionable Amount. Commissions will be calculated based on activity for an entire calendar month. Business acknowledges that Company may establish different commission rates with other businesses, which amounts may be higher or lower that the commission rate set forth herein.

5.      Terms of Payment. Business shall pay all invoices submitted by Company within thirty (30) days of the date of the invoice. Amounts due and owing by Business that are not paid when due shall bear interest at the rate of one-and-one-half percent per month (or the highest rate permitted by law, if less) until paid in full. In the event of any failure by Business to make payment, Business will be responsible for all reasonable expenses (including attorneys' fees) incurred by Company in collecting such amounts. All payments due hereunder are in U.S. dollars and are exclusive of any sales, use or similar applicable taxes. Business shall promptly pay all such taxes and any associated interest and penalties. Payment shall be made to Business for the full amount of the Commissions owed Business, per the formula above, provided that the Commissions to be paid are greater than $50.00. In the event the Commissions are less than $50.00, that amount will be added to Commissions for future months, and, when that amount equals or exceeds $50.00, Company will pay Business for the full amount at that time. Payment shall be made to Business within thirty (30 days) of the end of the month for which the Commissions are calculated. In the event of a period where the Commissions are negative and the Business owes Company money – for instance, a period where the chargebacks exceed the Amount Paid – that amount will be deducted from future Commissions owed Business, unless that amount is greater than $50.00, in which case Business will be charged the full amount. Business will have thirty (30) days from the end of the month to pay the full amount (payable to Company). Amounts paid after such date shall bear interest at the rate of one-and-one-half percent per month (or the highest rate permitted by law, if less) until paid in full. In the event of any failure by Company or Business to make payment, the defaulting party will be responsible for all reasonable expenses (including attorneys' fees) incurred by the other in collecting such amounts. Commissions will be paid to the Business (in the name of the Business) and will be mailed to the Business address specified by Business as part of the Business Information section of the Company Web Site and as provided by Business. Company is not responsible for incorrect or inaccurate information provided by Business and will not be responsible for looking for current address information in the event a commission payment is returned to Company due to inaccurate address information; provided Company will notify Business of such return by e-mail, fax or other means. All payments due hereunder are in U.S. dollars and are exclusive of any applicable taxes for which Company shall make no deduction or withholding. Business shall be responsible for all applicable taxes.

6.      Statistics & Reporting. Business acknowledges that statistics and Commission reports provided by Company are conclusive and binding on Business for all purposes of this Agreement; provided, however, that Business shall have the right, at its sole cost and expense, to audit such Commission reports no more than once in any twelve month period, and Company shall provide access to Business during normal business hours to review all relevant records and data.

7.    Mark-Up. Business agrees that it will not require its Advertisers to pay more than they would have paid by opening an advertising account directly. Any amounts Business charges in excess of such amount will be considered a "Mark-Up." No commission will be owed hereunder in connection with any Advertiser that pays any Mark-Up, and Business will immediately return any commission paid with respect to any such Advertiser.

8.    Highest Standards of Integrity, Honesty, and Responsibility. Company and Business agree to uphold the highest standards of integrity, honesty, and responsibility in its dealings with Advertisers and with each other. Business further agrees to present, and Company agrees to provide, the Services in a truthful and sincere manner and Business and the Company shall indemnify and hold each other harmless from and with respect to any losses, damages, claims, expenses (including without limitation attorneys' fees) resulting from or relating to any intentional or unintentional misrepresentations by the other (or in the case of Business any of its Advertisers).

9.    Company Trademarks & Name. Each of Company and Business agrees to protect the other's trademarks and trade name by obtaining from the other written permission prior to any use in any advertising or literature. Company agrees that, with respect to Business and Advertisers using Business as their Agency only, the final paragraph of Section 7 of the Account Terms & Conditions shall only be applicable for purposes of providing the Services hereunder.

10.    Obligation to Provide Goods or Services. Upon execution of any Advertising Agreement for Company's benefit, Company shall diligently and in good faith provide Services to Business or to Advertisers represented by Business; provided, however, that Company shall be entitled to reject any request for Services within 10 business days of the establishment of any Campaign through the Business Agency Account.

11.    Agreement Not to Interfere. Each of Company and Business agrees that it will not, during the term of this Agency Agreement and for a period of at least one (1) year after the termination of this Agency Agreement, (i) take any action to solicit or divert any Advertisers away from the other; provided, however, that Advertisers who have been set up through Business' Agency account shall not be deemed to be Advertisers of the Company for the purpose of Business' non-solicitation covenant herein, (ii) induce customers, clients, suppliers, service providers, vendors, agents or other persons under contract or otherwise associated or doing business with either party to terminate, reduce or alter any such involvement, association or business, and/or (iii) induce any person in the employment of, or any consultant to Business or Company to (A) terminate such employment or consulting arrangement, (B) accept employment, or enter into any consulting arrangement, with anyone other than such party, and/or (C) interfere with the suppliers, service providers, vendors, clients, or customers of Business or Company in any manner or the business of Business or Company in any matter. Business understands and acknowledges that Company is not responsible should one of Business' Advertisers, whether past, present, or future, establish, of their own accord, an Advertiser or Agency account through Company Web Site, and, under such circumstances, Business understands that subject to the provisions of this Agreement, Company shall in no way be construed as being in breach of this Section 11 or any other part of this Agency Agreement.

12.    Return of Property. All materials (including, without limitation, documents, drawings, models, apparatus, sketches, design and lists) furnished to the other party (the "Property") are the sole and exclusive property of delivering party or its suppliers or customers. The parties agree to promptly deliver the original and any copies of Property to the delivering party at any time upon request by such party. Upon termination of this Agency Agreement by either party for any reason, each party agrees to promptly

deliver to the other or destroy, at the delivering party's option, the original and any copies of Property of the delivering party. Each party agrees to certify in writing that such party has so returned or destroyed all such Property of the delivering party.

13.      Termination. Notwithstanding any other provision hereof, either party may terminate this Agency Agreement upon written notice of the other party's material breach and/or any misconduct by such other party directly affecting this Agency Agreement. Either party may also terminate this Agency Agreement for "Cause", which shall include (i) willful misconduct, bad faith or material breach of this Agreement or any related agreement and (ii) willful failure to adequately provide services to their Advertisers more than two (2) times in any twelve (12) month period, such determination to be made by the Business in its reasonable discretion. The parties understand that termination, whether by Company or by Business, will involve the de-activation of all accounts established by the Business and that, as a result, Business will no longer have access to statistics, reports, or any information pertaining to Commissions at the time the accounts are de-activated; provided that in all events Company shall provide Business with a final report and shall pay any commissions relating to any deactivated account. The Effective Date of termination will be the date at which the last Business account is de-activated, though Company is under no obligation to provide notification to Business as to when that occurs. Business acknowledges that, subject to Company's non-impairment covenant set forth in Section 1, and further subject to Company's non-solicitation covenant set forth in Section 11 (each of which such covenants shall take precedence over the provisions of this Section 13), Company shall be allowed to market its services directly to Business' Advertisers without being in breach of any provision of this Agreement and Company acknowledges that this Agreement is non-exclusive in all respects whatsoever, and further, that upon termination for any reason or for no reason, or otherwise upon deactivation, nothing herein shall in any manner whatsoever restrict Business' ability to solicit prior, current or prospective Advertisers for the provision of one or more similar or alternative services, including, without limitation, services substantially similar to the Services to be provided by Company hereunder. Company agrees to honor, and make any Commission payments, due and owing, to Business – even if the amount is under $50.00 – within thirty (30) days of the Effective Date of Termination, subject to Company's right to offset any Commissions owing against amounts owed by Business or its Advertisers to Company. In the event the Commissions are less than $0.00, and the Business owes Company, Business will send payment within thirty (30) days of the Effective Date of Termination or the date at which Business notified Company of its desire to terminate (in the case the termination is initiated by Business), whichever is sooner.

14.      Limitations of Liability. COMPANY'S ENTIRE LIABILITY UNDER OR RELATED TO THIS AGENCY AGREEMENT (INCLUDING UNDER THE ACCOUNT TERMS AND CONDITIONS), WHETHER IN TORT, CONTRACT OR OTHER THEORY, EXCEPT IN THE EVENT OF GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, SHALL NOT EXCEED THE AMOUNT OF COMMISSIONS ACTUALLY PAID HEREUNDER.

15.      Counterparts. This Agency Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together will constitute one and the same instrument.

16.      Choice of Law. The validity, interpretation, construction and performance of this Agency Agreement shall be construed and enforced in accordance with, and the rights of the parties shall be governed by, the laws of the State of California without regard to principles of conflicts of laws.

17.    Waiver. No provision of this Agency Agreement shall be modified, waived or discharged unless the modification, waiver or discharge is agreed to in writing and signed by an authorized officer of the Business and the Company. No waiver by either party of any breach of, or of compliance with, any condition or provision of this Agency Agreement by the other party shall be considered a waiver of any other condition or provision or of the same condition or provision at another time.

18.    Jury Trial Right Waiver/Costs. Each of the parties irrevocably waives any right it may have to a trial by jury in any such action, suit or proceeding. Each of the parties agrees that the prevailing party in any action or proceeding arising out of or relating to this Agency Agreement or the transactions contemplated hereby shall be entitled to recover its reasonable fees and expenses in connection therewith, including without limitation legal fees.

19.    Amendment. Business acknowledges that the Account Terms and Conditions, of which this Agreement is a part, are subject to change by Company at any time; provided, however, that Company agrees (i) to provide at least thirty days notice of any such change whenever practical and (ii) that no change affecting Business' liability under this Agreement or the Account Terms and Conditions will be made as to Business without Business prior written consent.

20.    Heirs, Successors and Assigns. Except as herein otherwise provided, this Agency Agreement shall be binding upon and inure to the benefit of the parties hereto, their respective heirs, executors, legal representatives, successors and assigns; provided, however, that Business may not assign this Agency Agreement or any of its rights or obligations hereunder (or under the Account Terms and Conditions) to any party whose principal business activities are competitive with the Service.

21.    No Inconsistent Terms. In the event that Company's Web site has any terms (including without limitation in any "click through" agreements) that are inconsistent with the provisions of this Agency Agreement, this Agency Agreement shall take precedence.


Robert C. Wright
VP of Business Development
ReachLocal, Inc.

# EXHIBIT B

## Account Terms & Conditions

These ReachLocal Account Terms and Conditions, in conjunction with the <u>Agency Program Terms & Conditions</u>, <u>Affiliate Program Terms & Conditions</u>, and <u>Advertising Terms & Conditions</u>, as applicable (collectively, this "Agreement"), shall constitute the agreement between ReachLocal, Inc. ("Company") and the business entity ("Business" or "you") that has established an account with Company's advertising platform ("Platform"). All individual accounts ("User Accounts" or "Account Users") created by the Business or any person permitted access to the Business' account shall automatically be bound by this Agreement.

1. **Acceptance of Terms.** Company provides services to you subject to this Agreement. Company may modify this Agreement from time to time as provided in Section 21 below. Your continued use of the Service (as defined below) or Company's web sites following any such modifications signifies your acceptance of those modifications. You are responsible for monitoring the Company's web sites periodically for notices regarding any such modifications. Modifications will apply only to activities undertaken after the effective date thereof.

2. **Description of Service.** Company provides users with the ability to set up online advertising campaigns, pay for those campaigns, and access reports detailing the activity for those campaigns (the "Service") through the Company's Platform. Unless explicitly otherwise agreed by the parties hereto, any new features that augment or enhance the Service, including the release of new Company properties, shall be subject to this Agreement. You further understand and agree that the Service is provided "AS-IS" and that Company assumes no responsibility for the timeliness, deletion, mis-delivery or failure to store any user communications or personalization settings. You are responsible for obtaining access to the Service and that access may involve third party fees (such as Internet service provider or airtime charges). You are responsible for those fees, including those fees associated with the display or delivery of advertisements. In addition, you must provide and are responsible for all equipment and software necessary to access the Service.

3. **Account Registration Obligations.** You represent and warrant that you are of legal age to form a binding contract and are not a person barred from receiving services such as the Services under the laws of the United States or other applicable jurisdiction. You also agree to: (a) provide true, accurate, current and complete information about yourself as prompted by the Service's registration form (the "Registration Data") and (b) maintain and promptly update the Registration Data to keep it true, accurate, current and complete. If you provide any Registration Data that is untrue, inaccurate, not current or incomplete, or if Company has reasonable grounds to suspect that any Registration Data is untrue, inaccurate, not current or incomplete, Company may, in the exercise of its sole discretion, suspend or terminate your account and refuse to permit you to make any and all current or future use of the Service (or any portion thereof).

4. **Payment Terms.** Amounts due and owing by Business that are not paid when due shall bear interest at the rate of one-and-one-half percent per month (or the highest rate permitted by law, if less) until paid in full. In the event of any failure by Business to make payment, Business will be responsible for all reasonable expenses (including attorneys' fees) incurred

by Company in collecting such amounts. All payments due hereunder are in U.S. dollars and are exclusive of any sales, use or similar applicable taxes. Business shall promptly pay all such taxes and any associated interest and penalties.

5. Privacy Policy. Company will not intentionally disclose any of your personally identifying information (i.e., your name, telephone number, address, email address, social security number, or similar information that may be used to specifically identify you) to third parties without your consent except where the Company, in good faith, believes such disclosure is necessary to comply with the law or to enforce this Agreement. Company reserves the right to distribute demographic and other information that does not specifically identify you to any person under any terms, subject to any other obligations of confidentiality in this Agreement. Company may utilize e-mails to notify you when you have successfully set up an account, when you have requested a temporary password be e-mailed to you, when payments have been processed, when campaigns have been activated, when campaigns are about to expire, when campaigns have expired, and, from time to time, Company may send e-mails mentioning important news regarding the Service or your account. New Registrants are automatically opted-in to receive all e-mails, and, except as specifically provided below, opting-out is not permitted during the term of this Agreement. In addition, Company may make available the ability for users to receive Daily Leads E-Mails for each of their advertising campaigns. You have the choice to opt-in or opt-out of receiving the Daily Leads E-Mail at the time you are setting up your advertising campaign. Company may need to contact an Account User by telephone in the event e-mail is not an available source of communication or where the nature of the communication requires it.

6. Account Passwords and Security. You will receive a password and account designation upon completing the Service's registration process. You are responsible for maintaining the confidentiality of the password and account, and are fully responsible for all activities that occur under your password or account. You agree to (a) immediately notify Company of any unauthorized use of your password or account or any other breach of security, and (b) ensure that you exit from your account at the end of each session. Company cannot and will not be liable for any loss or damage arising from your failure to comply with this Section 6.

7. Account User Conduct. From time to time, Company may provide, as part of its Service, forums, discussion groups or other areas where account users may contribute content. You understand that all information, data, text, software, music, sound, photographs, graphics, video, messages or other materials ("Content"), whether publicly posted or privately transmitted, are the sole responsibility of the person from which such Content originated. This means that you, and not Company, are entirely responsible for all Content that you upload, post, email, transmit or otherwise make available via the Service. Company does not control the Content posted via the Service and, as such, does not guarantee the accuracy, integrity or quality of such Content. You understand that by using the Service, you may be exposed to Content that is offensive, indecent or objectionable. Under no circumstances will Company be liable in any way for any Content, including, but not limited to, for any errors or omissions in any Content, or for any loss or damage of any kind incurred as a result of the use of any Content posted, emailed, transmitted or otherwise made available via the Service.

You agree to not use the Service to:

a) upload, post, email, transmit or otherwise make available any Content that is unlawful, harmful, threatening, abusive, harassing, tortious, defamatory, vulgar, obscene, libelous, invasive of another's privacy, hateful, or racially, ethnically or otherwise objectionable;

b) harm minors in any way;

c) impersonate any person or entity, including, but not limited to, a Company official, forum leader, guide or host, or falsely state or otherwise misrepresent your affiliation with a person or entity;

d) forge headers or otherwise manipulate identifiers in order to disguise the origin of any Content transmitted through the Service;

e) upload, post, email, transmit or otherwise make available any Content that you do not have a right to make available (such as private information and proprietary and confidential information learned or disclosed as part of employment relationships or under nondisclosure agreements);

f) upload, post, email, transmit or otherwise make available any Content that infringes any patent, trademark, trade secret, copyright or other proprietary rights ("Rights") of any party;

g) upload, post, email, transmit or otherwise make available any unsolicited or unauthorized advertising, promotional materials, "junk mail," "spam" "chain letters," "pyramid schemes," or any other form of solicitation, except authorized solicitations in those areas (such as shopping rooms) that are designated for such purpose;

h) upload, post, email, transmit or otherwise make available any material that contains software viruses or any other computer code, files or programs designed to interrupt, destroy or limit the functionality of any data or any computer software or hardware or telecommunications equipment;

i) disrupt the normal flow of dialogue, cause a screen to "scroll" faster than other users of the Service are able to type, or otherwise act in a manner that negatively affects other users' ability to engage in real time exchanges;

j) interfere with or disrupt the Service or servers or networks connected to the Service, or disobey any requirements, procedures, policies or regulations of networks connected to the Service;

k) intentionally or unintentionally violate any applicable local, state, national or international law, including, but not limited to, regulations promulgated by the U.S. Securities and Exchange Commission, any rules of any national or other securities exchange, including, without limitation, the New York Stock Exchange, the American Stock Exchange or the NASDAQ, and any regulations having the force of law;

l) "stalk" or otherwise harass another; or

m) collect or store personal data about other users.

You acknowledge that Company may or may not pre-screen Content, but that Company and its designees shall have the right (but not the obligation) in their sole discretion to pre-screen,

refuse, or move any Content that is available via the Service. Without limiting the foregoing, Company and its designees shall have the right to remove any Content that violates this Agreement or is otherwise objectionable. You agree that you must evaluate, and bear all risks associated with, the use of any Content, including any reliance on the accuracy, completeness, or usefulness of such Content. In this regard, you acknowledge that you may not rely on any Content created by Company or submitted to Company, including without limitation information in Company Message Boards, and in all other parts of the Service.

You understand that the technical processing and transmission of the Service, including your Content, may involve (a) transmissions over various networks; and (b) changes to conform and adapt to technical requirements of connecting networks or devices.

You understand that the Service and software embodied within the Service may include security components that permit digital materials to be protected, and use of these materials is subject to usage rules set by Company and/or content providers who provide content to the Service. You may not attempt to override or circumvent any of the usage rules embedded into the Service. Any unauthorized reproduction, publication, further distribution or public exhibition of the materials provided on the Service, in whole or in part, is strictly prohibited.

You grant Company a nonexclusive, worldwide, irrevocable license to create derivative works based on your Content and to use, duplicate, distribute, and otherwise exploit by any means, whether now known or hereafter developed or discovered, any such Content or derivative works based thereon to the extent contemplated hereunder.

8. Indemnity. You agree to indemnify and hold Company, and its subsidiaries, affiliates, officers, agents, co-branders or other partners, and employees, harmless from any claim or demand, including reasonable attorneys' fees, made by any third party due to or arising out of Content you submit, post, transmit or make available through the Service, your use of the Service, your connection to the Service, your violation of this Agreement, or your violation of any rights of another.

9. No Resale of Service. You agree not to reproduce, duplicate, copy, sell, trade, resell or exploit for any commercial purposes, any portion of the Service, use of the Service, or access to the Service.

10. Modifications to Service. Company reserves the right at any time and from time to time to modify or discontinue, temporarily or permanently, the Service (or any part thereof). You agree that Company shall not be liable to you or to any third party for any modification, suspension or discontinuance of the Service, except as expressly provided to the contrary in this Agreement.

11. Termination. Except as otherwise expressly provided herein, Company may immediately terminate your account and access to the Service, with or without cause of any type or nature, upon notice to you. Termination of your Company account includes (a) removal of access to all offerings within the Service, (b) deletion of your password and all related information, files and content associated with or inside your account (or any part thereof), and (c) barring further use of the Service. Except as expressly provided in this Agreement,

Company shall not be liable to you or any third-party for any termination of your account or access to the Service. All provisions of this Agreement that by their sense or nature should survive termination of this Agreement (including, without limitation, all limits of liability, indemnity obligations, and confidentiality obligations and any provisions that state that they survive) shall so survive.

12. **Dealings with Advertisers.** Your correspondence or business dealings with, or participation in promotions of, advertisers found on or through the Service, including payment and delivery of related goods or services, and any other terms, conditions, warranties or representations associated with such dealings, are solely between you and such advertiser. Company does not sponsor or endorse any advertiser or advertised product or service. Accordingly, you agree that Company shall not be responsible or liable for any loss or damage of any sort incurred as the result of any such dealings or as the result of the presence of such advertisers on the Service.

13. **Links.** The Service may provide, or third parties may provide, links to other World Wide Web sites or resources. Because Company has no control over such sites and resources, you acknowledge and agree that Company is not responsible for the availability of such external sites or resources, and does not endorse and is not responsible or liable for any Content, advertising, products, or other materials on or available from such sites or resources. You further acknowledge and agree that Company shall not be responsible or liable, directly or indirectly, for any damage or loss caused or alleged to be caused by or in connection with use of or reliance on any such Content, goods or services available on or through any such site or resource.

14. **Company's Proprietary Rights.** You acknowledge and agree that the Service and any Company software used in connection with the Service ("Software") contain proprietary and confidential information that is protected by applicable intellectual property and other laws. You further acknowledge and agree that Content contained in advertisements or information presented to you through the Service or advertisers is protected by copyrights, trademarks, service marks, patents or other proprietary rights and laws. Except as expressly provided herein to the contrary, you are not authorized, and you agree not, to modify, rent, lease, loan, sell, distribute or create derivative works based on the Service, Content or the Software, in whole or in part.

15. Company grants you a personal, non-transferable and nonexclusive right and license to use the object code of any Software provided to you by Company in connection with the Service on a single computer; provided that you are not authorized, and you agree not (and do not allow any third party) to copy, modify, create a derivative work of, distribute, reverse engineer, reverse assemble or otherwise attempt to discover any source code, sell, assign, sublicense, grant a security interest in or otherwise transfer any right in such Software. You agree not to access the Service by any means other than through the interface that is provided by Company for use in accessing the Service.

16. **DISCLAIMER OF WARRANTIES.** YOU EXPRESSLY UNDERSTAND AND AGREE THAT:

   a. YOUR USE OF THE SERVICE IS AT YOUR SOLE RISK. THE SERVICE IS PROVIDED ON AN "AS IS" AND "AS AVAILABLE" BASIS. COMPANY

EXPRESSLY DISCLAIMS ALL WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT.

b. COMPANY MAKES NO WARRANTY THAT (I) THE SERVICE WILL MEET YOUR REQUIREMENTS, (II) THE SERVICE WILL BE UNINTERRUPTED, TIMELY, SECURE, OR ERROR-FREE, (III) THE RESULTS THAT MAY BE OBTAINED FROM THE USE OF THE SERVICE WILL BE ACCURATE OR RELIABLE, (IV) THE QUALITY OF ANY PRODUCTS, SERVICES, INFORMATION, OR OTHER MATERIAL PURCHASED OR OBTAINED BY YOU THROUGH THE SERVICE WILL MEET YOUR EXPECTATIONS, AND (V) ANY ERRORS IN THE SOFTWARE WILL BE CORRECTED.

c. ANY MATERIAL DOWNLOADED OR OTHERWISE OBTAINED THROUGH THE USE OF THE SERVICE IS DONE AT YOUR OWN DISCRETION AND RISK, AND YOU WILL BE SOLELY RESPONSIBLE FOR ANY DAMAGE TO YOUR COMPUTER SYSTEM OR LOSS OF DATA THAT RESULTS FROM THE DOWNLOAD OF ANY SUCH MATERIAL.

d. NO ADVICE OR INFORMATION, WHETHER ORAL OR WRITTEN, OBTAINED BY YOU FROM COMPANY OR THROUGH OR FROM THE SERVICE SHALL CREATE ANY WARRANTY NOT EXPRESSLY STATED IN THIS AGREEMENT.

e. A SMALL PERCENTAGE OF USERS MAY EXPERIENCE EPILEPTIC SEIZURES WHEN EXPOSED TO CERTAIN LIGHT PATTERNS OR BACKGROUNDS ON A COMPUTER SCREEN OR WHILE USING THE SERVICE. CERTAIN CONDITIONS MAY INDUCE PREVIOUSLY UNDETECTED EPILEPTIC SYMPTOMS EVEN IN USERS WHO HAVE NO HISTORY OF PRIOR SEIZURES OR EPILEPSY. IF YOU, OR ANYONE IN YOUR FAMILY, HAVE AN EPILEPTIC CONDITION, CONSULT YOUR PHYSICIAN PRIOR TO USING THE SERVICE. IMMEDIATELY DISCONTINUE USE OF THE SERVICE AND CONSULT YOUR PHYSICIAN IF YOU EXPERIENCE ANY DIZZINESS, ALTERED VISION, EYE OR MUSCLE TWITCHES, LOSS OF AWARENESS, DISORIENTATION, ANY INVOLUNTARY MOVEMENT, CONVULSIONS OR OTHER SYMPTOMS POSSIBLY INDICATING A POTENTIAL PROBLEM.

17. LIMITATION OF LIABILITY. BUSINESS EXPRESSLY UNDERSTANDS AND AGREES THAT COMPANY SHALL NOT BE LIABLE UNDER THIS AGREEMENT FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR EXEMPLARY DAMAGES, INCLUDING BUT NOT LIMITED TO, DAMAGES FOR LOSS OF PROFITS, GOODWILL, USE, DATA OR OTHER INTANGIBLE LOSSES (EVEN IF COMPANY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES), REGARDLESS OF THE CAUSE OF SUCH DAMAGES. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, COMPANY SHALL HAVE NO LIABILITY FOR DAMAGES RESULTING FROM: (I) THE USE OR THE INABILITY TO USE THE SERVICE; (II) THE COST OF PROCUREMENT OF SUBSTITUTE GOODS AND SERVICES RESULTING FROM ANY GOODS, DATA, INFORMATION OR SERVICES PURCHASED OR OBTAINED OR MESSAGES RECEIVED OR TRANSACTIONS ENTERED INTO THROUGH OR FROM THE SERVICE; (III) UNAUTHORIZED

ACCESS TO OR ALTERATION OF YOUR TRANSMISSIONS OR DATA; (iv) STATEMENTS OR CONDUCT OF ANY THIRD PARTY ON THE SERVICE; OR (v) ANY OTHER MATTER RELATING TO THE SERVICE OR THIS AGREEMENT. IN NO EVENT SHALL COMPANY'S AGGREGATE LIABILITY UNDER THIS AGREEMENT, WHETHER IN CONTRACT, TORT OR ANY OTHER THEORY OF LIABILITY, EXCEED THE AMOUNTS ACTUALLY PAID TO COMPANY HEREUNDER; PROVIDED THAT LIABILITY ARISING UNDER ANY OTHER TERMS AND CONDITIONS MADE A PART OF THIS AGREEMENT MAY BE FURTHER LIMITED AS PROVIDED IN SUCH TERMS AND CONDITIONS.

18. No Third-Party Beneficiaries. You agree that, except as otherwise expressly provided in this Agreement, there shall be no third party beneficiaries to this Agreement.

19. Notice. Company may provide you with notices, including those regarding changes to this Agreement, by email, regular mail, or postings on the Messages portion of the Company's web site accessible upon your logon thereto.

20. Trademark Information. The Company trademarks and service marks and other Company logos and product and service names are trademarks of Company (the "Company Marks"). Without Company's prior written permission, you are not authorized, and you agree not, to display or use in any manner, the Company Marks.

21. Entire Agreement. This Agreement constitutes the entire agreement between you and Company relating to the Service, superceding any prior agreements between you and Company. This Agreement may be amended only (i) as expressly provided herein or (ii) by a writing signed by each of the parties hereto.

22. Choice of Law and Forum. This Agreement and the relationship between you and Company shall be governed by the laws of the State of California applicable to contracts entered into and performed in California by residents thereof. Any claim by either party hereto against the other party hereto arising out of or in connection with this Agreement or the Service shall be brought in a court of competent jurisdiction located in the county of Los Angeles, state of California; provided that administrative and other non-judicial actions may be brought in any location.

23. Waiver and Severability of Terms. The failure of Company to exercise or enforce any right or provision of this Agreement shall not constitute a waiver of such right or provision. If any provision of this Agreement is found by a court of competent jurisdiction to be invalid, the parties nevertheless agree that the court should endeavor to give effect to the parties' intentions as reflected in the provision to the extent possible under applicable law, and the other provisions of this Agreement remain in full force and effect.

24. Transferability. Business shall not assign, delegate or otherwise transfer any of its rights, obligations or duties of performance hereunder, and any purported assignment, delegation or other transfer in violation of this Section 24 shall be null and void. Company may assign, delegate or otherwise transfer any of its rights, obligations or duties of performance hereunder upon notice to Business in connection with any assignment, license or other transfer of any Company assets relating to the Service or any rights therein.

25. Statute of Limitations. You agree that regardless of any statute or law to the contrary, any claim or cause of action arising out of or related to use of the Service or this Agreement must be filed within one (1) year after such claim or cause of action arose or be forever

barred; provided that this Section 25 shall not in any way limit the time in which claims for infringement or misappropriation of intellectual property rights may be brought.

26. The section titles in this Agreement are for convenience only and have no legal or contractual effect.

27. **Violations.** Please report any violations of this Agreement to support@reachlocal.com.

28. **Promotional Credits.** From time to time, Company may offer Account Users promotional credits towards advertising through the Platform. Company may initiate and terminate the issuance of promotional credits at any time. In no case shall the Account User's ability to apply promotional credits extend beyond one (1) year from the time the promotional credit is issued to the Account User, and Company reserves the right to change the period during which promotional credits can be applied at any time upon notice. Promotional credits cannot be redeemed for cash and are non-transferable, not even to other Account Users from the same Business. If a promotional credit is applied to the cost of one or more of Company's Services, it cannot be used again or credited back to the Account User. In other words, once a promotional credit is redeemed, it is forfeited at that time.

29. **Destination Pages.** Company may provide Business with a web site ("Destination Page") as part of its Services. While Company will take reasonable measures to ensure that the Destination Page is generally accessible through the Internet, the Company does not warrant that Destination Page can be accessed (i) through all Internet browsers; (ii) through any device that can access the Internet. Nor does the Company warrant that the Destination Page can be accessible 24 hours a day and 7 days a week, whether or not the Company is hosting the Destination Page on its own servers or contracting with another business entity to provide the hosting services for those Destination Pages. Company shall have no liability in connection with any failure of availability or usability of any Destination Page or other Internet site.

30. Business acknowledges and agrees that the provisions of this Agreement that limit liability, disclaim warranties, or exclude consequential damages or other damages or remedies are essential terms of this Agreement that are fundamental to the parties' understanding regarding allocation of risk. Accordingly, such provisions shall be severable and independent of any other provisions of this Agreement and shall be enforced regardless of any breach hereof or other occurrence or condition relating in any way to this Agreement or the Services. Without limiting the generality of the foregoing, *Business agrees that all limitations of liability, disclaimers of warranties, and exclusions of consequential damages or other damages or remedies shall remain fully valid, effective and enforceable in accordance with their respective terms, even under circumstances that cause any exclusive remedy under this Agreement to fail of its essential purpose.*

31. **Independent Contractor Relationship.** Business's relationship with Company is that of an independent contractor, and nothing in this Agreement is intended to, or should be construed to, create a partnership, agency, joint venture or employment relationship. Business will not be entitled to any of the benefits which Company may make available to its employees, including, but not limited to, group health or life insurance, profit sharing or retirement benefits. Business is not authorized to make any representation, contract or commitment on behalf of Company unless specifically requested or authorized in writing to do so by a

Company manager. Business is solely responsible for, and will file, on a timely basis, all tax returns and payments required to be filed with, or made to, any federal, state or local tax authority with respect to the performance of services and receipt of fees under this Agreement. Business is solely responsible for any expenses incurred in the course of performing services under this Agreement. If requested by Company, Business may be required to provide the necessary city, state, and federal tax information as required by the Internal Revenue Service, including, but not limited to, the Business' social security number or employer tax ID number. Business further agrees that it is the Business' sole responsibility to provide such information to Company in a timely fashion and that a failure to do so may result in the delay or forfeiture of any payments due Business from Company under the terms of this Agreement. .

Robert C. Wright
VP of Business Development
ReachLocal, Inc.

Kathy Hippe
CEO
Ambassador Publications LLC
6/25/05

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

Daniel Scott Schecter, Esq.
Latham & Watkins LLP
633 West Fifth Street
Suite 4000
Los Angeles, CA 90071
TELEPHONE NO.: 213-485-1234    FAX NO.: 213-891-8763
ATTORNEY FOR (Name): Plaintiff ReachLocal, Inc.

CONFORMED COPY
ORIGINAL FILED
Los Angeles Superior Court

JUN 15 2007

John A. Clarke, Executive Officer/Clerk
By _____ Deputy
D.M. Swain

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, California 90012
BRANCH NAME: Central District

CASE NAME: REACHLOCAL, INC. V. AMBASSADOR PUBLICATIONS, LLC

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: BC372791 |
|---|---|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT: | |

*Items 1-5 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403) |
|---|---|---|
| [ ] Auto (22) | [X] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse condemnation (14) | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Wrongful eviction (33) | |
| **Non-PI/PD/WD (Other) Tort** | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Drugs (38) | [ ] Other complaint (not specified above) (42) |
| [ ] Intellectual property (19) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Petition re: arbitration award (11) | [ ] Other petition (not specified above) (43) |
| **Employment** | [ ] Writ of mandate (02) | |
| [ ] Wrongful termination (36) | [ ] Other judicial review (39) | |
| [ ] Other employment (15) | | |

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve    in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision
3. Type of remedies sought (check all that apply):
   a. [X] monetary   b. [X] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action (specify):
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)
Date: June 15, 2007
Daniel Scott Schecter, Esq.
(TYPE OR PRINT NAME)    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2007]

**CIVIL CASE COVER SHEET**

Legal Solutions Plus

Cal. Rules of Court, rules 3.220, 3.400–3.403;
Standards of Judicial Administration, § 19

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

### To Plaintiffs and Others Filing First Papers

If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 5 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. You do not need to submit a cover sheet with amended papers. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

### To Parties in Complex Cases

In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the
case involves an uninsured
motorist claim subject to
arbitration, check this item
instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability *(not asbestos or
toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip
and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination,
false arrest) *(not civil
harassment)* (08)
Defamation (e.g., slander, libel)
(13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
*(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract *(not unlawful detainer
or wrongful eviction)*
Contract/Warranty Breach—Seller
Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open
book accounts) (09)
Collection Case—Seller Plaintiff
Other Promissory Note/Collections
Case
Insurance Coverage *(not provisionally
complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent
domain, landlord/tenant, or
foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
drugs, check this item; otherwise,
report as Commercial or
Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case
Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor
Commissioner Appeals

**Provisionally Complex Civil Litigation
(Cal. Rules of Court Rules 3.400-3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
*(arising from provisionally
complex case type listed above)*
(41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of
County)
Confession of Judgment *(non-
domestic relations)*
Sister State Judgment
Administrative Agency Award
*(not unpaid taxes)*
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment
Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-
harassment)*
Mechanics Lien
Other Commercial Complaint
Case *(non-tort/non-complex)*
Other Civil Complaint
*(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition *(not specified above)*
(43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult
Abuse
Election Contest
Petition for Name Change
Petition for Relief from Late
Claim
Other Civil Petition

| SHORT TITLE: REACHLOCAL, INC. v. AMBASSADOR PUBLICATIONS, LLC | CASE NUMBER BC372791 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

| This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court. |
|---|

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL?  [X] YES  CLASS ACTION?  [ ] YES  LIMITED CASE?  [ ] YES  TIME ESTIMATED FOR TRIAL  [ ] HOURS/ [10] DAYS

Item II. Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column A, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check one Superior Court type of action in Column B below which best describes the nature of this case.

**Step 3:** In Column C, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (See Column C below) |
|---|

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | [ ] A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | [ ] A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/Property Damage/Wrongful Death Tort | Asbestos (04) | [ ] A6070  Asbestos Property Damage | 2. |
| | | [ ] A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | [ ] A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | [ ] A7210  Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | [ ] A7240  Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | [ ] A7250  Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | [ ] A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | [ ] A7270  Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | [ ] A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| Non-Personal Injury/Property Damage/Wrongful Death Tort | Business Tort (07) | [ ] A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | [ ] A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | [ ] A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | [ ] A6013  Fraud (no contract) | 1., 2., 3. |

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

| | A<br>Civil Case Cover<br>Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>- See Step 3 Above |
|---|---|---|---|
| | SHORT TITLE: REACHLOCAL, INC. v. AMBASSADOR PUBLICATIONS, LLC | | CASE NUMBER |

**SHORT TITLE:** REACHLOCAL, INC. v. AMBASSADOR PUBLICATIONS, LLC   **CASE NUMBER**

| | A<br>Civil Case Cover<br>Sheet Category No. | B<br>Type of Action<br>(Check only one) | | C<br>Applicable Reasons<br>- See Step 3 Above |
|---|---|---|---|---|
| **Non-Personal Injury-Property Damage/ Wrongful Death Tort (Cont'd.)** | Professional Negligence (25) | ☐ A6017 | Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050 | Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025 | Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037 | Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024 | Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109 | Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004 | Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008 | Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019 | Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☒ A6028 | Other Breach of Contract/Warranty (not fraud or negligence) | 1., ③., 5. |
| | Collections (09) | ☐ A6002 | Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012 | Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015 | Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009 | Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031 | Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027 | Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 | Eminent Domain/Condemnation   Number of parcels _____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023 | Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018 | Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032 | Quiet Title | 2., 6. |
| | | ☐ A6060 | Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer - Commercial (31) | ☐ A6021 | Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer - Residential (32) | ☐ A6020 | Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer - Drugs (38) | ☐ A6022 | Unlawful Detainer-Drugs | 2., 6. |
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108 | Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115 | Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

LACIV 109 (Rev. 01/07)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 2 of 4

| SHORT TITLE: REACHLOCAL, INC. v. AMBASSADOR PUBLICATIONS, LLC | CASE NUMBER | |
|---|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review [Cont'd.]** | Writ of Mandate<br>(02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review<br>(39) | ☐ A6150  Other Writ / Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade<br>Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction defect | 1., 2., 3. |
| | Claims Involving Mass<br>Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage<br>Claims from Complex<br>Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment<br>(20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above)<br>(42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

LACIV 109 (Rev. 01/07)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 3 of 4

| SHORT TITLE: REACHLOCAL, INC. v. AMBASSADOR PUBLICATIONS, LLC | CASE NUMBER | |

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE | ADDRESS: | |
|---|---|---|
| ☐1. ☒2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | 21700 Oxnard Street, Suite 1600 | |
| CITY: Woodland Hills | STATE: CA | ZIP CODE: 91367 | |

Item IV. Declaration of Assignment: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the <u>Stanley Mosk</u> courthouse in the <u>Central</u> District of the Los Angeles Superior Court (Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: <u>June 15, 2007</u>

(SIGNATURE OF ATTORNEY/FILING PARTY)

Daniel Scott Schecter, Esq.

---

## PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LACIV 109 (Rev 01/07), LASC Approved 03-04.

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form FL-935, if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev. 01/07)
LASC Approved 03-04

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

LASC, rule 2.0
Page 4 of 4

# NOTICE OF CASE ASSIGNMENT
## LOS ANGELES SUPERIOR COURT

**CASE NUMBER** _____ BC372791

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below. There is additional information on the reverse side of this form.

| ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | | ROOM | |
|---|---|---|---|---|---|---|---|---|
| Hon. Gregory Alarcon | 36 | 410 | | Hon. William Highberger | 32 | | 406 | |
| Hon. Alice E. Altoon | 28 | 318 | | Hon. Ernest Hiroshige | 54 | | 512 | |
| Hon. Conrad Aragon | 49 | 509 | | Hon. Jane Johnson | 56 | | 514 | |
| Hon. Helen I. Bendix | 18 | 308 | | Hon. Elizabeth Allen White | 48 | | 506 | |
| Hon. Elihu M. Berle | 42 | 416 | | Hon. Malcolm H. Mackey | 55 | | 515 | |
| Hon. Tricia Ann Bigelow | 23 | 315 | | Hon. Jon M. Mayeda | 72 | | 731 | |
| Hon. Soussan Bruguera | 71 | 729 | | Hon. Rita Miller | 16 | | 306 | |
| Hon. Susan Bryant-Deason | 52 | 510 | | Hon. David L. Minning | 61 | | 632 | |
| Hon. James C. Chalfant | 13 | 630 | | Hon. Aurelio Munoz | 47 | | 507 | |
| Hon. Victoria Chaney | 324 | CCW | | Hon. Mary Ann Murphy | 25 | | 317 | |
| | 89 | 532 | | Hon. Joanne O'Donnell | 37 | | 413 | |
| Hon. Ralph W. Dau | 57 | 517 | | Hon. Michael C. Solner | 39 | | 415 | |
| Hon. Maureen Duffy-Lewis | 38 | 412 | | Hon. Mel Recana | 45 | | 529 | |
| Hon. James R. Dunn | 26 | 316 | | Hon. Andria K. Richey | 31 | | 407 | |
| Hon. Mark Mooney | 88 | 617 | | Hon. Teresa Sanchez-Gordon | 74 | | 735 | |
| Hon. William F. Fahey | 78 | 730 | | Hon. Ann I. Jones | 40 | | 414 | |
| Hon. Irving Feffer | 51 | 511 | | Hon. John P. Shook | 53 | | 513 | |
| Hon. Edward A. Ferns | 69 | 621 | | Hon. Ronald M. Sohigian | 41 | | 417 | |
| Hon. Kenneth R. Freeman | 64 | 601 | | Hon. Michael L. Stern | 62 | | 600 | |
| Hon. Haley J. Fromholz | 20 | 310 | | Hon. Mary Thornton House | 17 | | 313 | |
| Hon. Richard Fruin | 15 | 307 | | Hon. Rolf M. Treu | 58 | | 516 | |
| Hon. Terry Green | 14 | 300 | | Hon. John Shepard Wiley Jr. | 50 | | 508 | |
| Hon. Elizabeth A. Grimes | 30 | 400 | | Hon. Judith C. Chirlin | 19 | | 311 | |
| Hon. Paul Gutman | 34 | 408 | | Hon. Charles C. Lee | 33 | | 409 | |
| Hon. Robert L. Hess | 24 | 314 | | | 35 | | 411 | |
| | 3 | 224 | | OTHER | | | | |

Given to Plaintiff of record on _____

John A. Clarke, Executive Officer/Clerk

_____ DEPUTY
CLERK



*·from the*
## LOS ANGELES SUPERIOR COURT
### ADR DEPARTMENT

If you have a general jurisdiction case involving one of these 6 subject matter areas:

- commercial
- employment
- medical malpractice

- real estate
- trade secrets
- unfair competition

### *Your case may be eligible for the court's pilot Early Neutral Evaluation (ENE) program.*

♦ **ENE can reduce litigation time and costs and promote settlement.**

♦ ENE is an informal process that offers a non-binding evaluation by an experienced neutral lawyer with expertise in the subject matter of the case. After counsel present their claims and defenses, the neutral evaluates the case based on the law and the evidence.

♦ **ENE is voluntary and confidential.**

♦ The benefits of ENE include helping to clarify, narrow or eliminate issues, identify areas of agreement, offer case-planning suggestions and, if requested by the parties, assist in settlement.

♦ **The first three (3) hours of the ENE session are free of charge.**

See back for a list of participating pilot courthouses and departments.

*For additional ENE information, visit the Court's web site at www.lasuperiorcourt.org/adr*

# PARTICIPATING PILOT COURTHOUSES:

**(General Jurisdiction Case Only)**

- **Chatsworth**
- **Pomona**
- **Santa Monica**
- **Van Nuys**
- **Stanley Mosk** (Departments listed below only.)

  Department 15

  Department 16

  Department 28

  Department 30

  Department 31

  Department 32

  Department 38

  Department 42

  Department 47

  Department 50

  Department 52

  Department 55

  Department 56

  Department 68

  Department 71

  Department 89

## LOS ANGELES SUPERIOR COURT
### CIVIL ALTERNATIVE DISPUTE RESOLUTION (ADR) PROGRAMS
[CRC 3.221 Information about Alternative Dispute Resolution]

The plaintiff shall serve a copy of the ADR Information package on each defendant along with the complaint.

### ADR PROGRAMS

"Alternative Dispute Resolution (ADR)" is the term used to describe all the other options available for settling a dispute which once had to be settled in court. ADR processes such as arbitration, mediation, early neutral evaluation (ENE), and settlement conferences, are less formal than court and provide opportunities for litigants to reach an agreement using a problem-solving approach rather than the more adversarial approach of litigation.

| | |
|---|---|
| **MEDIATION** | A neutral third party called a "mediator" helps participants in the dispute create their own resolution. The mediator helps facilitate a discussion in which the parties reach a mutually agreed upon settlement. Therefore, mediation allows for more creative resolutions to disputes than other ADR processes. |
| | The Court Mediation Program is governed by Code of Civil Procedure sections 1775-1775.15, California Rules of Court, Rules 3.850-3.868 and 3.870-3.878; Evidence Code sections 1115-1128, and Los Angeles Superior Court Rules, Chapter 12. |
| **ARBITRATION** | A neutral third party called an "arbitrator" listens to each side in the dispute present its case. The arbitrator, who is an attorney, issues a decision based on the evidence. Although evidence is presented, arbitration is a less formal process than litigation. The decision is non-binding unless the parties agree in writing to binding arbitration. |
| | The Court Arbitration Program is governed by Code of Civil Procedure sections 1141.10-1141.31, California Rules of Court, Rules 3.810-3.830, and Los Angeles Superior Court Rules, Chapter 12. |
| **ENE** | A neutral third party called an "evaluator" will provide the parties and their counsel, on a voluntary basis and in a confidential session, the opportunity to make summary presentations of their claims and defenses, including key evidence. After hearing the presentations, the evaluator, who is an experienced lawyer with subject-matter expertise, offers a non-binding evaluation. |
| | The evaluator will also help clarify, narrow or eliminate issues, identify areas of agreement, offer case-planning suggestions, and, if requested by parties, settlement assistance. Although settlement is not the primary goal of ENE, the ENE process can reduce litigation time and costs and promote settlement. |
| | The Court ENE Program is governed by Los Angeles Superior Court Rules, Chapter 12. |
| **SETTLEMENT CONFERENCE** | A neutral third party called a "settlement officer," who is also a retired judge, assists the parties in negotiating their own settlement and may evaluate the strengths and weaknesses of the case. |

### JURISDICTIONAL LIMITATIONS

| | |
|---|---|
| **MEDIATION, ARBITRATION & ENE** | Any case in which the amount in dispute is between $25,000-$50,000 per plaintiff, and was not previously referred to the Court ADR Program, can be sent to the Court ADR Program for mediation, arbitration, or ENE by stipulation, election by plaintiff or order of the court. |
| | Parties may *voluntarily* request or initiate a mediation or arbitration proceeding, regardless of the amount in dispute. |
| **SETTLEMENT CONFERENCE** | Any case, regardless of the amount in dispute, may be ordered to a settlement conference. There is no monetary limit. |

### REFERRAL INFORMATION

After the Court determines the suitability of a case for ADR, the Court directs the parties to the ADR Department to initiate the ADR process. Once the parties have completed the ADR intake forms, a Neutral may be selected.

ADR 005 10-03
LASC Approved
(Rev. 01-07)

## NEUTRAL SELECTION

Parties may select a mediator or arbitrator from the Court Party Pay Panel or Pro Bono Panel or may hire someone privately, at their discretion. Parties are assigned to a settlement officer by court staff.

## COURT ADR PANELS

**PARTY PAY PANEL**  The Party Pay Panel consists of mediators and arbitrators who have achieved a specified level of experience in court-connected cases. The parties (collectively) may be charged $150.00 per hour for the first three hours of hearing time. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the mediator or arbitrator if the parties consent in writing.

**PRO BONO PANEL**  The Pro Bono Panel consists of trained mediators and arbitrators who have not yet gained the experience to qualify for the Party Pay Panel and experienced mediators and arbitrators who make themselves available pro bono. Mediators and arbitrators donate their time to the courts as a way of supporting the judicial system. It is the policy of the Court that all pro bono volunteer mediators and arbitrators provide three hours hearing time per case. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the mediator or arbitrator if the parties consent in writing.

**ENE**  The Court ENE Panel consists of experienced lawyers who have been trained to serve as neutral evaluators. The evaluators provide preparation time and three hours hearing time per case at no charge. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the evaluator if the parties consent in writing.

**PRIVATE NEUTRAL**  The market rate for private neutrals can range from $200-$1,000 per hour.

For additional information, visit the Court ADR web application at **www.lasuperiorcourt.org** (click on ADR).

Partially Funded by the Los Angeles County Dispute Resolution Program

# LOS ANGELES COUNTY
# DISPUTE RESOLUTION PROGRAMS ACT (DRPA) CONTRACTORS

The following organizations provide mediation services under contract with the Los Angeles County Department of Community & Senior Services. Services are provided to parties in any civil case filed in the Los Angeles County Superior Court. Services are not provided under this program to family, probate, traffic, criminal, appellate, mental health, unlawful detainer/eviction or juvenile court cases.

### Asian-Pacific American Dispute Resolution Center
### (213) 250-8190
(Spanish & Asian languages capability)

### California Academy of Mediation Professionals
### (818) 377-7250

### Center for Conflict Resolution
### (818) 380-1840

### Inland Valleys Justice Center
### (909) 397-5780
(Spanish language capability)

### Office of the Los Angeles City Attorney Dispute Resolution Program
### (213) 485-8324
(Spanish language capability)

### Los Angeles County Bar Association Dispute Resolution Services
### toll free number 1-877-4Resolve (737-6583) or (213) 896-6533
(Spanish language capability)

### Los Angeles County Department of Consumer Affairs
### (213) 974-0825
(Spanish language capability)

### The Loyola Law School Center for Conflict Resolution
### (213) 736-1145
(Spanish language capability)

### Martin Luther King Legacy Association Dispute Resolution Center
### (323) 290-4132
(Spanish language capability)

### City of Norwalk
### (562) 929-5603

---

DRPA Contractors do not provide legal advice or assistance, including help with responding to summonses. Accessing these services does not negate any responsibility you have to respond to a summons or appear at any set court date. See the reverse side of this sheet for information on the mediation process and obtaining legal advice.

---

## THIS IS A TWO-SIDED DOCUMENT.

**What is the goal of mediation?**

The goal is to assist the parties in reaching a mutually acceptable agreement or understanding on some or all of the issues. The parties jointly become the primary decision maker in how to resolve the issues as opposed to the traditional judge and/or jury system.

**Do I need an attorney for this?**

While it is recommended to have an attorney and/or receive legal advice before the mediation starts, you are not required to have representation. If you do have an attorney, they may participate in the mediation with you.

**How long does it take?**

Face-to-face mediations generally last one to three hours. Telephone conciliations, in which the parties do not meet face to face, vary from a few days to several weeks. Much depends on the number of parties involved and the complexities of the issues. When the mediation takes place depends on parties scheduling availability.

| **A Mediator helps parties. . .** | **A Mediator does not...** |
|---|---|
| ♦ Have productive discussions<br>♦ Avoid or break impasses<br>♦ Defuse controversy<br>♦ Generate options that have potential for mutual gain<br>♦ Better understand each other's concerns and goals<br>♦ Focus on their interests rather than their positions | ♦ Provide advice or opinions<br>♦ Offer legal information<br>♦ Make decisions for parties<br>♦ Represent or advocate for either side<br>♦ Judge or evaluate anyone or anything<br>♦ Conduct research<br>♦ "Take Sides" |
| **What does it cost?** | **Legal Advice/Information** |
| The first three hours of any mediation are free. Thereafter, charges are based on income or revenue. All fees are waived for low-income individuals. | If you want to retain an attorney, a list of state certified referral services is at courtinfo.ca.gov which also has an on-line self help legal center. |
| **What is the difference between the contractors listed and the Superior Court ADR Office?**<br><br>The services offered by the contractors listed may be accessed immediately. Those offered by the Superior Court ADR Office, also a DRPA contractor, may not be accessed by parties until a court appearance, or at the directive of the judge assigned to the case. | **Self-Help Legal Access Centers** are at the Inglewood, Palmdale, Pomona, and Van Nuys courthouses. nls-la.org and lafla.org<br><br>**Court Personnel** can answer non-legal questions (forms, fees, fee waivers). lasuperiorcourt.org<br><br>**Low-income individuals** may qualify for help from non-profit legal organizations. Court Personnel and DRPA contractors have such listings. |

## Dispute Resolution Programs Act (DRPA) Grants Administration Office
### (213) 738-2621
**(The DRP Office is not a Superior Court Office. Consult your phone directory to locate the number of the Court Office on your summons.)**

## THIS IS A TWO-SIDED DOCUMENT.

| NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

ATTORNEY FOR (Name):

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION TO PARTICIPATE IN ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: |
|---|---|

The undersigned parties stipulate to participate in an Alternative Dispute Resolution (ADR) process in the above-entitled action, as follows:

☐ Mediation

☐ Non-Binding Arbitration

☐ Binding Arbitration

☐ Early Neutral Evaluation

☐ Settlement Conference

☐ Other ADR Process (describe): _____

Dated: _____

---

Name of Stipulating Party
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

---

Name of Stipulating Party
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

---

Name of Stipulating Party
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

---

Name of Stipulating Party
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

☐ Additional signature(s) on reverse

ADR 001 10-04
LASC Approved
(Rev. 01-07)

**STIPULATION TO PARTICIPATE IN
ALTERNATIVE DISPUTE RESOLUTION (ADR)**

Cal. Rules of Court, rule 3.221
Page 1 of 2

| Short Title | Case Number |
|---|---|
| | |

---

Name of Stipulating Party
☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

---

Name of Stipulating Party
☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

---

Name of Stipulating Party
☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

---

Name of Stipulating Party
☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

---

Name of Stipulating Party
☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

---

Name of Stipulating Party
☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

---

Name of Stipulating Party
☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

---

Name of Stipulating Party
☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

---

Name of Stipulating Party
☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

---

Name of Stipulating Party
☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

---

ADR 001 10-04
LASC Approved
(Rev. 01-07)

**STIPULATION TO PARTICIPATE IN
ALTERNATIVE DISPUTE RESOLUTION (ADR)**

Cal. Rules of Court, rule 3.221
Page 2 of 2

# HIPPLE AFFIDAVIT
# EXHIBIT E

## SETTLEMENT AGREEMENT, WAIVER
## AND GENERAL RELEASE

This Settlement Agreement, Waiver and General Release (referred to as "Agreement") is being entered into by and between Stephan Cesarini ("Cesarini") and Ambassador Publications, L.L.C. ("Ambassador").

WHEREAS, Cesarini was employed by Ambassador as an at-will employee commencing in or about March 2004, and signed a Proprietary Information and Inventions Agreement which, among other things, restricted his ability to compete with Ambassador and to solicit its customers after he ceases his employment with Ambassador (the "Agreement");

WHEREAS, Cesarini is no longer employed by Ambassador as of January 10, 2006;

WHEREAS, Ambassador has filed an action in the Supreme Court of the State of New York, County of New York, captioned *Ambassador Publications, L.L.C. v. Stephan Cesarini,* Index No. 103968/06, in which Ambassador has filed a complaint alleging that Cesarini has violated the Agreement and breached his duty of

loyalty, among other things (the "Action"), and in which Cesarini has served an answer denying the material allegations of Ambassador's complaint;

WHEREAS, the parties desire to settle their differences in order to save the legal fees that they would otherwise incur; and

WHEREAS, by entering into this Agreement, the parties do not admit that they have acted in any way unlawfully or have incurred any liability in any manner or at all to each other;

NOW THEREFORE, in consideration of certain mutual promises and other good and valuable consideration, the adequacy of which is acknowledged, it is agreed as follows:

1.    Cesarini shall issue a check in the amount of $5,000.00 payable to Ambassador Publications, L.L.C. simultaneously with the execution of this Agreement, in full satisfaction of all claims, known and unknown, asserted or that could have been asserted herein, and as more fully set forth below.

2.    In exchange for the consideration set forth in this Agreement, effective as of the date of the delivery and receipt of all payments due under paragraph 1 above, Cesarini, on behalf

2

of himself, and his heirs and assigns, releases and forever
discharges Ambassador, its present and former board members,
officers, owners, directors, stockholders, supervisors,
employees, agents, successors, assigns, insurers, counsel,
affiliates, divisions, subsidiaries, franchisors, benefit plan
administrators and trustees, including but not limited to Kathryn
Hipple (the "Releasees"), from all claims, causes of action,
grievances, and liabilities of any nature whatsoever that he had,
may now have, or could have, against the Releasees, including any
claims or liabilities arising pursuant to any employment
relations statute, regulation or ordinance, including Title VII
of the Civil Rights Act of 1964, as amended, the Americans With
Disabilities Act, the Rehabilitation Act of 1973, the Equal Pay
Act, the National Labor Relations Act, as amended, the Civil
Rights Act of 1991, the New York State Human Rights Law, the New
York State Labor Law, the Constitutions of the United States and
of the State of New York, all city, county, town or local fair
employment practices laws or human rights laws, the Employee
Retirement Income Security Act of 1974, as amended ("ERISA"), the
Consolidated Omnibus Budget Reconciliation Act ("COBRA"), the
Worker Adjustment Retraining and Notification Act, the Family and
Medical Leave Act, the Civil Rights Acts (42 U.S.C. ' 1981, 1983,
1985, all as amended), the Fair Labor Standards Act, and pursuant
to any other obligation, or arising out of contract, express or

3

implied in law or fact, tort, whether in law or equity, and
including all claims for wages, notice, pay in lieu of notice,
health, welfare or any other form of benefits, insurance benefits
of any kind and severance pay, up to the effective date of this
Agreement. Cesarini waives all claims against the Releasees for
attorneys' fees and costs and disbursements. Cesarini also waives
reinstatement with Ambassador, and he covenants not to reapply
for employment with Ambassador.

3.   The parties, by their attorneys, will execute and/or
cause to be filed a Stipulation of Discontinuance of the Action
upon execution of this Agreement and receipt and clearance of the
settlement payment referenced in paragraph 1 above.

4.   Effective as of the date this Agreement is executed,
Cesarini covenants not to commence, maintain, prosecute or
participate in (except as may be required by law, pursuant to a
court order or in response to a valid subpoena) any action,
charge, complaint or proceeding of any kind (on his own behalf or
on behalf of any other person or entity or on behalf of or as a
member of any alleged class of persons) in any court or before
any administrative or investigative body or agency (whether
public, quasi-public or private) against Ambassador or any of the
Releasees, with respect to any act, omission, transaction or

4

occurrence up to and including the date of the execution of this Agreement.

5.    Cesarini represents that he has not commenced, maintained, prosecuted or participated in any action, charge, complaint or proceeding of any kind (on his own behalf or on behalf of any other person or on behalf of or as a member of any alleged class of persons) that is presently pending in any court or before any administrative or investigative body or agency (whether public, quasi-public, or private) against or involving Ambassador or any of the Releasees. In the event that any court or administrative agency takes jurisdiction of claims Cesarini may have had against Ambassador or any of the Releasees that are being released by this Agreement, Cesarini, without receipt of any further consideration, shall take such action as may be possible to terminate such proceedings on the basis of the settlement of all of his outstanding claims against Ambassador regarding his employment as provided in this Agreement.

6.    Cesarini agrees and covenants that for a period of 18 months from the date of the termination of his employment by Ambassador (January 10, 2006), he shall not, directly or indirectly, solicit any customer of Ambassador for any purpose with respect to any business of any kind he owns, operates or

5

controls in whole or part, or for which he is performing any work, labor or services of any kind, including but not limited to as an employee, independent contractor or consultant, or for his own account.

7.    Other than with respect to Cesarini's ongoing obligations pursuant to paragraph 6 above, Ambassador, on behalf of itself, and its successors and assigns, releases and forever discharges Cesarini from all claims, causes of action, grievances and liabilities of any nature whatsoever that it had, may now have, or could have, against him.

8.    In the event Cesarini is subpoenaed to testify regarding any issue or fact relating to the Action or this Agreement, he shall give notice of same to Ambassador, within three days or as soon thereafter as is practicable after receipt of such subpoena so that Ambassador will have time to seek to quash said subpoena if it deems it appropriate to do so.

9.    Except as set forth above, the terms of this Agreement, the claims and the alleged basis of any such claims that were or could have been raised as of the date of this Agreement, shall not be admissible in any litigation in any forum for any purpose, other than to secure enforcement of the terms and conditions of

6

this Agreement, or as required by the parties or their employees, agents, directors, insurers or counsel to document the basis for or terms of this Agreement, except as otherwise required by law.

10.   In the event it is necessary to commence litigation to secure the enforcement of any provision of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and litigation expenses.

11.   If any provision of this Agreement is held to be invalid in any jurisdiction, such provision shall be considered to be modified to comply with the law.   In the event the release provisions of this Agreement and Release are held for any reason to be unenforceable, the parties agree to execute a new general release that is enforceable.

12.   This Agreement shall be interpreted in accordance with the laws of the State of New York.

13.   This Agreement has been executed voluntarily by the parties with a full and free understanding of its terms, after both have had an opportunity to obtain the advice of independent counsel. It may not be changed, except by a writing signed by both parties.

7

14. It is intended that the release provisions of this Agreement shall be effective to the fullest extent permitted by law and shall be considered as a general release.

BY SIGNING THIS AGREEMENT, CESARINI STATES: I HAVE READ AND UNDERSTAND THIS AGREEMENT, THIS AGREEMENT IS WRITTEN IN TERMS THAT I UNDERSTAND, AND I AM AWARE THAT I MAY BE GIVING UP IMPORTANT RIGHTS; I AGREE WITH THE TERMS OF THIS AGREEMENT; I AM AWARE OF MY RIGHT TO CONSULT AN ATTORNEY BEFORE SIGNING THIS AGREEMENT AND HAVE DONE SO BY CONSULTING MY ATTORNEY JOHN O'DONNELL, ESQ.; I HAVE EXECUTED THIS AGREEMENT KNOWINGLY AND VOLUNTARILY.

**PLEASE READ CAREFULLY. THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.**

ACKNOWLEDGED AND AGREED TO:

STEPHAN CESARINI

ACKNOWLEDGED AND AGREED TO:

AMBASSADOR PUBLICATIONS, L.L.C.
By:

8

STATE OF NEW YORK )
) ss.:
COUNTY OF NEW YORK )


On July 10, 2006 before me personally came Stephan Cesarini, to me known, and known to me to be the individual described in, and who executed the foregoing Agreement, and he duly acknowledged that he executed the same.

_____
Notary Public

JOHN H. O'DONNELL
Notary Public, State Of New York
No. 02OD6083142
Qualified in New York County
Commission Expires 11/12 △12

9